UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————————

MAXMILLIAN SLOLEY,

*Plaintiff,*

-against-                                                    14-CV-0339

ERIC VANBRAMER and BRYAN VANBRAMER,                          GLS/CFH

*Defendants.*

———————————————————————————

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants Eric VanBramer and
  Bryan VanBramer
The Capitol
Albany, New York  12224-0341

Mark G. Mitchell
Assistant Attorney General, of Counsel
Bar Roll No. 516818
Telephone:  518-776-2583
Fax:  518-915-7738
Mark.Mitchell@ag.ny.gov

Date:  September 18, 2015

**Table of Contents**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................. 1

ARGUMENTS ........................................................................................ 9

POINT I .................................................................................................. 9

      ALL CLAIMS AGAINST DEFENDANT BRYAN VANBRAMER
      SHOULD BE DISMISSED ......................................................... 9

POINT II ................................................................................................ 10

      THE ALLEGED SEARCH OF PLAINTIFF WAS PROPER ...... 10

POINT III ............................................................................................... 15

      DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ............. 15

POINT IV ............................................................................................... 18

      PLAINTIFF'S CLAIMS ALLEGING FALSE REPORTS SHOULD
      BE DISMISSED ........................................................................ 18

CONCLUSION ...................................................................................... 19

## PRELIMINARY STATEMENT

Defendants Eric VanBramer and Bryan VanBramer (collectively "Defendants") respectfully request an order granting their motion for summary judgment dismissing Plaintiff's Complaint in its entirety and with prejudice. In this action, Plaintiff alleges that Defendant Eric VanBramer improperly strip searched him in violation of the Fourth Amendment. As an initial matter, Plaintiff acknowledges that Defendant Bryan VanBramer had no personal involvement in the strip search. Accordingly, the Fourth Amendment claim must be dismissed as against him. Moreover, the record establishes that at the time Plaintiff was arrested, Defendants had information that Plaintiff was a person known to engage in illicit drug use and possession and that he was possibly in possession at that time. More significantly, Eric VanBramer's canine, who was trained to identify illicit substances, reacted positively to Plaintiff's car. Upon inspection, Eric VanBramer found a small amount of a loose, chunky substance on the driver's seat. It tested positive for cocaine. Accordingly, Defendants have established as a matter of law that the alleged strip search of Plaintiff was proper and supported by reasonable suspicion. In addition, Defendants are entitled to qualified immunity as a matter of law because officers of reasonable competence could believe that, under these circumstances, the alleged strip search was legal. Finally, Plaintiff's claims alleging that Defendants made false police reports must be dismissed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In March 2014, Plaintiff, pro se, filed the present Complaint pursuant to 42 U.S.C. § 1983 against the State of New York, Eric VanBramer, and Bryan VanBramer (identified incorrectly as "Brian VanBramer"). Complaint (Dkt. No. 1). Plaintiff alleged that in the early morning hours of April 1, 2013, while he was being booked at a State Police barracks in Greene County, New York, following his arrest, he was improperly strip searched by State Trooper Eric VanBramer.

*Id.* at 1-3.  Plaintiff alleged that the strip search violated his Fourth Amendment rights because it "was conducted without probable cause or reason to believe that any contraband, dangerous materials, or incriminating objects or weapons would be found." *Id.* at 3.  Plaintiff also alleged that Defendant Troopers Eric VanBramer and Bryan VanBramer made a false report stating that narcotics were found in the vehicle Plaintiff was driving at the time of his arrest.  *Id.*

Upon his sua sponte review pursuant to 28 U.S.C. § 1915, United States Magistrate Judge Christian F. Hummel recommended dismissal of all claims against the State of New York as well as dismissal of all claims against the individual Defendants in their official capacities.  Report-Recommendation and Order (7-23-14) (Dkt. No. 15) at 5.  The Magistrate recommended that Plaintiff be allowed to proceed on his "claim alleging an unconstitutional strip and cavity search in violation of the Fourth Amendment ...."  *Id.*  United States District Court Chief Judge Gary L. Sharpe accepted the Magistrate's recommendation.  Order (9-3-14) (Dkt. No. 17) at 2.

As recounted by the United States District Court for the Southern District of New York, Plaintiff Maxmillian Sloley's

> serious criminal history spans two decades.  At age 14, he was convicted of an armed robbery.  Between the ages of 18 and 20, Sloley was convicted of providing a false name, possessing drugs, selling drugs, and possessing a firearm. He also violated parole twice.  In 2004, Sloley plead guilty to being a felon in possession of a firearm.

