UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MAXMILLIAN SLOLEY,

                              Plaintiff,                          **14-cv-339 (GLS/CFH)**

          -v-

ERIC VANBRAMER,

                              Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTIONS *IN LIMINE***

COHEN & GREEN, P.L.L.C.
1639 Centre St, Suite 216
Ridgewood, New York 11385
(929) 888-9480

Pro Bono Trial Attorneys for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 1

   I.   THE COURT SHOULD ALLOW NON-PARTY WITNESS DAPHNE ROLLINS TO
      TESTIFY BY VIDEO CONFERENCE OR OTHER REMOTE MEANS — AND IN
      THE ALTERNATIVE, SHOULD ADJOURN THE TRIAL. ...................................... 1

   II.  THE COURT SHOULD PRECLUDE OR NARROWLY CURTAIL EVIDENCE OF
      ANY OF MR. SLOLEY'S CRIMINAL HISTORY AND OTHER LAW SUITS ....... 3

     a.   Evidence of Mr. Sloley's Criminal History Is Inadmissible Because it is Not Relevant
      Under FRE 401 and Unduly Prejudicial Under FRE 403 ...................................................... 3

     b.   Evidence of Mr. Sloley's Criminal History Is Inadmissible for Any Purpose Under
      FRE 404(b) or for Impeachment Purposes Under FRE 609 ................................................. 5

     c.   If the Court Finds that Evidence of Mr. Sloley's Criminal History is Admissible, the
      Court Should Issue a Limiting Instruction to the Jury .......................................................... 8

     d.   Evidence of Other Lawsuits Plaintiff has Filed Should Be Excluded. .......................... 8

   III.  UNLESS DEFENDANTS PROVIDE SUBSTANTIALLY MORE FOUNDATION AND
      EXPLANATION, DEFENDANTS SHOULD BE BARRED FROM SUGGESTING
      THERE WAS A POSITIVE DRUG KIT. ................................................................ 10

   IV.  THE COURT SHOULD NOT INSTRUCT OR POLL THE JURY ON QUALIFIED
      IMMUNITY ......................................................................................................... 13

     a.   The Affirmative Defense of Qualified Immunity is a Question of Law to be
      Determined by the Court ...................................................................................................... 14

     b.   Instructions on Qualified Immunity Will Likely Confuse the Jury ............................. 14

   V.   THE COURT SHOULD NOT GIVE INSTRUCTIONS ON NOMINAL DAMAGES.. 15

   VI.  THE COURT SHOULD PRECLUDE DEFENDANTS FROM DISPLAYING OR
      REFERENCING MR. SLOLEY'S MUGSHOT AND SHOULD PERMIT
      PLAINTIFF TO APPEAR IN CIVILIAN GARB. ...................................................... 17

VII. THE COURT SHOULD PRECLUDE DEFENDANTS FROM INTRODUCING
        EVIDENCE CONCERNING PLAINTIFF'S FINANCIAL STATUS. ...................... 18

VIII. THE COURT SHOULD PRECLUDE THE DEFENDANT OR OTHER POLICE
        WITNESSES FROM TESTIFYING OR OTHERWISE PRESENTING
        DOCUMENTARY EVIDENCE OF AWARDS/COMMENDATIONS THEY
        RECEIVED DURING THE COURSE OF THEIR EMPLOYMENT AS LAW
        ENFORCEMENT OFFICERS ................................................................................... 19

IX. THE COURT SHOULD PRECLUDE DEFENDANTS FROM MISLEADING THE
        JURY BY PRETENDING DEFENDANTS WILL NOT BE INDEMNIFIED FOR
        ANY DAMAGES AWARD ....................................................................................... 20

X. THE COURT SHOULD PERMIT PLAINTIFF TO CROSS THE DEFENDANTS AND
        OTHER STATE POLICE WITNESSES IN PLAINTIFF'S CASE-IN-CHIEF. ......... 22

XI. THE UNDERSIGNED RESPECTFULLY REQUESTS ALL PARTIES TO REFER TO
        THEM AS "PROF. GREEN," AND TO TAKE A LITTLE TIME TO PRACTICE
        USING "THEY" AND "THEM" PRONOUNS BEFORE TRIAL. .............................. 24

CONCLUSION ....................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Beltran-Tirado v. I.N.S.*,
213 F.3d 1179 (9th Cir. 2000) ........................................................................2

*Bixby v. KBR, Inc.*,
No. 09 Civ. 632(PK), 2012 U.S. Dist. LEXIS 143807 (D. Or. Oct. 4, 2012) ........................23

*Brown v. Turriglio*,
2018 U.S. Dist. LEXIS 162728 (NDNY 2018) ........................................................14

*Chonich v. Wayne Cty. Cmty. Coll.*,
874 F.2d 359 (6th Cir. 1989) ........................................................................23

*Daniels v. Loizzo*,
986 F.Supp.245(S.D.N.Y. 1997)................................................................5, 7, 8

*Eng v. Scully*,
146 F.R.D. 74 (S.D.N.Y. 1993) ......................................................................9

*F.T.C. v. Swedish Match N. Am., Inc.*,
197 F.R.D. 1 (D.D.C. 2000)..........................................................................2

*Gyasi v. City of N.Y.*,
No. 05 Civ. 9453 (S.D.N.Y.) (transcript attached as an appendix hereto) ...........................21

*Hilburn v. N.J. Dep't of Corr.*,
Civ. No. 7-6064, 2012 WL 3133890 (D.N.J. July 31, 2012)..........................................9

*Huddleston v. United States*,
485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)........................................4, 6, 8

*Humbert v. O'Malley*,
303 F.R.D. 461 (D. Md. 2014)........................................................................2

*Hynes v. Coughlin*,
79 F.3d 285 (2d Cir. 1996)...........................................................................6

*Kemezy v. Peters*,
79 F.3d 33 (7th Cir. 1996) (Posner, J.) .............................................................22

*Lewis v. Velez*,
149 F.R.D.474(S.D.N.Y. 1993) ......................................................................6

*Mathie v. Fries,*
    121 F.3d 808 (2d Cir. 1997)..............................................................................21

*McCurdy v. City of New York,*
    Order ...................................................................................................................17

*In re N.Y.C. Policing During Summer 2020 Demonstrations,*
    548 F. Supp. 3d 383 (S.D.N.Y. 2021).............................................................15

*Nelson v. Brown,*
    673 F. Supp. 2d 85 (E.D.N.Y. 2009) ...............................................................17

*Nelson v. City of Chi.,*
    810 F.3d 1061,1069 (7th Cir. 2016) ..................................................................6