*United States v. Sloley*, No. 03-CR-1190, 2013 U.S. Dist. LEXIS 105035, at 1 (S.D.N.Y. July 18, 2013), *aff'd*, 568 Fed.Appx. 79 (2d Cir. 2014)[1]; *see also* Plaintiff's Deposition Transcription,

---

1  Plaintiff has filed numerous actions and petitions challenging, among other things, his convictions, sentences, conditions of release, and prison disciplinary sanctions.  *See e.g. United States v. Sloley*, No. 03-CR-1190, 2013 U.S. Dist. LEXIS 105035, (S.D.N.Y. July 18, 2013), *aff'd*, 568 Fed.Appx. 79 (2d Cir. 2014); *Sloley v. United States*, No. 08-CV-111, 2009 U.S. Dist. LEXIS 53270 (S.D.N.Y. June 18, 2009); *Sloley v. O'Brien*, No. 7:07-CV-00507, 2008 U.S. Dist. LEXIS 63849, 2008 U.S. Dist. LEXIS 63847 (W.D. Va. July 22, 2008); *United States v. Sloley*, 464 F.3d 355 (2d Cir. 2006), *cert. denied*, 549 U.S. 1316 (2007).

Exhibit A to Mitchell Declaration, at 16-19.[2] For the firearm conviction, Plaintiff was sentenced to 88 months of imprisonment and 3 years of supervised release. *See United States v. Sloley*, 2013 U.S. Dist. LEXIS 105035, at 1. In June 2010, while Plaintiff was on supervised release for his 2004 firearm conviction, he was arrested in the Northern District for possessing drugs. *See id.* In January 2012, Plaintiff admitted that he violated the terms of his supervised release and was sentenced to a new 34-month term of supervised release. *See id.* at 1-2.

On Monday, April 1, 2013, Plaintiff drove to the residence of Daphne Rollins in Athens, New York, arriving at approximately 2:00 A.M on April 1. Exhibit A at 36-37. Plaintiff testified that Daphne Rollins "was my girlfriend or ex-girlfriend at the time. Somewhere in between those two." *Id.* at 36. Plaintiff was driving a white Nissan Maxima. *Id.*

Plaintiff and Daphne Rollins talked about various issues, including whether Plaintiff had Percocet on him. *Id.* at 95. Plaintiff conceded that he sometimes possessed Percocet—a narcotic that he used for "recreational" purposes and for which he did not have a prescription—and that Daphne Rollins was aware of his practice. *Id.* at 95. Eventually, Plaintiff and Daphne Rollins began to argue about whether he was involved with another woman named Carrie Andersen. *Id.* at 37-38. After a physical altercation that involved Plaintiff smashing the windshield of Ms. Rollins' car and damaging her cellular phone, Plaintiff jumped into his Maxima and drove away, in the direction of the Rip Van Winkle Bridge. *Id.* at 38-42, 55-57.

Daphne Rollins called 911. Exhibit A at 39; Exhibit B. As indicated in the Greene County 911 CAD Incident Detail, Ms. Rollins reported to the 911 dispatcher that Plaintiff took her cellular phone after an argument. Exhibit B. She further stated that Plaintiff hit her, shoved her, and struck her car with a baseball bat. Exhibit B. Ms. Rollins provided Plaintiff's name and

---

2 Unless otherwise indicated, citations to lettered exhibits refer to the exhibits attached to the Attorney Declaration of Mark G. Mitchell, dated September 18, 2015.

3

description, stated that he was driving a white Nissan Maxima, and indicated that he left the scene. Exhibit B.

Defendant Bryan VanBramer, a New York State Trooper, responded to the Greene County 911 dispatch by patrolling to Ms. Rollins' address in Athens. Affidavit of Bryan VanBramer ¶¶ 1-2. Ms. Rollins told Bryan VanBramer that she had been in an argument with Plaintiff which turned into a physical altercation. Among other things, Plaintiff dragged her from the outside of the residence up the front stairs and into the main entrance—causing abrasions to her knees—and also struck her multiple times. Plaintiff used a baseball bat to smash the windshield of her car and also took Ms. Rollins' cellular phone. Ms. Rollins stated that Plaintiff left her residence in his vehicle before the police arrived. *Id.* ¶ 2. Ms. Rollins further stated that Plaintiff may be associated with illegal drug activity and may have drugs on him. *Id.* ¶ 4.

Bryan VanBramer observed that Ms. Rollins had abrasions and was upset. He also observed damage to the windshield of Ms. Rollins' vehicle. He found one aluminum baseball bat as well as one destroyed iPhone belonging to Ms. Rollins at the scene. *Id.* ¶ 3.