*Nibbs v. Goulart,*
    822F.Supp.2d 339,343 (S.D.N.Y. 2011)..........................................................5

*Outley v. City of N.Y.,*
    837 F.2d 587 (2d Cir. 1988)................................................................................9

*Perry v. Connecticut,*
    441 U.S. 966 (1979) (Marshall, J., dissenting from denial of cert.) .......................17

*Sallenger v. City of Springfield,*
    No. 03 Civ. 3093, 2008 WL 2705442 (C.D. Ill. July 9, 2008) ..................................2

*Scott Timber, Inc. v. United States,*
    93 Fed. Cl. 498 (2010) ........................................................................................2

*Sloley v. Vanbramer,*
    945 F.3d 30 (2d Cir. 2019)...................................................................5, 14, 15

*Smith v. State,*
    874 S.W.2d 720 (Tex. App. 1994)....................................................................13

*United States v. Beal,*
    No. 18-cr-00070-DKW-KJM-12, 2021 U.S. Dist. LEXIS 231350 (D. Haw.
    Nov. 30, 2021) ..................................................................................................12

*United States v. Gilan,*
    967 F.2d 776 (2d Cir. 1992)................................................................................6

*United States v. Harrington,*
    490 F.2d 487 (2d Cir. 1973)........................................................................17, 18

*United States v. Hicks,*
    748 F.2d 854 (4th Cir. 1984) .......................................................................23, 24

*United States v. Matera,*
    489 F.3d 115 (2d Cir. 2007)................................................................................11, 18

*United States v. Nazzaro,*
    889 F.2d 1158 (1st Cir. 1989)...................................................................................20

*United States. v. Ortiz,*
    553 F.2d 782 (2d Cir. 1988)........................................................................................7

*United States v. Polouizzi,*
    564 F.3d 142 (2d Cir. 2009).........................................................................................4

*United States v.Puco,*
    453 F.2d 539 (2d Cir. 1971).........................................................................................5

*United States v. Quinones,*
    511 F.3d 289 (2d Cir. 2007).........................................................................................7

*United States v. Reyes,*
    18 F.3d 65 (2d Cir. 1994) .........................................................................................18

*United States v. Scott,*
    677 F.3d 72 (2d Cir. 2012).........................................................................................18

*United States v. Shellef,*
    507 F.3d 82 (2d Cir. 2007)...........................................................................................7

*United States v. Washington,*
    106 F.3d 983 (D.C. Cir. 1997)...................................................................................20

*United States v. White,*
    692 F.3d 235 (2d Cir. 2012)................................................................................11, 18

*Vilkhu v City of NY,*
    No. 06-CV-2095 (CPS)(JO), 2009 US Dist LEXIS 16616 (EDNY Mar. 2,
    2009), *aff'd* 372 F. App'x. 222 (2d Cir. Apr. 21, 2010) ........................................16

*Wilson v. Mazzuca,*
    570 F.3d 490 (2d. Cir. 2009)......................................................................................17

*Young v. Calhoun,*
    No. 85 Civ. 7584, 1995 WL 169020 (S.D.N.Y., Apr. 10, 1995)...........................8, 9

*Zellner v. Summerlin,*
    494 F.3d 344 (2d Cir. 2007).......................................................................................10

## Statutes

N.Y. Pub. Off. L. §§ 17-18 .............................................................................................20

**Other Authorities**

Fed. R. Civ. P. 34(a) ................................................................................................1

Fed. R. Civ. P. 43(a) ................................................................................................2

Fed. R. Ev. 404(a)(1), 405(a) .................................................................................20

Fed. R. Evid. 104(b) .................................................................................................6

Fed. R. Evid. 401 .................................................................................3, 7, 11, 18

Fed. R. Evid. 402 .....................................................................................................6

Fed. R. Evid. 403 ............................................................................................ *passim*

Fed. R. Evid. 404(b) ........................................................................................ *passim*

Fed. R. Evid. 609(a)(1) ...................................................................................5, 7, 8

Fed. R. Evid. 609(b) .................................................................................................8

Fed. R. Evid. 611 ...................................................................................................22

Fed. R. Evid. 611(c) ...............................................................................................22

Fed. R. Evid. 611(c)(2) .....................................................................................22, 23

Randy Travis, *Georgia Southern QB says false-positive field test showed bird
    droppings as cocaine*, Fox5 Atl. (Aug. 9, 2019) .................................................12

Stephana Fedchak, Las Vegas Metropolitan Police Department, *Presumptive
    Field Testing Using Portable Raman Spectroscopy* (Jan. 2014) ...........................12

**PRELIMINARY STATEMENT**

Plaintiff respectfully submits this memorandum of law in support of his motions *in limine* set forth in his notice of motion.

**ARGUMENT**

**I.    THE COURT SHOULD ALLOW NON-PARTY WITNESS DAPHNE ROLLINS TO TESTIFY BY VIDEO CONFERENCE OR OTHER REMOTE MEANS — AND IN THE ALTERNATIVE, SHOULD ADJOURN THE TRIAL.**

Plaintiff seeks the Court's permission to arrange for a single witness, who resides outside the state and for whom traveling to participate in the trial would present significant hardship, to appear by videoconference or telephone for her testimony at trial.[1]

Ms. Rollins currently lives in North Carolina, making attendance at a trial in New York burdensome.  She will be attending a family function in North Carolina that week, and has very graciously committed to being able to step out for the several hours necessary for her testimony. However, travel to New York, in addition to posing risks associated with COVID-19 (since Ms. Rollins will be traveling across state lines after attending crowed functions), will simply be impossible without causing a significant personal inconvenience.  The general rule is that, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."  Fed. R. Civ. P. 34(a).

---

[1] When consulted via email, Defense's counsel objected to this request for witness testimony by videoconference and has provided no authority or reasoning for that objection, beyond the generic statement that the Attorney General offers no stipulations in prisoner cases (as discussed throughout).