Plaintiff testified that before he reached the Rip Van Winkle Bridge, he was pulled over by a deputy from the Greene County Sheriff's Office. Exhibit A at 43. The deputy transported Plaintiff back to Ms. Rollins' residence. *Id.* at 43-44. Plaintiff testified that Bryan VanBramer emerged from the residence and questioned Plaintiff. *Id.* at 46-47. Plaintiff recalled that Bryan VanBramer "was just basically asking me what happened as far as the situation with her vehicle, her phone, between me and her. And [Plaintiff] was explaining to him because he knows [Carrie] Andersen and her family. It's a small town. Everybody knows everybody." *Id.* at 47.

4

Among other things, Plaintiff told Bryan VanBramer that Ms. Rollins "smashed her own car." *Id.* at 57-58. Plaintiff concedes that this was a lie. *Id.* at 57-58.

Bryan VanBramer called Defendant State Trooper Eric VanBramer. Affidavit of Bryan VanBramer ¶ 6; Affidavit of Eric VanBramer ¶ 3. Eric VanBramer works in the State Police's Canine Unit and also performs the other duties of a State Trooper. Affidavit of Eric VanBramer ¶ 2. As set forth more fully in Eric VanBramer's affidavit submitted with this motion, Eric VanBramer worked with a canine named Ryder who was certified by the State Police in odor recognition of narcotics, including cocaine. *Id.* ¶ 2. In addition, Eric VanBramer had been trained at the New York State Police Academy in how to identify drugs and how to perform various field tests. *Id.* ¶ 7. In particular, Eric VanBramer was proficient in performing the NIK field test for cocaine, which is performed by placing evidence in a test kit and breaking ampoules to release liquid that interacts chemically with the evidence. If cocaine is present, the substance will turn certain colors indicating a positive test. Eric VanBramer has conducted hundreds of NIK tests in his career. *Id.* ¶¶ 6-7.

Bryan VanBramer requested that Eric VanBramer go to the location near the Rip Van Winkle Bridge where Plaintiff's vehicle had been stopped. Affidavit of Bryan VanBramer ¶ 6; Affidavit of Eric VanBramer ¶ 3. Bryan VanBramer advised that an individual named Maxmillian Sloley had been stopped there while fleeing in a vehicle used in a crime in Athens. Affidavit of Eric VanBramer ¶ 3. Bryan VanBramer further advised that the complainant reported that Maxmillian Sloley was possibly in possession of a controlled substance. *Id.* Eric VanBramer recognized the name Maxmillian Sloley as referring to an individual who was well known in the area for being involved with illegal drugs. Prior to April 1, 2013, several people

had told Eric VanBramer that Maxmillian Sloley was a drug dealer.   Affidavit of Eric VanBramer ¶ 4.

Eric VanBramer drove to the location in question and observed Plaintiff's white Nissan Maxima.   When Eric VanBramer brought his canine Ryder near that vehicle, Ryder had a positive alert on each side and the front hood exterior.  *Id.* ¶ 5.   Ryder also alerted on the center console area inside the vehicle.   Eric VanBramer observed a small amount of a loose, chunky substance that looked like crack cocaine located in the crease in the driver's seat. *Id.* ¶ 5.   It appeared that the driver had been in a hurry to hide that substance while he was sitting in the driver's seat but some of it fell onto the seat.  *Id.*   In accordance with his training, Eric VanBramer performed a NIK field test on the substance.   It tested positive for cocaine. *Id.* ¶ 6.

Plaintiff testified that Bryan VanBramer and another state trooper placed Plaintiff in their sport utility vehicle and drove him to SP Catskill, a State Police station in Cairo, New York. Exhibit A at 59-60; Affidavit of Bryan VanBramer ¶ 8.   They brought Plaintiff into an office and "booked" him.   Exhibit A at 60-61.   As part of the standard procedure for processing an arrestee, Bryan VanBramer reviewed Plaintiff's criminal history provided by the New York State Division of Criminal Justice Services.   Affidavit of Bryan VanBramer ¶ 8.   Bryan VanBramer confirmed that Plaintiff was on federal probation at that time.   Bryan VanBramer learned that Plaintiff had multiple felony convictions, some involving firearms.   Notably, Plaintiff had convictions for possessing and selling drugs. *Id.* ¶ 8.   Likewise, Plaintiff believed that the officers "had something on the computer" about his criminal history.   Exhibit A at 75.   Plaintiff recalled hearing a Trooper speak by phone to the prosecutor about Plaintiff's criminal history. *Id.* at 74.