Courts routinely permit trial witnesses to testify by live video when traveling to the place of trial presents a hardship. *See, e.g., Scott Timber, Inc. v. United State*s, 93 Fed. Cl. 498, 500 (2010) (Oregon-based witness permitted to testify by videoconferencing for Washington, D.C. trial); *F.T.C. v. Swedish Match N. Am., Inc*., 197 F.R.D. 1, 2 (D.D.C. 2000) (permitting live video testimony where traveling from Oklahoma to Washington, D.C. would present a "serious [in]convenience" for the witness); *Beltran-Tirado v. I.N.S*., 213 F.3d 1179, 1185- 86 (9th Cir. 2000) (upholding reliance on remote testimony where witness resided in Missouri and hearing was held in San Diego); *Humbert v. O'Malley*, 303 F.R.D. 461, 465-66 (D. Md. 2014) (witness's "responsibilities toward her young child" justified remote testimony); *Sallenger v. City of Springfield*, No. 03 Civ. 3093, 2008 WL 2705442, at *1 (C.D. Ill. July 9, 2008) (witness permitted to testify by videoconference given the "need for his presence at work" in another state). Here, the significant and avoidable hardship occasioned by requiring Ms. Rollins to travel from out of state for her testimony more than satisfies Rule 43(a).

Furthermore, sufficient safeguards are available for Mr. Roche's video testimony to eliminate any conceivable prejudice to Defendants. "[I]n assessing the safeguards of such contemporaneous transmissions, the courts focus on whether the testimony was made in open court, under oath, and whether the opportunity for cross examination was available." *Swedish Match*, 197 F.R.D. at 2 ("To prefer live testimony over testimony by contemporaneous video transmission is to prefer irrationally one means of securing the witness's testimony which is exactly equal to the other."). Here, Ms. Rollins would be testifying in real time, the jury would be able to fully observe her demeanor, and she would be subject to cross-examination in the same manner as every other trial witness. Permitting such testimony will not prejudice

Defendants, and the only result of requiring Ms. Rollins' attendance in person would be to needlessly subject her to hardship and inconvenience.

Finally, and unfortunately, because of the importance of Ms. Rollins' testimony, to the extent the Court does not grant this motion, Plaintiff asks the Court to adjourn the trial to be rescheduled, in consultation with Ms. Rollins, for a date that minimally inconveniences her — as opposed to the current date, which conflicts with what the undersigned understands to be a long-planned family function.

## II.    THE COURT SHOULD PRECLUDE OR NARROWLY CURTAIL EVIDENCE OF ANY OF MR. SLOLEY'S CRIMINAL HISTORY AND OTHER LAW SUITS

### a.    Evidence of Mr. Sloley's Criminal History Is Inadmissible Because it is Not Relevant Under FRE 401 and Unduly Prejudicial Under FRE 403

The Plaintiff in this case has a criminal history with various charges that were dismissed as well as some for which he was convicted. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Introducing testimony or other evidence about the Plaintiff's criminal history for actions that took place prior to his arrest on April 1, 2014, plainly falls short of this threshold.

First, any non-criminal violations have absolutely no probative value to the issue to be decided here – namely, whether the Plaintiff's constitutional right to be free from unreasonable searches was violated when he was subjected to a visual cavity search where the Defendant was looking for drugs (which did not reveal any drugs). For example, learning that the Plaintiff was charged with a non-criminal harassment violation, which was, as the Court is aware, related to an

altercation with his ex-girlfriend, will not assist the jury in coming to a determination on the facts of this case. An argument to the contrary would miss the mark because the search for drugs in the Plaintiff's body cavity is wholly separate from a domestic harassment incident, which eliminates the probative value.

Further, even if assuming, *arguendo*, the Court does find that the Plaintiff's criminal history is relevant to the facts of this case (though it should not), the Court has the discretion to exclude such evidence based on other strictures outlined in Fed.R.Evid. 403. *Huddleston v. United States*, 485 U.S. 681, 687–88, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Polouizzi*, 564 F.3d 142, 152-53 (2d Cir. 2009). Here, any evidence about the Plaintiff's criminal history would be prohibited under the balancing test of FRE 403: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A lay juror, while meant to accept the law as instructed to them by the Court, may be unable to fully understand the difference between a crime and a violation. This concern especially holds true here, since the Plaintiff did plead guilty to the charge, and there is even potential that the jurors misunderstand that guilty plea as somehow having some bearing on accompanying drug charges (which were dismissed and not pled to).

There is also the risk of jurors' passions being inflamed if they were to view the Plaintiff as somebody who regularly commits crimes — something Defendant has signaled very strongly he intends to argue. Since any probative value this evidence holds would be substantially outweighed by its prejudicial effect on the jury, the Defendant should be prohibited from proffering evidence of the Plaintiff's criminal history.

4

### b. Evidence of Mr. Sloley's Criminal History Is Inadmissible for Any Purpose Under FRE 404(b) or for Impeachment Purposes Under FRE 609

Evidence of the Plaintiff's criminal history is inadmissible character evidence under Fed. R. Evid. 404(b). Fed. R. Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show action in conformity therewith." Accordingly, the Second Circuit has cautioned that where a prior conviction is for the same offense as that at issue, "[t]he potential for prejudice ...is greatly enhanced." *United States v.Puco*, 453 F.2d 539, 542 (2d Cir. 1971); *Nibbs v. Goulart*, 822F.Supp.2d 339,343 (S.D.N.Y. 2011). Here, taking into consideration the underlying facts of this case, introducing evidence of the Plaintiff's criminal history serves no permissible or legitimate purpose, but instead will inflame the passions of the jury and encourage the jury to infer that the Plaintiff has a bad character and propensity to commit crimes.

The only possible purposes for admitting this evidence is to 1) embarrass the Plaintiff; 2) unduly prejudice the jury against the Plaintiff; and/or 3) as impermissible character evidence. The Plaintiff's character, however, is not at issue here — and any use will unfairly bolster Defendants' otherwise bare assertions that the Plaintiff was, "an individual who was well known in the area for being wrapped up in drugs" (an improper reason for the search even on its own). *Sloley*, 945 F.3d at 7. Therefore, the Defendant's only possible use for this evidence is explicitly prohibited under the limitations of Fed. R. Evid. 404(b). *See Daniels v. Loizzo*, 986 F.Supp.245, 249(S.D.N.Y. 1997) ("the proffer of such evidence amounts to nothing more than a veiled attempt to do what Rule 404(b) prohibits–introduce bad acts evidence to show a propensity to commit such acts").

Additionally, Fed. R. Evid. 404(b) only permits evidence of "other crimes, wrongs, or acts...' for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Hynes v. Coughlin*, 79 F.3d 285, 290 (2d Cir. 1996). The Supreme Court addressed these exceptions by outlining the test for the admissibility of other acts as evidence under Fed.R.Evid. 404(b) in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). For evidence to be admitted, four prongs must be satisfied: "1) the evidence must be introduced for a proper purpose, such as proof of knowledge or identity; 2) the offered evidence must be relevant to an issue in the case pursuant to Rule 402, as enforced through Rule 104(b); 3) the evidence must satisfy the probative-prejudice balancing test of Rule 403; and 4) if the evidence of other acts is admitted, the district court must, if requested, provide a limiting instruction for the jury." *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992).