6

Plaintiff testified that at some point Eric VanBramer entered the station and advised Plaintiff that drugs were found in the seat of Plaintiff's vehicle. *Id.* at 63-64. Plaintiff testified that Eric VanBramer escorted Plaintiff down a hallway to a smaller, private office. *Id.* at 68-70. Plaintiff testified that, at Eric VanBramer's direction, Plaintiff removed his own clothing and Eric VanBramer searched each item of clothing. *Id.* at 70-72. Plaintiff testified that Eric VanBramer then directed Plaintiff to lift Plaintiff's genitals, squat, and spread his buttocks. *Id.* at 70-71. Plaintiff testified that the search of his person was visual in nature; no one touched him or reached into his body cavity. *Id.* at 71. Plaintiff recalled that, during the strip search, only Eric VanBramer and Plaintiff were present in the private room where it occurred. *Id.* at 69. Plaintiff testified that he did not think anyone else observed the strip search. *Id.* at 69-70, 73. Plaintiff put his clothing back on and Eric VanBramer escorted him back to the main office. *Id.* at 72.

Bryan VanBramer advised Plaintiff that he would be charged with two counts of Criminal Mischief in the Third Degree (Penal Law § 145.05), a felony, based on his damage to Ms. Rollins' windshield and cellular phone; Criminal Possession of a Controlled Substance in the Seventh Degree (Penal Law § 220.03), a misdemeanor, based on his possession of less than one gram of crack cocaine; and Harassment in the Second Degree (Penal Law § 240.26(1)), a violation, based on his striking and dragging of Ms. Rollins. Affidavit of Bryan VanBramer ¶ 10; Affidavit of Eric VanBramer ¶ 10; Exhibit A at 65, 73-74, 78, 80-81. Once processing was complete, Plaintiff was transported to Athens Town Court and arraigned before a judge on the above-referenced charges. Affidavit of Bryan VanBramer ¶ 11; Exhibit A at 75-76. Plaintiff was remanded to Greene County Jail without bail due to his prior felony convictions. Affidavit of Bryan VanBramer ¶ 11; Exhibit A at 77-78. Approximately three days later, Plaintiff returned

7

to Athens Town Court and was represented by a public defender. Exhibit A at 80-82. Plaintiff agreed to a plea bargain according to which he pleaded guilty to Harassment in the Second Degree in satisfaction of all charges. *Id.* at 82.

Following Plaintiff's April 1, 2013 arrest in Greene County, the United States District Court, Southern District of New York, issued a summons directing Plaintiff to appear at a court conference concerning the status of his supervised release. *See United States v Sloley*, 2013 U.S. Dist. LEXIS 105035, at 2. On April 19, 2013, Plaintiff went to the courthouse, met with his lawyer, and then fled the courtroom. *See id.* Five days later, the U.S. Marshals arrested the fugitive Plaintiff in the Northern District of New York. *See United States v Sloley*, 2013 U.S. Dist. LEXIS 105035, at 2. At a violation proceeding, Plaintiff admitted that he violated the terms of his original supervised release by committing the state crime of harassment and leaving the judicial district without permission. *See United States v. Sloley*, 568 Fed. App'x at 79. On June 10, 2013, the U.S. District Court, Southern District of New York, sentenced Plaintiff to 14-months of imprisonment and a new 20-month term of supervised release. *See United States v Sloley*, 2013 U.S. Dist. LEXIS 105035, at 2. Plaintiff's supervised release included the conditions that Plaintiff's travel was restricted to the Southern and Eastern Districts of New York (except with prior permission to leave for specific occasions) and that Plaintiff was subject to 24-hour GPS monitoring. *See id.* With respect to those conditions of supervised release, the U.S. District Court explained:

> [Plaintiff] has repeatedly travelled to the Northern District without permission. Indeed, when he fled the courtroom in April [2013], he did not go to his "stable residence" in Brooklyn. Instead, he travelled to a drug-infested trailer in the Northern District to be with his girlfriend. Even viewed in the best light, [Plaintiff's] physical proximity to drugs demonstrates extremely poor judgment. And each time that [Plaintiff] has travelled to the Northern District, his Probation Officer only learns about it because [Plaintiff] gets arrested.

8

*Id.* at 4.

## ARGUMENTS

"[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied*, 524 U.S. 911. "[W]ith respect to a properly supported summary judgment motion, the party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Globalnet Fin.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (internal quotation marks omitted).

## POINT I

### All claims against Defendant Bryan VanBramer should be dismissed

As an initial matter, Plaintiff acknowledges that Defendant Bryan VanBramer had no personal involvement in the alleged strip search. Plaintiff testified that Defendant Bryan VanBramer was not present for the alleged strip search. Exhibit A at 73, 86. He also testified that he did not know whether Bryan VanBramer ordered that alleged strip search. *Id.* at 87. Plaintiff testified that he maintains that Bryan VanBramer violated his rights only by making a false police report against him, which does not support a claim under section 1983. *Id.* at 85-86 (Q: "Aside from the police report, are you alleging that [Bryan] VanBramer violated your rights in any other way?" A: "No."). Accordingly, even if this Court determines that Plaintiff's strip search claim should not be dismissed, all of Plaintiff's claims against Bryan VanBramer nonetheless must be dismissed.