Here, the Plaintiff's criminal history is not relevant to, or probative of, his or the Defendant's state of mind, conduct, or any other permissible purpose under Fed.R.Evid. 404(b). Nor are any of these "other purposes" relevant in this case, which is a prerequisite for admission under Fed. R. Evid. 404(b). *See Lewis v. Velez*, 149 F.R.D.474, 479 (S.D.N.Y. 1993) ("While it is true that Rule 404(b) permits evidence of other acts to show [another purpose], [that purpose] must in fact be at issue in the case to justify admission of such evidence.") Given that the criminal history is not probative of the Defendant's liability, in addition to having no bearing on the Plaintiff's credibility or character for truthfulness, admitting this evidence would improperly sway the jury towards making the inference that if the Plaintiff engaged in any sort of bad acts prior to his arrest, then it is part of his character to engage in criminal conduct. (*Nelson v. City of Chi.*, 810 F.3d 1061,1069 (7th Cir. 2016) (the court found prejudice could not be overcome where

evidence could be understood to suggest "that the plaintiff is a serial law breaker and general troublemaker and the police must have had probable cause to arrest him"). This type of inference is explicitly prohibited pursuant to the plain language of FRE 404(b) and ignores the purpose of this rule.

However, even if the Court was persuaded that evidence of the harassment violation was relevant pursuant to Fed. R. Evid. 401 and fell under an exception permitted by Fed.R.Evid. 404(b), the Court still retains the discretion to exclude the evidence due to risk of undue prejudice under the Fed. R. Evid. 403 balancing test. *United States v. Quinones*, 511 F.3d 289, 308-11 (2d Cir. 2007). An offer of evidence appropriately made under an exception allowed by 404(b) cannot escape the reach of FRE 403. *See, United States v. Shellef*, 507 F.3d 82, 101 (2d Cir. 2007).

Next, evidence of the Plaintiff's criminal history cannot be used to impeach him under Fed.R.Evid. 609 because its probative value, which is already nonexistent, is substantially outweighed by the danger of undue prejudice. Rule 609 explicitly provides that prior convictions of all witnesses other than a criminal defendant, including witnesses in civil actions like the Plaintiff here, must be admitted subject to Rule 403. Courts have held that, when balancing probative value against prejudicial effect under Fed. R. Evid. 609(a)(1), judges should examine the following factors: (1) the impeachment value of the prior crime; (2) the remoteness of the prior conviction; (3) the similarity between the past crime and the conduct at issue in the present litigation; and (4) the importance of the credibility of the witness. *See Daniels*, 986 F.Supp. at 250. The central factor to this analysis is whether the prior crime is particularly probative of credibility. *United States. v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1988).

Here, that the potential prejudicial effect weighs heavily against admission under Fed. R. Evid. 609(a)(1) as the Plaintiff's criminal history has no bearing on his veracity today. The only exception would be any crime that implicitly involves a dishonest act or false statement pursuant to Fed. R. Evid. 609(b). Although the Plaintiff has been convicted of a crime that involved an element of dishonesty – criminal impersonation in the second degree – this occurred in the 1990's, making it more than 10 years old. Under Fed. R. Evid. 609(b), any attempt to introduce this stale conviction into evidence would require reasonable written notice by the Defendant, which has not been given here (it remains unclear whether Defendants intend to use that conviction, in fact).

### c.   If the Court Finds that Evidence of Mr. Sloley's Criminal History is Admissible, the Court Should Issue a Limiting Instruction to the Jury

Pursuant to the fourth prong of the *Huddleston* test, if this Court were to determine that part or all of the Plaintiff's criminal history is admissible for purposes other than to prove character or criminal propensity under FRE 404(b), then this evidence should be accompanied by a limiting instruction. *Daniels v. Loizzo*, 986 F. Supp. 245, 248 (S.D.N.Y. 1997); *see also Huddleston,* 485 U.S. at 691-92 (holding that trial court must instruct jury that evidence can only be considered for limited purpose).  Plaintiff asks that the Court permit him to propose such an instruction prior to trial if the Court denies this motion.

### d.   Evidence of Other Lawsuits Plaintiff has Filed Should Be Excluded.

"It is well-settled in this Circuit that evidence of a plaintiff's litigiousness 'may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant.'" *Young v. Calhoun*, No. 85 Civ. 7584, 1995 WL 169020, at *6 (S.D.N.Y., Apr. 10, 1995) (quoting *Outley v. City of N.Y.*, 837 F.2d 587, 592 (2d Cir. 1988)) (collecting

authorities). The Court should apply this straightforward rule to exclude all evidence and testimony concerning other lawsuits filed by Plaintiff. Plaintiff's other suits have nothing to do with this case, and Defendant's only possible purpose in disclosing them to the jury would be to improperly prejudice the fact-finder against Plaintiff. *See Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993) (use of irrelevant prior litigations "would potentially unfairly prejudice the jury against Plaintiff by painting him as a litigious character who lacks validity").

In the absence of any proof whatsoever that Plaintiff's lawsuits have been baseless or fraudulent, there is no basis for their use at trial. *See Young*, 1995 WL 169020, at *6 (prior lawsuits admissible only "if defendants can prove that plaintiff has made similar claims that were found to be fraudulent").

Injecting the merits of Plaintiff's other lawsuits into the trial of this action would require an immense diversion of time and resources that is not justified by the vanishing probative value of the information. *See Outley*, 837 F.2d at 594 ("In order for a jury properly to consider [other lawsuits], the particular details of each action, and the extent to which the bringing of each action was justified, must be before the jury. Opening up this area thus invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues."); *see also, e.g., Hilburn v. N.J. Dep't of Corr.*, Civ. No. 7-6064, 2012 WL 3133890, at *24 (D.N.J. July 31, 2012) (sustaining exclusion of evidence regarding a prior settlement "to avoid confusion and to prevent the proceedings from diverging into the facts and circumstances of another lawsuit which, at best, would be a waste of time, and, at worst, could prejudicially suggest that Plaintiff was a serial litigant").

Here, the jury would need to consider the evidence concerning the other actions; would need to be instructed on the different burdens of proof and standards of causation governing each

set of claims; and would likely need to answer special interrogatories concerning the relative role of each factor in the various outcomes—which Defendants have not even proposed. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (discussing requirement that defendant request that the jury be specifically asked any factual question necessary for its affirmative defense).