## POINT II

### The alleged search of Plaintiff was proper

In this action, Plaintiff does not challenge the legality of his arrest or the legality of the seizure of drugs from his automobile. In any event, Defendants' search of Plaintiff's vehicle was permissible. Inasmuch as Plaintiff was a recent occupant of that vehicle—indeed, he was fleeing from the crime scene in that vehicle at the time of his arrest—officers were permitted to search it incident to the arrest of Plaintiff. *See Thornton v. United States*, 541 U.S. 615, 623-624 (2004). The canine identification of Plaintiff's vehicle further justified the search of that vehicle. *See United States v. Shefler*, No. 5:06-CR-448, 2009 U.S. Dist. LEXIS 2108, at 14 (N.D.N.Y Jan. 13, 2009) (Mordue, J.); *see generally United States v. Waltzer*, 682 F.2d 370, 372 (2d Cir. 1982), *cert. denied*, 463 U.S. 1210 (1983).[3]

The United States Supreme Court has observed:

> The expectations of privacy of an individual taken into police custody necessarily are of a diminished scope. Both the person and the property in his immediate possession may be searched at the station house. A search of the detainee's person when he is booked into custody may involve a relatively extensive exploration, including requiring at least some detainees to lift their genitals or cough in a squatting position.

*Maryland v. King*, 133 S. Ct. 1958, 1978 (2013) (internal quotation marks, alterations, and citations omitted). "The Fourth Amendment requires an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime

---

3 Even if there were a defect in the justification of the vehicle search that would have rendered the drug evidence inadmissible in a criminal prosecution of Plaintiff, the officers' awareness that drugs were found in Plaintiff's vehicle must still be considered in determining whether the alleged strip search of Plaintiff was supported by reasonable suspicion. "The fruit of the poisonous tree doctrine is inapplicable to civil actions arising under § 1983." *Hinds v. City of N.Y.*, 768 F. Supp. 2d 512, 514 n.1 (S.D.N.Y. 2010). "[T]he fact that evidence which served the basis for an arrest is later suppressed does not, for purposes of a § 1983 claim, eviscerate the validity of the officer's decision based on his awareness of that evidence at the time of arrest." *Miller v. Carney*, No. 9:12-CV-972, 2014 U.S. Dist. LEXIS 132780, at 18 (N.D.N.Y Aug. 7, 2014) (Treece, M.J.), *adopted*, 2014 U.S. Dist. LEXIS 130796 (N.D.N.Y Sept. 18, 2014) (Kahn, J.).

charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest'
before she may be lawfully subjected to a strip search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d
Cir. 2008) (alteration in original) (quoting *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986), *cert.
denied*, 483 U.S. 1020 (1987)).[4] "A 'reasonable suspicion' of wrongdoing is something stronger
than a mere 'hunch,' but something weaker than probable cause." *Varrone v. Bilotti*, 123 F.3d
75, 79 (2d Cir. 1997) (some internal quotation marks omitted). "Reasonable suspicion is a less
demanding standard than probable cause not only in the sense that reasonable suspicion can be
established with information that is different in quantity or content than that required to establish
probable cause, but also in the sense that reasonable suspicion can arise from information that is
less reliable than that required to show probable cause." *Id.* at 80 (quoting *Alabama v. White*,
496 U.S. 325, 330 (1990)).

"Whether a particular strip search is constitutional 'turns on an objective assessment of
the ... facts and circumstances confronting [the searching officer] at the time, and not on the
officer's actual state of mind at the time' of the search." *Hartline*, 546 F.3d at 100 (omission and
alteration in original) (quoting *Maryland v. Macon*, 472 U.S. 463, 470-471 (1985)). Facts that
tend to justify the strip search of an arrestee include

> (1) excessive nervousness; (2) unusual conduct; (3) an informant's tip; (4)
> computerized information showing pertinent criminal propensities; (5) loose-
> fitting or bulky clothing; (6) an itinerary suggestive of wrongdoing; (7) discovery
> of incriminating matter during routine searches; (8) lack of employment or a
> claim of self-employment; (9) needle marks or other indications of drug
> addiction; (10) information derived from the search or conduct of a traveling