In short, any attempt by Defendant to use other litigations commenced by Plaintiff in hisdefense would be unduly prejudicial, irrelevant, and a waste of time.

### III. UNLESS DEFENDANTS PROVIDE SUBSTANTIALLY MORE FOUNDATION AND EXPLANATION, DEFENDANTS SHOULD BE BARRED FROM SUGGESTING THERE WAS A POSITIVE DRUG KIT.[2]

Defendant has signaled they intend to suggest to the jury that there was a positive drug kit used on a miniscule amount — apparently barely visible, if at all, to the naked eye — of crack cocaine supposedly found in Mr. Slolely's car's driver's seat. The problems with this are legion.

The first, and most important, problem is that the drug test itself along with the supposed sample was destroyed nearly a decade ago. Despite requests that Defendant produce the policy under which the kit and sample were supposedly destroyed, Defendant has refused. In a context where Plaintiff — who, as Defendant will emphasize — had a substantial criminal record, this suggests that the sample and kit tell at least a more complicated story than the documents recording where it was stored (e.g., D-12; D-13).[3] That is, apparently the DA let Plaintiff off without even pleading guilty to a *crime* — let alone a serious one. With Plaintiff's record, if the

---

[2] These are the sole records Plaintiff has objected to foundation for.
[3] Defendants have also said they intend to bring a "NIK test, sample" (D-20; *see* Dkt. No. 93 at 4) to trial. It is unclear, however, whether the sample kit is even the same brand as the one destroyed — let alone the exact same kind of kit that was in use in 2013.

test indeed painted a black and white picture that he was carrying crack cocaine, that plea is at least questionable.

Moreover, the only indication that the test was positive is a handwritten notation that appears to be written by Bryan VanBramer. Allowing the "official record" in, when it is no more than the hearsay declaration of Bryan VanBramer, will likely suggest to the jury that there is some more formal check in preparing evidence locker records for truth than there is.[4] That poses serious issues under FRE 401 and 403. To be admissible, evidence must be both (1) relevant and (2) not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012); *see also United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007) ("The district court is commanded by Rule 403 to weigh the probative value against the unfair prejudice."). Here, because the statement is merely the hearsay of a witness who will already be testifying, its probative value is minimal at best. On the other hand, the danger of unfair prejudice, confusion, and misleading the jury is substantial: there is every chance the jury will take what the "official" evidence record shows as gospel. Particularly given that Defendant refuses to confirm evidence retention policies were followed in disposing of the kit and sample, that makes admission of the evidence locker records or other second-hand information about the supposed Nik test improper.

Finally, Defendant does not appear to intend to offer any testimony supporting the scientific validity of the field test. Assuming Defendant used — and intends to provide an example of — Nik's "Test G" for cocaine, crack, and free base (e.g., model no. 800-6077),

---

[4] That is, unless Defendant offers testimony of some other reason that an unsworn description of the kit is more reliable than sworn testimony.

courts have found various Nik tests not to be reliable, or at least not definitive. *See, e.g., United States v. Beal*, No. 18-cr-00070-DKW-KJM-12, 2021 U.S. Dist. LEXIS 231350, at *23 n.18 (D. Haw. Nov. 30, 2021) ("The Court's own cursory research indicates that NIK tests are not definitive").

Indeed, Nik's tests are not intended to be final — they can only produce what is called a "presumptive" positive (and the tests themselves are often called "Presumptive Drug Test Kits"[5]).[6] While the kits are fine for field purposes, they are sold with warnings, like the following: "[a] forensic laboratory is then ***required*** to qualitatively identify an unknown substance before a positive identification can be made." *See* Evident, "Nik ® Presumptive Drug Tests" (accessed Aug. 12, 2022), *available at* shopevident.com/category/drugs-narcotics/nik-presumptive-drug-tests (emphasis added). But that leaves two possibilities: either (1) no lab test was ultimately conducted, or (2) a lab test ***was*** conducted and was negative, which may explain why the drug charges were ultimately dropped. This is connected to the fact that — both anecdotally and in studies — Nik tests fall far short of being genuinely reliable. For example, bird droppings have tested positive on the same test that appears to have been used here. *See, e.g.,* Randy Travis, *Georgia Southern QB says false-positive field test showed bird droppings as cocaine*, Fox5 Atl. (Aug. 9, 2019) (also noting that Nik tests tested positive for "Breath mints... cotton candy... vitamins" and "It took months before the GBI crime lab results came back proving they were innocent"); Stephana Fedchak, Las Vegas Metropolitan Police Department,

---

[5] *See, e.g.,* https://tritechforensics.com/nik-presumptive-drug-tests/; https://arrowheadforensics.com/nik-presumptive-drug-test-pouch-kits.html; https://www.shopevident.com/category/drugs-narcotics/nik-presumptive-drug-tests.
[6] Part of the importance of this point is that, while it may be that a presumptive positive provides probable cause, probable cause alone ***is not*** a sufficient basis for a visual cavity search under the Second Circuit's decision in this case.

*Presumptive Field Testing Using Portable Raman Spectroscopy* (Jan. 2014) (report provided from the Las Vegas police to the DOJ, noting "the discovery of noncontrolled substances yielding false positive chemical field test results for methamphetamine and cocaine prompted the LVMPD Forensic Laboratory to research a superior field testing system for police officers to preliminarily identify controlled substances" and noting the field cocaine accuracy rate was only 73%).  If the Las Vegas Police's analysis is right — that the accuracy rate for similar cocaine field tests is only 73% — then the lack of the lab confirmation that good science demands should preclude the introduction of this evidence.

Ultimately, then, Defendant's proffer of the evidence storage records — and the hearsay statement that a Nik test was positive — creates far too much potential for confusion and misleading the jury.  Defendants' witness list indicates that they do not intend to call any expert witness to explain to the jury the scientific basis for the Nik Test, or its limitations.  That means that that offering the testimony to show that there ***was*** cocaine in Plaintiff car would be improper.  *See, e.g., Smith v. State*, 874 S.W.2d 720, 721 (Tex. App. 1994) ("We believe that Malloy's testimony about the performance and results of a field test is expert testimony. As such … he could not testify that the substance was cocaine.").

To the extent the Court allows the evidence in, it should give a curative instruction that instructs jurors that they may not consider the test as substantive evidence that Plaintiff ***in fact*** possessed cocaine.