---

4 In *Florence v. Board of Chosen Freeholders of County of Burlington*, the U.S. Supreme Court held that the
Constitution permits corrections officials to adopt a policy of conducting visual body cavity searches of new
detainees—even those arrested for minor offenses and without a particular reason to suspect them of hiding
contraband—unless substantial evidence exists showing that said policy is an unnecessary or unjustified response to
problems of jail security. *See* 132 S. Ct. 1510, 1513-1514, 1520-1521 (2012); *see also Gonzalez v. City of
Schenectady*, 728 F.3d 149, 160 (2d Cir. 2013). Courts in this Circuit have reached different conclusions as to
whether *Florence* alters the legal principles governing strip searches conducted at police stations. *Compare Fate v.
Charles*, 24 F. Supp. 3d 337, 352 (S.D.N.Y. 2014) *with Paulin v. Figlia*, 916 F. Supp. 2d 524, 533 (S.D.N.Y. 2013).

companion; (11) inadequate luggage; and (12) evasive or contradictory answers. *Hartline*, 546 F.3d at 101 (citing *United States v. Asbury*, 586 F.2d 973, 976-977 (2d Cir. 1978)); *see also Ellsworth v. Wachtel*, 2013 U.S. Dist. LEXIS 4486, at 14-17 (N.D.N.Y Jan. 11, 2013) (Kahn, J.).

In *Elk v. Townson* (839 F. Supp. 1047 (S.D.N.Y. 1993)), deputy sheriffs stopped and searched a vehicle. They discovered a canister containing marijuana in the front seat, within reach of plaintiff Brett Elk (one of the front-seat occupants). *See id.* at 1050. Plaintiff Elk and the other occupants were taken to the Sheriff's Department and charged with misdemeanor drug possession and sale. *See id.* Plaintiff Elk alleged that he was strip searched at the Sheriff's Department and then released. *See id.* Plaintiff Elk later commenced an action under 42 U.S.C. § 1983 alleging that, among other things, the deputy sheriffs violated his constitutional rights by subjecting him to an unreasonable strip search. The United States District Court, Southern District of New York, granted the defendants' motions for summary judgment dismissing plaintiff Elk's complaint. *See id.* at 1050. The District Court explained that "Elk's presence in a vehicle which smelled strongly of marijuana and in which marijuana was found both on another occupant and in a container located near him gave the Sheriff's Office reasonable grounds to suspect that Elk might be hiding drugs on his person." *Id.* at 1052.

Here, Defendants have established as a matter of law that the alleged search of Plaintiff at the State Police station was appropriate and supported by reasonable suspicion. Plaintiff was charged with two counts of criminal mischief in the third degree (Penal Law § 145.05), a class E felony; criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), a class A misdemeanor; and harassment in the second degree (Penal Law § 240.26), a violation. Plaintiff was fleeing from the crime scene in his vehicle at the time he was stopped

12

and apprehended by the police.  A search of Plaintiff's vehicle incident to his arrest uncovered cocaine in the driver's seat.  *See People v. Swamp*, 84 N.Y.2d 725 (1995) (holding that police officer's testimony that he conducted a field NIK test indicating the presence of cocaine constituted legally sufficient evidence to support an indictment for possession of cocaine); *see also Smith v. Hulihan*, No. 11-CV-2948, 2011 U.S. Dist. LEXIS 103542, at 61 (S.D.N.Y. Sept. 13, 2011), *adopted*, 2012 U.S. Dist. LEXIS 149585 (S.D.N.Y. Oct. 17, 2012).  The presence of cocaine in the place where Plaintiff was seated at the time of his arrest supported the reasonable suspicion that Plaintiff quickly transferred drugs to his person when he became aware that he would be stopped.  Affidavit of Eric VanBramer ¶ 5.

In addition, the victim, Daphne Rollins, advised Defendant Bryan VanBramer that Plaintiff may be involved in illegal drug activity and may have drugs on him.  Affidavit of Bryan VanBramer ¶ 4.  In his deposition testimony, Plaintiff conceded that he sometimes possessed Percocet—a narcotic that he used for "recreational" purposes and for which he did not have a prescription—and that Daphne Rollins was aware of his practice.  Exhibit A at 95.  Daphne Rollins reported that Plaintiff harmed her physically and smashed her car's windshield with a baseball bat.  Also, as established by Defendant Eric VanBramer, Plaintiff was well-known in the community for his involvement with illegal drugs.  Affidavit of Eric VanBramer ¶ 4.  For example, in June 2010, while Plaintiff was on supervised release, he was arrested in the Northern District for possessing drugs.  *See United States v Sloley*, 2013 U.S. Dist. LEXIS 105035, at 1. In addition, Plaintiff repeatedly violated the terms of his supervised release by traveling to a "drug-infested trailer in the Northern District."  *Id.* at 4; *see also* Exhibit A at 51-52.