### IV.    THE COURT SHOULD NOT INSTRUCT OR POLL THE JURY ON QUALIFIED IMMUNITY.

### a. The Affirmative Defense of Qualified Immunity is a Question of Law to be Determined by the Court

"Qualified immunity is, in general, a question of law to be decided by the court," which means that "a jury instruction on qualified immunity serves no legitimate purpose." *Brown v. Turriglio*, 2018 U.S. Dist. LEXIS 162728, *9-10 (NDNY 2018).  Thus, "[o]nce the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court." *Id, quoting Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).  To the extent Defendants believe there are relevant facts, they should elicit those facts by more targeted special interrogatories than what they have proposed — which is an instruction duplicative of the substantive constitutional standard (e.g., was it reasonable to conduct a visual cavity search vs. "could a reasonable officer … have believed that his search … was appropriate?").  Dkt. No. 99 at 2.

### b. Instructions on Qualified Immunity Will Likely Confuse the Jury

In this case in particular, given the Second Circuit's decision, there is a perfect overlap between the substantive 1983 elements and the remaining elements of qualified immunity.  That is, even if it were the jury's province to decide what law was clearly established at the time of the incident (it is not), that element was directly resolved in this case by the Circuit:  at the time of the incident here, the Court of Appeals' decision in *Hall* tipped the balance to clearly establish that "the Fourth Amendment requires visual body cavity searches conducted incident to any lawful arrest to be supported by a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity."  *Sloley v. Vanbramer*, 945 F.3d 30, 41 (2d Cir. 2019).  Or, put differently, any reasonable officer — if they *did not* have a reasonable suspicion — would not "have believed that his search … was appropriate under the

circumstances." Dkt. No. 99 at 2. Thus, the remaining one of qualified immunity's two elements — the existence of a constitutional violation — is already the question the jury is resolving on the merits.

Put simply, Defendants are attempting to relitigate the Circuit's clear conclusion: "Here, ***every reasonable officer*** in the VanBramers' position as New York State Troopers would have known that visual body cavity searches conducted incident to any arrest must additionally be supported by a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity ***and*** must be conducted in a reasonable manner." *Sloley v. Vanbramer*, 945 F.3d 30, 40 (2d Cir. 2019) (emphasis added).  Thus, if the jury answers "Yes" to the first inquiry on either verdict sheet (e.g., that there was no reasonable suspicion), then there is no remaining question:  no reasonable officer could think that they were allowed to search without a "specific, articulable factual basis [to] believe [Mr. Slolely] secreted evidence inside [his anal] cavity." *Id*.

In sum, qualified immunity is a "confounding doctrine," even for the most experienced jurists. *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 411 (S.D.N.Y. 2021).  Given that there is nothing to be gained from passing to the jury a duplicative question, the only thing to be gained from charging qualified immunity is confusion.  Thus, the Court should not separately charge qualified immunity.

## V.    THE COURT SHOULD NOT GIVE INSTRUCTIONS ON NOMINAL DAMAGES.

Plaintiff asks the Court not to charge on nominal damages.  In making that request, Plaintiff is electing not to pursue nominal damages. In other words, if the jury finds that Officer VanBramer violated Mr. Sloley's right to be free of unreasonable search, but that he has not

proven by a preponderance of the evidence that he is entitled to *any* compensatory damages, Mr.

Sloley foregoes his right to nominal damages.

A nominal damages charge is available to plaintiffs, for their benefit. Defendant does not

have the right to require a plaintiff to pursue nominal damages, or to a jury charge on nominal

damages, over a plaintiff's objection. *See, e.g., Vilkhu v City of NY,* No. 06-CV-2095 (CPS)(JO),

2009 US Dist LEXIS 16616 (EDNY Mar. 2, 2009), *aff'd* 372 F. App'x. 222 (2d Cir. Apr. 21,

2010). Although nominal damages are *available* to a person who was actually injured, Plaintiff

respectfully submits that the Court cannot, and should not, preclude Mr. Sloley from making the

strategic choice not to pursue nominal damages. As the Court explained in *Vilkhu*:

> Courts have long recognized the importance of a nominal damages award as a
> means for a plaintiff to vindicate a violation of his or her rights even in the
> absence of compensable injury. In *Carey v. Piphus*, the Supreme Court introduced
> the availability of nominal damages in a § 1983 action because of the "importance
> to organized society" that constitutional rights be respected, even where a plaintiff
> failed to establish actual injury. 435 U.S. 247, 266-67, 98 S. Ct. 1042, 55 L. Ed.
> 2d 252 (1978). That the availability of nominal damages, where appropriate, is
> intended to benefit the plaintiff is apparent from the entitlement language
> employed with respect to plaintiffs in the relevant case law. ...
>
> In cases where the proof of plaintiff's injury is slim or contested, however – and
> especially in cases where proof of the alleged constitutional violation hinges on
> the jury's determinations of witness credibility -- a nominal damages instruction
> affords the jury an opportunity to engage in improper compromise. In such cases,
> a plaintiff should be allowed to determine whether to seek both nominal and
> compensatory damages, or whether to remove the option of nominal damages
> from the jury's consideration and instead seek an outcome in his case based on his
> showing of proximately caused actual injury. To afford a defendant an equal right
> to a nominal damages charge in such a case would preclude a plaintiff from
> making this strategic choice.

*Vilkhu*, 2009 US Dist LEXIS 16616, at *19-21.

For the foregoing reasons, Plaintiff respectfully asks that the Court excise the nominal

damages charge from the Court's typical jury instructions.

### VI.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM DISPLAYING OR REFERENCING MR. SLOLEY'S MUGSHOT AND SHOULD PERMIT PLAINTIFF TO APPEAR IN CIVILIAN GARB.[7]

Defendant appears to intend to show the jury Plaintiff's mugshot.  *See* ECF No. 93 (D-10). Any mug shot of Plaintiff can likewise be intended only to impress on the jurors' minds an improper association between Mr. Sloley and criminality. As Justice Thurgood Marshall has observed, "displaying to the jury a mug shot . . . creates the same potential for prejudice as forcing [an individual] to stand trial in prison attire." *Perry v. Connecticut*, 441 U.S. 966, 966 (1979) (Marshall, J., dissenting from denial of cert.).  And for the very same reason, forcing Mr. Sloley to proceed with his civil case in prison attire (because he was later convicted of an unrelated crime) would create the same prejudice.  *See also, e.g.*, *McCurdy v. City of New York*, Order (Dkt. No. 121), 17-cv-5168 (GHW) (S.D.N.Y. Aug. 27, 2019) (ordering the BOP to accept clothing for an inmate to wear during a civil trial).