Defendants' alleged strip search was also justified by information regarding Plaintiff's criminal history.  "A suspect's criminal history is a critical part of his identity that officers

should know when processing him for detention." *King*, 133 S. Ct. at 1971.  When a suspect is booked at a police station, the "task of identification necessarily entails searching public and police records based on the identifying information provided by the arrestee to see what is already known about him." *Id.* at 1972.  Here, while Plaintiff was being processed at the police station, the officers accessed his criminal history from the New York State Division of Criminal Justice Services which indicated that Plaintiff had multiple felony convictions and had been convicted of possessing and selling drugs.  *See United States v. Sloley*, 2013 U.S. Dist. LEXIS 105035, at 1.  Such information constituted "computerized information showing pertinent criminal propensities" that justified a strip search of Plaintiff.  *See Hartline*, 546 F.3d at 101; *Ellsworth*, 2013 U.S. Dist. LEXIS 4486, at 14.

In sum, the alleged strip search of Plaintiff at SP Catskill was supported by reasonable suspicion that Plaintiff was concealing drugs or weapons on his person underneath his clothing. *See Brown v. City of New York*, No. 12-CV-3146, 2014 U.S. Dist. LEXIS 139258, at 16-19 (S.D.N.Y. Sept. 30, 2014) (determining that officers were justified in strip searching plaintiff while he was being processed at police station following his arrest); *Paulin v. Figlia*, 916 F. Supp. 2d 524, 533 (S.D.N.Y. 2013) (holding that strip search of arrestee at police station was reasonable); *Pascual v. Fernandez*, No. 11-CV-7075, 2013 U.S. Dist. LEXIS 12064, at 14-15 (S.D.N.Y. Jan. 28, 2013) (determining that strip search of plaintiff at narcotics unit was supported by reasonable suspicion where plaintiff was in a car containing drugs at the time of her arrest).

Second, the search alleged here is justified as a search incident to a lawful arrest.  Police officers "may perform searches incident to constitutionally permissible arrests in order to ensure their safety and safeguard evidence." *Virginia v. Moore*, 553 U.S. 164, 176 (2008).  Here,

"[a]fter his arrest, it was reasonable to search Plaintiff when processing him, both for evidence from the alleged crime and for safety reasons." *Brown*, 2014 U.S. Dist. LEXIS 139258, at 18-19. Third, the alleged search at issue here is justified as a station-house inventory search incident to a lawful arrest. *See Illinois v. Lafayette*, 462 U.S. 640, 646-648 (1983).

Plaintiff asserts that Defendants must be lying about the discovery of drugs in his Maxima, stating: "My mother doesn't smoke crack and neither do I." Exhibit A at 86. However, "'a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment.'" *Patterson v. Labella*, No. 6:12-CV-1572, 2014 U.S. Dist. LEXIS 137616, at 17 (N.D.N.Y Sept. 30, 2014) (D'Agostino, J.) (quoting *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995). Plaintiff cannot contradict Defendants' showing as to the drugs found in his vehicle because Plaintiff was not present at the time his vehicle was searched and has no personal knowledge as to what the police found. Exhibit A at 102-103; *see Elk*, 839 F. Supp. at 1051. Moreover, Plaintiff does not dispute that his vehicle was searched by a State Police canine; indeed, Plaintiff testified that the dog's footprints were visible inside his vehicle when he obtained it from impound following his arrest. Exhibit A at 79-80.

### POINT III

### Defendants are entitled to qualified immunity

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty. Of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). "For a defendant to secure summary judgment on the ground of qualified immunity, he must show that no reasonable jury, viewing the evidence in the light

most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001).

"Qualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation." *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal citations and quotation marks omitted). "In light of these considerations, [courts] have developed a standard for determining whether an officer is entitled to qualified immunity that is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) (quoting *Provost*, 262 F.3d at 160).

"[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a <u>reasonable officer</u> that his conduct was unlawful in the situation he confronted. If the illegality of the conduct would not be so apparent, the officer is entitled to qualified immunity." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (internal citations and quotation marks omitted). "An officer's actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the defendants' actions." *Ford*, 237 F.3d at 162 (internal quotation marks omitted). "[I]f at least some reasonable officers in the defendant's position could have believed that [the challenged conduct] was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." *Zalaski*, 723 F.3d at 389 (internal quotation marks omitted).