In the criminal context, the Second Circuit has found admission of a mug shot of a defendant so prejudicial as to violate the constitutional right to a fair trial. *United States v. Harrington*, 490 F.2d 487, 491 (2d Cir. 1973); *see also Nelson v. Brown*, 673 F. Supp. 2d 85, 94 (E.D.N.Y. 2009) (introduction of a mug shot tainted the jury process); *Wilson v. Mazzuca*, 570 F.3d 490, 507 (2d. Cir. 2009) (introduction of mug shot prejudiced defendant by implying "propensity for criminality and violence").

Because there is no dispute over Mr. Sloley's identity and any mugshot will not depict his injuries, the photographs are not relevant.  Even if Defendants could show a "demonstrable need

---

[7] Because Plaintiff is a prisoner with pro bono trial counsel, the undersigned respectfully requests that the Court indicate in advance it will approve a reasonable expenditure for a suit at good will, which the undersigned will procure in advance of trial.

to introduce the photographs," they would have to be admitted in a manner "that does not draw particular attention to the source or implications of the photograph[]." *Harrington*, 490 F.2d at 494. At the very least, the police markings and text of the pedigree form surrounding the photograph would have to be removed to avoid unnecessary and intolerable prejudice.

## VII. THE COURT SHOULD PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE CONCERNING PLAINTIFF'S FINANCIAL STATUS.

The Court should preclude the Defendants from seeking to introduce evidence concerning Plaintiff's financial status, job history, receipt of public assistance, and any financial arrangements within or concerning his household. These areas of testimony would serve only to smear, embarrass, or otherwise impugn Plaintiff, without offering any value to the jury. Accordingly, such evidence should not be permitted at trial.

To be admissible, under FRE 401 and 403, evidence must be both (1) relevant and (2) not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012); *see also United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007) ("The district court is commanded by Rule 403 to weigh the probative value against the unfair prejudice."). The evidence at issue here fails both tests.

Plaintiff's work and financial history have no bearing on the central factual dispute in this case, i.e., whether Officer VanBramer had a reasonable suspicion when he performed the visual cavity search. Issues relating to Plaintiff's job history are not relevant to his veracity nor does it tend to make any of the parties' claims or defenses more or less likely to be true. *See United States v. Reyes*, 18 F.3d 65, 72 (2d Cir. 1994) (finding reversible error where prejudicial effect of admitted evidence "was considerable and far exceeded the minimal or non-existent probative value of the evidence"); *United States v. Scott*, 677 F.3d 72, 78 & n.5 (2d Cir. 2012) ("While crimes, wrongs,

or bad acts may be more likely than other kinds of acts to demonstrate criminal propensity and thus be inadmissible for that reason under Rule 404(b), the Rule itself is in no sense limited to such acts" and covers "any conduct of the defendant which may bear adversely on the jury's judgment of his character").

Put simply, these areas of inquiry are of no probative value and are immaterial. At the same time, these areas of inquiry would embarrass Plaintiff and improperly suggest to the jury that Plaintiff's financial resources and employment history are somehow material to their consideration and evaluation of the evidence or the ultimate verdict in the case.

**VIII.    THE COURT SHOULD PRECLUDE THE DEFENDANT OR OTHER POLICE WITNESSES FROM TESTIFYING OR OTHERWISE PRESENTING DOCUMENTARY EVIDENCE OF AWARDS/COMMENDATIONS THEY RECEIVED DURING THE COURSE OF THEIR EMPLOYMENT AS LAW ENFORCEMENT OFFICERS**

In police misconduct trials, law enforcement officers, whether testifying as defendants or non-party witnesses, frequently attempt to discuss awards and/or commendations that they have received throughout their career relating to acts of purported bravery, valor, etc. Because such testimony is irrelevant to any issue at trial, represents impermissible propensity evidence in violation of Fed. R. Evid. 404(b), is inadmissible hearsay and otherwise unduly prejudicial, Plaintiff seeks an Order precluding the Defendant, and any law enforcement witnesses, from presenting such evidence.

Whether the individual Defendant or non-party law enforcement officers received commendations in the past has no relevance on whether Defendant violated Plaintiff's civil rights in this case. In fact, the sole purpose of presenting such testimony in police misconduct litigation is to convince the jury that the law enforcement officers are heroes who put their life on the line to

protect the citizenry, and, as a result, are more trustworthy. This purpose, however, constitutes inadmissible character testimony. See Fed. R. Evid. 404(b). It is also inadmissible hearsay, whose non-existent probative value is necessarily substantially outweighed by its danger of unfair prejudice. *See United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (in criminal prosecution for conspiracy to commit mail fraud and perjury, among other things, it was appropriate to exclude evidence of commendations as impermissible opinion evidence and inadmissible hearsay); *See also United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (commendations not admissible under Fed. R. Ev. 404(a)(1), 405(a), or 405(b)).

Put most simply, these factors do not make any witness more or less credible or truthful, and thus evidence of such unrelated service would be improper bolstering, as it would wrongly enhance the officers' credibility. Accordingly, any reference to the military history, community service, and civic service of any of the police witnesses, including any of the defendant, should be excluded.

## IX.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM MISLEADING THE JURY BY PRETENDING DEFENDANTS WILL NOT BE INDEMNIFIED FOR ANY DAMAGES AWARD

Defendant should be precluded under Fed. R. Evid. 403 from suggesting or implying in any way that individual Defendant will have to pay any judgment in this case. Defendant should not be permitted to introduce evidence of his financial circumstances because the State will indemnify him for any punitive damages awarded.  Upon information and belief, it is the State's nearly uniform and unwavering practice to indemnify damages awards for law enforcement personnel represented by the Attorney General.  That practice is also codified in N.Y. Pub. Off. L. §§ 17-18.  The State is required to "indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount

of any settlement of a claim, or shall pay such judgment or settlement; provided, that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment or duties." § 17(3)(a); *see also* § 18(4). While that duty is limited by "intentional wrongdoing," even if the jury returns a verdict of punitive damages, upon information and belief the Attorney General will fall back on the same view it expressed on appeal (and if not, Defendant VanBramer will likely file a claim under the same provision for exactly this reason): "in any event [VanBramer] could have reasonably but mistakenly believed that the facts before him met that standard—a bad guess in a gray area." Case No. 16-4213, Doc. No. 90 at 38 (Apr. 17, 2018).

In light of the law requiring indemnification of law enforcement personnel when any damages, including punitive damages, are assessed, and the likelihood that that that will happen in this case, any evidence of the officer's financial circumstances is irrelevant, affirmatively misleading, and inadmissible. *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders."). As Judge Scheindlin held in *Gyasi*:

> I am not going to mislead [the jury], thinking that [a punitive damages award] comes out of the poor officer's pocket and have the poor officer say, I have a wife and three kids and a mortgage, I can barely afford the payments, and I earn only 38,000, whatever. I am not going to have all that. If in fact the reality is that in the last 100 punitive damages awards the city has always indemnified, I am not going to have that testimony at all about his wife, kids and poor salary, because it's all irrelevant.