In *Gonzalez v. City of Schenectady* (728 F.3d 149 (2d Cir. 2013)), the plaintiff was overheard on a wire offering to sell drugs to a confidential informant. Police officers arrested

him and brought him to the police station for processing.  Officers performed a visual body cavity search of the plaintiff and discovered a plastic bag in his rectum.  Plaintiff was charged with and convicted of criminal possession of a controlled substance, but his conviction was reversed on appeal.  The plaintiff then commenced an action under 42 U.S.C. § 1983 alleging, among other things, that the visual body cavity search at the police station violated his Fourth Amendment rights.   The United States Court of Appeals, Second Circuit, held that the defendants were entitled to summary judgment dismissing the complaint on the ground of qualified immunity.  The Second Circuit wrote:

> While we can expect police officers to be familiar with black-letter law applicable to commonly encountered situations, they cannot be subjected to personal liability under § 1983 based on anything less.  There are so many permutations of fact that bear upon the constitutional issues of a search:  the arrest can be for a misdemeanor or a felony, for a drug offense or not; the search can be a strip search, a visual body cavity search, or a manual one; the person arrested can be headed to the general prison population or a single cell; the place of the search can be private or less than private; the impetus for the search can be a tip, or the policeman's observations or experience or hunch, or the neighborhood, or a description, or some or all of the above; and other considerations as well.  The policeman is not expected to know all of our precedents or those of the Supreme Court, or to distinguish holding from dicta, or to put together precedents for line-drawing, or to discern trends or follow doctrinal trajectories.  Otherwise, qualified immunity would be available only to a cop who is a professor of criminal procedure in her spare time.  The police cannot be expected to know such things at risk of *personal liability* for the policeman's savings, home equity, and college funds.  And such personal liability is the only kind of liability imposed by § 1983 (absent a <u>Monell</u> claim).  That tells us something about the threshold of liability in these cases.

*Gonzalez*, 728 F.3d at 161-162.

Here, as discussed above, Plaintiff was arrested for two felonies as well as a misdemeanor drug offense.  Cocaine was found in the driver's seat of the vehicle he was driving at the time of his arrest.  In light of those facts, it cannot be said that <u>no</u> reasonable officers in Defendants' positions could have believed that the alleged strip search of Plaintiff at the police

station was appropriate. *See Gonzalez*, 728 F.3d at 161-162; *see also Easton v. City of New York*, No. 05-CV-1873, 2009 U.S. Dist. LEXIS 53519, at 11-12 (E.D.N.Y. June 23, 2009) (determining that "[b]ecause this particular factual context includes at least two indicia that [the Second Circuit] has found to support individualized reasonable suspicion in the past, the Court concludes that an officer of reasonable competence could have believed a strip search was legal here" [internal citation and quotation marks omitted]); *Gonzalez v. City of Schenectady*, No. 00-CV-824, 2001 U.S. Dist. LEXIS 14406 (N.D.N.Y Sept. 17, 2001) (McAvoy, J.), at 23-26 (holding that police officers were entitled to qualified immunity with respect to plaintiff's claim that he was improperly strip searched at the police station following his arrest for possession of marijuana). At worst, Defendants made a "reasonable mistake" as to whether the alleged strip search was supported by reasonable suspicion and thus are protected by qualified immunity. *See Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 499.

## POINT IV

### Plaintiff's claims alleging false reports should be dismissed

Plaintiff apparently wishes to allege that Defendants violated his constitutional rights by making false police reports indicating that drugs were found in his vehicle. Exhibit A at 83, 85-86. As an initial matter, no such claim exists in this case. In its Order entered September 3, 2014, this Court determined that Plaintiff would be permitted to proceed only on his claim alleging an unconstitutional strip and cavity search in violation of the Fourth Amendment. Order (Dkt. No. 17) at 2. In any event, contrary to Plaintiff's view, he has no general constitutional right to be free from being falsely accused in a police report. *See e.g. Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Likewise, to the extent that Plaintiff hints at the existence of a conspiracy against him, that claim must be dismissed inasmuch as Plaintiff's Complaint contains

at most "only conclusory, vague, or general allegations of conspiracy to deprive [him] of constitutional rights." *Id.* (citing *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993); *see also Liner v. Goord*, 115 F. Supp. 2d 432, 435 (S.D.N.Y. 2000).

## CONCLUSION

Based on the above reasons, Defendants respectfully submit that they are entitled to summary judgment dismissing Plaintiff's Complaint in its entirety and with prejudice.


Dated: Albany, New York
       September 18, 2015

                                 ERIC T. SCHNEIDERMAN
                                 Attorney General of the State of New York
                                 Attorney for Defendants
                                 The Capitol
                                 Albany, New York  12224-0341


                                 By: *s/ Mark G. Mitchell*
                                 Mark G. Mitchell
                                 Assistant Attorney General, of Counsel
                                 Bar Roll No. 516818
                                 Telephone:  518-776-2583
                                 Fax:  518-915-7738
                                 Mark.Mitchell@ag.ny.gov

19