*Gyasi v. City of N.Y.,* No. 05 Civ 9453 (S.D.N.Y.) (transcript attached as an appendix hereto) at 6.

Evidence of Defendant's financial circumstances has no relevance because Defendant will not pay a dime of any damages award, compensatory or punitive. But even if the evidence were somehow minimally relevant, its "relevance" would be substantially outweighed by the danger of prejudice and affirmatively misleading to the jury under Fed. R. Evid. 403. The individual Defendant "should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) (Posner, J.). Accordingly, the jury should not be influenced by misplaced sympathy or the mistaken belief that individual Defendant will pay any damages out of his own pockets.

## X.     THE COURT SHOULD PERMIT PLAINTIFF TO CROSS THE DEFENDANTS AND OTHER STATE POLICE WITNESSES IN PLAINTIFF'S CASE-IN-CHIEF.

Plaintiff may elect to call Defendant and law enforcement witnesses in his direct case. To the extent he does, Plaintiff moves to be allowed to examine them with leading questions.

Rule 611 of the Federal Rules of Evidence provides, in relevant part, as follows:

(c) Leading Questions. Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:

> (1) on cross-examination; and
> (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

Fed. R. Evid. 611(c). By its terms, Fed. R. Evid. 611(c)(2) permits a party to examine "a hostile witness…or a witness identified with an adverse party" through the use of leading questions.

Plaintiff should be permitted to examine Defendant and other law enforcements witnesses called in Plaintiff's direct case through the use of leading questions because they are all employees of the State of New York. Therefore, they are "a hostile witness…or a witness identified with an adverse party."

As Judge Weinstein has noted, there are three reasons that historically weigh in favor of requiring non-leading questions on direct examination:

> First, that the witness is presumed to have a bias in favor of the party calling him; secondly, that the party calling a witness, knowing what that witness may prove, might by leading bring out only that portion of the witness' story favorable to his own case; and thirdly, that a witness, intending to be entirely fair and honest might assent to a leading question which did not express his real meaning.

Weinstein's Federal Evidence § 611.06, at 4-611 (citation and footnote omitted). None of these rationales apply here.

Plaintiff believes that non-party law enforcement witnesses will side with their fellow officers. Again, as Judge Weinstein has recognized, "[t]he prohibition against leading is inapplicable to hostile or biased witnesses, or to witnesses who sympathize with the opponent's cause or are unwilling for any other reason to reveal what they know." *Id. See also Bixby v. KBR, Inc.*, No. 09 Civ. 632(PK), 2012 U.S. Dist. LEXIS 143807 (D. Or. Oct. 4, 2012) ("I interpret the phrase 'a witness identified with an adverse party' as referring to a witness whose relationship to an opposing party is such that the witness' interests vis-à-vis the litigation proceedings in which the witness' testimony is offered can reasonably be expected, under all the applicable circumstances, to be either identical to those of the adverse party or, at minimum, both closely aligned with those of the adverse party and of comparable significance.") (relying on *Chonich v. Wayne Cty. Cmty. Coll.*, 874 F.2d 359 (6th Cir. 1989), and *United States v. Hicks*, 748 F.2d 854 (4th Cir. 1984)). Plaintiff should be able to examine the Defendant and any law enforcement witnesses through the use of leading questions.

XI.   **THE UNDERSIGNED RESPECTFULLY REQUESTS ALL PARTIES TO REFER TO THEM AS "PROF. GREEN," AND TO TAKE A LITTLE TIME TO PRACTICE USING "THEY" AND "THEM" PRONOUNS BEFORE TRIAL.**

It is not clear that this is exactly a request in limine, but it is an issue that I (that is, Remy Green — shifting to first person, given ) want to address in advance of trial.  As the Court likely knows, I am a non-binary, transgender person.  The current state of prejudice against transgender people in the United States is at something of a fever pitch.  In 2022 alone, as of ***March***, state law makers had proposed a record number (238) of bills targeting LGBTQ Americans — with half of them targeting transgender Americans specifically.  *See* Matt Lavietes, *Nearly 240 anti-LGBTQ bills filed in 2022 so far, most of them targeting trans people*, NBC (March 20, 2022). The rise in such prejudice is striking:



Anti-transgender bills    Other anti-LGBTQ bills

**Notes**
2022 totals are as of March 15

*Id.*  It is obviously not directly at issue in this case, and I do not want my identity to become a side show at trial — or otherwise distract the jury.  While the appropriate honorific for me in most situations is "Mx." (pronounced "Mix") — as opposed to Mr. or Ms." — that less conventional

honorific might lead to unnecessary jury confusion.  I am currently an Assistant Adjunct Professor at Baruch College, and have taught as a professor at three other colleges/universities (Boston University School of Law; John Jay College of Criminal Justice; New York University School of Continuing Studies).  Thus, I would ask everyone to refer to me as "Professor Green" during proceedings.  The honorific is appropriate as a title, non-gendered, and will not distract the jury or raise question (or otherwise invite application of the biases driving the wave of anti-transgender hatred and legislation).

And while "they" pronouns are less conventional than "he" or "she," my experience has been that if they are used without much comment, they are not particularly distracting[8] — and quickly adopted by people who see them used consistently.  Thus, to that end, I would ask that counsel (to the extent they are not used to singular "they" from family, social, or professional experience) practice a little bit in their heads of thinking and speaking about me using "they" pronouns (or just no pronouns at all).

---

[8] If anyone wants a mental trick for using "they" and "them" pronouns seamlessly, if you'll excuse the slight absurdity, imagining I am small group of several smaller attorneys in a trench coat will ensure verbs get conjugated properly.  This is the same way "you" and "your" pronouns have developed as they have shifted from exclusively being plural and replaced "thou" and "thee" (which were the traditional singular).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion

*in limine* in its entirety, and for such other relief as the Court deems just and proper.


Date:    August 12, 2022
         Ridgewood, NY

                                        Respectfully submitted,

                                        COHEN & GREEN, P.L.L.C.

                                        _____/s/_____
                                        J. Remy Green
                                        1639 Centre St Suite 216
                                        Ridgewood, New York 11385
                                        t: 929-888-9480
                                        e: remy@femmelaw.com

                                        *Pro Bono Trial Attorneys for*
                                        *Plaintiff*