UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MAXMILLIAN SLOLEY,

                                                               *Plaintiff*,

                    -against-                                    14-CV-0339

ERIC VANBRAMER,                                            CFH

                                                           *Defendant*.

## TRIAL BRIEF

                                                           LETITIA JAMES
                                                           Attorney General of the State of New York
                                                           Attorney for Defendant Eric VanBramer
                                                          The Capitol
                                                          Albany, New York  12224-0341

Mark G. Mitchell
Rachael S. Ouimet
Assistant Attorneys General, of Counsel

                                                                         Date:  August 12, 2022

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY…………………………………..1

    I.     THE SEARCH OF PLAINTIFF WAS PROPER……………………………………….9

    II.    ERIC VANBRAMER IS ENTITLED TO QUALIFIED IMMUNITY…………………12

CONCLUSION…………………………………………………………………………………..14

## PRELIMINARY STATEMENT

In this § 1983 action, inmate Plaintiff Maxmillian Sloley alleges that Defendant Eric VanBramer, a New York State Trooper, violated Plaintiff's Fourth Amendment rights with respect to a search of Plaintiff at a police station following Plaintiff's arrest on April 1, 2013. Defendant Eric VanBramer respectfully submits that the evidence will establish that the search of Plaintiff was proper and supported by reasonable suspicion. In addition, Eric VanBramer is entitled to qualified immunity because officers of reasonable competence could believe that, under these circumstances, the search was legal.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In March 2014, Plaintiff, *pro se*, filed the present Complaint pursuant to 42 U.S.C. § 1983 against the State of New York, Eric VanBramer, and Bryan VanBramer (identified incorrectly as "Brian VanBramer"). Complaint, Dkt. No. 1. Plaintiff alleged that in the early morning hours of April 1, 2013, while he was being booked at a State Police barracks in Greene County, New York, following his arrest, he was improperly strip searched by State Trooper Eric VanBramer. *Id.* at pp. 1-3. Plaintiff alleged that the strip search violated his Fourth Amendment rights because it "was conducted without probable cause or reason to believe that any contraband, dangerous materials, or incriminating objects or weapons would be found." *Id.* at p. 3. Plaintiff also alleged that Defendant Troopers Eric VanBramer and Bryan VanBramer made a false report stating that narcotics were found in the vehicle Plaintiff was driving at the time of his arrest. *Id.*

Upon his sua sponte review pursuant to 28 U.S.C. § 1915, United States Magistrate Judge Christian F. Hummel recommended dismissal of all claims against the State of New York as well as dismissal of all claims against the individual Defendants in their official capacities. Report-Recommendation and Order, Dkt. No. 15 at p. 5. The Magistrate Judge recommended that Plaintiff be allowed to proceed on his "claim alleging an unconstitutional strip and cavity search in violation

1

of the Fourth Amendment …." *Id.* The Report-Recommendation was accepted in its entirety. Order, Dkt. No. 17 at p. 2.

As recounted by the United States District Court for the Southern District of New York, Plaintiff Maxmillian Sloley's

> serious criminal history spans two decades. At age 14, he was convicted of an armed robbery. Between the ages of 18 and 20, Sloley was convicted of providing a false name, possessing drugs, selling drugs, and possessing a firearm. He also violated parole twice. In 2004, Sloley plead guilty to being a felon in possession of a firearm.

*United States v. Sloley*, No. 03-CR-1190, 2013 WL 5231462, at *1 (S.D.N.Y. July 18, 2013), *aff'd*, 568 Fed. App'x 79 (2d Cir. 2014).[1] For the firearm conviction, Plaintiff was sentenced to 88 months of imprisonment and 3 years of supervised release. *See United States v. Sloley*, 2013 WL 5231462, at *1. In June 2010, while Plaintiff was on supervised release for his 2004 firearm conviction, he was arrested in the Northern District for possessing drugs. *See id*. In January 2012, Plaintiff admitted that he violated the terms of his supervised release and was sentenced to a new 34-month term of supervised release. *See id*.

Plaintiff testified that on the weekend immediately prior to Monday, April 1, 2013, he spent time with his family in New York City. Plaintiff's Deposition Transcription, Dkt. No. 41-2 at p. 34. On Sunday night, at approximately 11:00 P.M., he dropped off his children at their mother's aunt's house in Catskill, New York. *Id.* at pp. 35-36. Plaintiff was driving a white Nissan Maxima that belonged to his mother Janet McDermott. *Id.* at p. 36. Plaintiff drove to the residence of

---

[1] Plaintiff has filed numerous actions and petitions challenging, among other things, his convictions, sentences, conditions of release, and prison disciplinary sanctions. *See United States v. Sloley*, No. 03-CR-1190, 2013 WL 5231462, at *1 (S.D.N.Y. July 18, 2013), *aff'd*, 568 Fed. App'x 79 (2d Cir. 2014*); Sloley v. United States*, No. 08-CV-111, 2009 WL 1834349 (S.D.N.Y. June 18, 2009) (S.D.N.Y. June 18, 2009); *Sloley v. O'Brien*, No. 7:07-CV-00507, 2008 WL 2852023 (W.D. Va. July 22, 2008); *United States v. Sloley*, 464 F.3d 355 (2d Cir. 2006), *cert. denied*, 549 U.S. 1316 (2007).

Daphne Rollins in Athens, New York, arriving at approximately 2:00 A.M on April 1. *Id.* at pp. 36-37. Plaintiff testified that Daphne Rollins "was my girlfriend or ex-girlfriend at the time. Somewhere in between those two." *Id.* at p. 36.

Plaintiff and Daphne Rollins talked about various issues, including whether Plaintiff had Percocet on him. *Id.* at p. 95. Plaintiff conceded that he sometimes possessed Percocet—a narcotic that he used for "recreational" purposes and for which he did not have a prescription—and that Daphne Rollins was aware of his practice. *Id*. Eventually, Plaintiff and Daphne Rollins began to argue about whether he was involved with another woman named Carrie Andersen. *Id.* at pp. 37-39. Plaintiff grabbed Ms. Rollins' cellular phone and ran out of the house. *Id.* at p. 38. Plaintiff claims that Ms. Rollins chased him, fell down the stairs, grabbed a bat and hit the windshield of his Maxima. *Id*. Plaintiff responded by grabbing the bat from her hands and using it to smash the windshield of Ms. Rollins' Ford Focus. *Id.* at p. 39. He threw the bat and her phone on the ground. *Id*. Plaintiff then jumped into his Maxima and drove away, in the direction of the Rip Van Winkle Bridge. *Id.* at pp. 39, 42.

Daphne Rollins called 911. As indicated in the Greene County 911 CAD Incident Detail, Ms. Rollins reported to the 911 dispatcher that Plaintiff took her cellular phone after an argument. Dkt. No. 41-3. She further stated that Plaintiff hit her, shoved her, and struck her car with a baseball bat. *Id*. Ms. Rollins provided Plaintiff's name and description, stated that he was driving a white Nissan Maxima, and indicated that he left the scene. *Id*.

Bryan VanBramer, a New York State Trooper, responded to the Greene County 911 dispatch by patrolling to Ms. Rollins' address in Athens. Ms. Rollins told Bryan VanBramer that she had been in an argument with Plaintiff which turned into a physical altercation. Among other things, Plaintiff dragged her from the outside of the residence up the front stairs and into the main

3

entrance—causing abrasions to her knees—and also struck her multiple times.  Plaintiff used a baseball bat to smash the windshield of her car and also took Ms. Rollins' cellular phone.  Ms. Rollins stated that Plaintiff left her residence in his vehicle before the police arrived.  Ms. Rollins stated that Plaintiff may be associated with illegal drug activity and may have drugs on him.

Bryan VanBramer observed that Ms. Rollins had abrasions and was upset.  He also observed damage to the windshield of Ms. Rollins' vehicle.  He found one aluminum baseball bat as well as one destroyed iPhone belonging to Ms. Rollins at the scene.

Plaintiff testified that before he reached the Rip Van Winkle Bridge, he was pulled over by a deputy from the Greene County Sheriff's Office.  Dkt. No. 41-2 at p. 43.  Bryan VanBramer called Defendant State Trooper Eric VanBramer.  Eric VanBramer works in the State Police's Canine Unit and also performs the other duties of a State Trooper.  Eric VanBramer worked with a canine named Ryder who was certified by the State Police in odor recognition of narcotics, including cocaine.  In addition, Eric VanBramer had been trained at the New York State Police Academy in how to identify drugs and how to perform various field tests.  In particular, Eric VanBramer was proficient in performing the NIK field test for cocaine, which is performed by placing evidence in a test kit and breaking ampoules to release liquid that interacts chemically with the evidence.  If cocaine is present, the substance will turn certain colors indicating a positive test.  Eric VanBramer has conducted hundreds of NIK tests in his career.

Bryan VanBramer requested that Eric VanBramer go to the location near the Rip Van Winkle Bridge where Plaintiff's vehicle had been stopped.  Bryan VanBramer advised that an individual named Maxmillian Sloley had been stopped there while fleeing in a vehicle used in a crime in Athens. Bryan VanBramer further advised that the complainant reported that Maxmillian Sloley was possibly in possession of a controlled substance.  Eric VanBramer recognized the name

4

Maxmillian Sloley as referring to an individual who was well known in the area for being involved with illegal drugs. Prior to April 1, 2013, several people had told Eric VanBramer that Maxmillian Sloley was a drug dealer.

Eric VanBramer drove to the location in question and observed Plaintiff's white Nissan Maxima. When Eric VanBramer brought his canine Ryder near that vehicle, Ryder had a positive alert on each side and the front hood exterior. Ryder also alerted on the center console area inside the vehicle. Eric VanBramer observed a small amount of a loose, chunky substance that looked like crack cocaine located in the crease in the driver's seat. It appeared that the driver had been in a hurry to hide that substance while he was sitting in the driver's seat but some of it fell onto the seat. In accordance with his training, Eric VanBramer performed a NIK field test on the substance. It tested positive for cocaine.

Plaintiff was transported to SP Catskill, a State Police station in Cairo, New York. As part of the standard procedure for processing an arrestee, Bryan VanBramer reviewed Plaintiff's criminal history provided by the New York State Division of Criminal Justice Services. Bryan VanBramer confirmed that Plaintiff was on federal probation at that time. Bryan VanBramer learned that Plaintiff had multiple felony convictions, some involving firearms. Notably, Plaintiff had convictions for possessing and selling drugs. Likewise, Plaintiff believed that the officers "had something on the computer" about his criminal history. Dkt. No. 41-2 at p. 75. Plaintiff recalled hearing a Trooper speak by phone to the prosecutor about Plaintiff's criminal history. *Id.* at p. 74.

Plaintiff testified that at some point Eric VanBramer entered the station and advised Plaintiff that drugs were found in the seat of Plaintiff's vehicle. *Id.* at 63-64. Plaintiff testified that Eric VanBramer escorted Plaintiff down a hallway to a smaller, private office. *Id.* at pp. 68-

70. Plaintiff testified that, at Eric VanBramer's direction, Plaintiff removed Plaintiff's clothing and Eric VanBramer searched each item of clothing. *Id.* at pp. 70-72. Plaintiff further testified that Eric VanBramer conducted a search of Plaintiff's person that was visual in nature; no one touched him. *Id.* at p. 71. Plaintiff recalled that, during the strip search, only Eric VanBramer and Plaintiff were present in the private room where it occurred. *Id.* at p. 69. Plaintiff testified that he did not think anyone else observed the strip search. *Id.* at pp. 69-70, 73. Plaintiff put his clothing back on and Eric VanBramer escorted him back to the main office. *Id.* at p. 72.

Bryan VanBramer advised Plaintiff that he would be charged with two counts of Criminal Mischief in the Third Degree (Penal Law § 145.05), a felony, based on his damage to Ms. Rollins' windshield and cellular phone; Criminal Possession of a Controlled Substance in the Seventh Degree (Penal Law § 220.03), a misdemeanor, based on his possession of less than one gram of crack cocaine; and Harassment in the Second Degree (Penal Law § 240.26(1)), a violation, based on his striking and dragging of Ms. Rollins. Once processing was complete, Plaintiff was transported to Athens Town Court and arraigned before a judge on the above-referenced charges. Plaintiff was remanded to Greene County Jail without bail due to his prior felony convictions. Approximately three days later, Plaintiff returned to Athens Town Court and was represented by a public defender. Dkt. No. 41-2 at pp. 80-82. Plaintiff agreed to a plea bargain according to which he pleaded guilty to Harassment in the Second Degree in satisfaction of all charges. *Id.* at p. 82.

Following Plaintiff's April 1, 2013 arrest in Greene County, the United States District Court, Southern District of New York, issued a summons directing Plaintiff to appear at a court conference concerning the status of his supervised release. *See United States v Sloley*, 2013 WL 5231462, at *1. On April 19, 2013, Plaintiff went to the courthouse, met with his lawyer, and then

fled the courtroom. *See id.* Five days later, the U.S. Marshals arrested the fugitive Plaintiff in the Northern District of New York. *See id*. At the time he was apprehended, Plaintiff was with his girlfriend Carrie Andersen in a trailer. Dkt. No. 41-2 at pp. 90-91.

At a violation proceeding, Plaintiff admitted that he violated the terms of his original supervised release by committing the state crime of harassment and leaving the judicial district without permission. *See United States v. Sloley*, 568 Fed. App'x at 79. On June 10, 2013, the U.S. District Court, Southern District of New York, sentenced Plaintiff to 14-months of imprisonment and a new 20-month term of supervised release. *See United States v. Sloley*, 2013 WL 5231462, at *1. Plaintiff's supervised release included the conditions that Plaintiff's travel was restricted to the Southern and Eastern Districts of New York (except with prior permission to leave for specific occasions) and that Plaintiff was subject to 24-hour GPS monitoring. *See id.* With respect to those conditions of supervised release, the U.S. District Court explained:

> [Plaintiff] has repeatedly travelled to the Northern District without permission. Indeed, when he fled the courtroom in April [2013], he did not go to his "stable residence" in Brooklyn. Instead, he travelled to a drug-infested trailer in the Northern District to be with his girlfriend. Even viewed in the best light, [Plaintiff's] physical proximity to drugs demonstrates extremely poor judgment. And each time that [Plaintiff] has travelled to the Northern District, his Probation Officer only learns about it because [Plaintiff] gets arrested.

*Id.* at *2.

At present, Plaintiff is serving an aggregate 14 year sentence in state prison, as a second violent felony offender, based on his convictions rendered in January 2017, by jury verdict, of criminal possession of a weapon in the second degree, unlawful fleeing from a police officer in a motor vehicle in the third degree, and reckless driving. *See People v. Sloley*, 179 A.D.3d 1308, 1308-1309 (3d Dep't 2020), *lv. denied*, 35 N.Y.3d 974.

By its Memorandum-Decision and Order filed on November 8, 2016, this Court granted the motion for summary judgment of Eric VanBramer and Bryan VanBramer and dismissed Plaintiff's Complaint. Dkt. No. 49. The Court explained:

> The facts here support a finding of reasonable suspicion even discounting Rollins' statement to the police, which as noted above, *see* Part II *supra*, is in dispute. Before the search, the police recovered drugs from the driver's seat of Sloley's car. (Defs.' SMF ¶ 36.) E. VanBramer inferred from the manner that the drugs were found that Sloley hurriedly attempted to hide them on his body as he was pulled over by the police. (*Id.* ¶ 35.) The police were also aware that Sloley was a drug dealer. (*Id.* ¶ 31.) Finally, the police knew that Sloley had past convictions for possession and sale of drugs. (*Id.* ¶ 38.) In total, these facts support the conclusion that there was reasonable suspicion that Sloley was concealing contraband on his person.
>
> Additionally, the manner that the search was performed was reasonable. Sloley was escorted to a private room in the station with one other officer. (*Id.* ¶¶ 40, 44-45, 47.) He removed his own clothing and the officer did not touch or reach inside his body cavities. (*Id.* ¶¶ 41, 43.) Accordingly, based on these facts, the search was constitutional.

*Id.* at pp. 8-9. The Court further determined that, even if Plaintiff's Fourth Amendment rights had been violated, Eric VanBramer was entitled to qualified immunity. *Id.* at pp. 9-10. Finally, the Court held that Bryan VanBramer should be dismissed from this lawsuit based on lack of personal involvement. *Id.* at pp. 5-6.

On appeal, the United States Court of Appeals, Second Circuit, "[vacated] the dismissal of [Plaintiff's] visual body cavity search claim against Eric VanBramer, and [remanded] the case for trial on the merits of [Plaintiff's] claim and the issue of Eric VanBramer's qualified immunity." *Sloley v. VanBramer*, 945 F.3d 30, 47 (2d Cir. 2019). The Court affirmed this Court's dismissal of all claims against Bryan VanBramer. *Id.*

Finally, it should be noted that Plaintiff does not challenge the legality of his arrest or the legality of the seizure of drugs from his automobile. *See* Dkt. Nos. 15 at p. 5; Dkt. No. 17 at p. 2 (specifying the claim that survived the Court's initial screening of the Complaint). Further, the

Second Circuit determined that "[Plaintiff] has forfeited any claim regarding the unconstitutionality of the strip search." *Sloley*, 945 F.3d at 37 n.4.

## ARGUMENTS

### POINT I

### THE SEARCH OF PLAINTIFF WAS PROPER

The United States Supreme Court has observed:

> The expectations of privacy of an individual taken into police custody necessarily are of a diminished scope. Both the person and the property in his immediate possession may be searched at the station house. A search of the detainee's person when he is booked into custody may involve a relatively extensive exploration, including requiring at least some detainees to lift their genitals or cough in a squatting position.

*Maryland v. King*, 569 U.S. 435, 462 (2013) (internal quotation marks, alterations, and citations omitted). "The Fourth Amendment requires an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest' before she may be lawfully subjected to a strip search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (alteration in original) (quoting *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986), *cert. denied*, 483 U.S. 1020 (1987); *see Sloley*, 945 F.3d at 39 (determining that the reasonable suspicion standard also applies to felony arrests). "A 'reasonable suspicion' of wrongdoing is something stronger than a mere 'hunch,' but something weaker than probable cause." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997) (some internal quotation marks omitted). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Id.* at 80 (quoting *Alabama v. White*, 496

U.S. 325, 330 (1990)). "Courts evaluate reasonable suspicion under the totality of the circumstances and allow officers 'to draw on their own experience and specialized training to [make] inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" Dkt. No. 49 at p. 8 (*quoting United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks and citation omitted)).

"Whether a particular strip search is constitutional 'turns on an objective assessment of the … facts and circumstances confronting [the searching officer] at the time, and not on the officer's actual state of mind at the time' of the search." *Hartline*, 546 F.3d at 100 (omission and alteration in original) (quoting *Maryland v. Macon*, 472 U.S. 463, 470-471 (1985)). Facts that tend to justify the strip search of an arrestee include

> (1) excessive nervousness; (2) unusual conduct; (3) an informant's tip; (4) computerized information showing pertinent criminal propensities; (5) loose-fitting or bulky clothing; (6) an itinerary suggestive of wrongdoing; (7) discovery of incriminating matter during routine searches; (8) lack of employment or a claim of self-employment; (9) needle marks or other indications of drug addiction; (10) information derived from the search or conduct of a traveling companion; (11) inadequate luggage; and (12) evasive or contradictory answers.

*Hartline*, 546 F.3d at 101 (citing *United States v. Asbury*, 586 F.2d 973, 976-977 (2d Cir. 1978)); *see also Ellsworth v. Wachtel*, No. 1:11-CV-0381, 2013 WL 140342, at *5 (N.D.N.Y. Jan. 11, 2013) (Kahn, J.). "While the crime of arrest is not a determinative factor, it is one officers may take into account in their consideration of the totality of the circumstances surrounding the search." *Sloley*, 945 F.3d at 39.

"The fruit of the poisonous tree doctrine is inapplicable to civil actions arising under § 1983." *Hinds v. City of N.Y.*, 768 F. Supp. 2d 512, 514 n.1 (S.D.N.Y. 2010) (*citing Townes v. City of New York*, 176 F.3d 138, 145, 149 (2d Cir. 1999), *cert. denied*, 528 U.S. 964). "[T]he fact that evidence which served the basis for an arrest is later suppressed does not, for purposes of a § 1983

claim, eviscerate the validity of the officer's decision based on his awareness of that evidence at the time of arrest." *Miller v. Carney*, No. 9:12-CV-972, 2014 WL 4677054, at *8 (N.D.N.Y. Aug. 7, 2014).

Here, the evidence at trial will establish that Eric VanBramer's search was appropriate and supported by reasonable suspicion. Plaintiff was charged with two counts of criminal mischief in the third degree (Penal Law § 145.05), a class E felony; criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), a class A misdemeanor; and harassment in the second degree (Penal Law § 240.26), a violation. Plaintiff was fleeing from the crime scene in his vehicle at the time he was stopped and apprehended by the police.

A search of Plaintiff's vehicle incident to his arrest uncovered crack cocaine in the driver's seat. *See People v. Swamp*, 84 N.Y.2d 725 (1995) (holding that police officer's testimony that he conducted a field NIK test indicating the presence of cocaine constituted legally sufficient evidence to support an indictment for possession of cocaine). The presence of cocaine in the place where Plaintiff was seated at the time of his arrest supported the reasonable suspicion that Plaintiff quickly transferred drugs to his person when he became aware that he would be stopped.

In addition, the victim, Daphne Rollins, advised Defendant Bryan VanBramer that Plaintiff may be involved in illegal drug activity and may have drugs on him. In his deposition testimony, Plaintiff conceded that he sometimes possessed Percocet—a narcotic that he used for "recreational" purposes and for which he did not have a prescription—and that Daphne Rollins was aware of his practice. Dkt. No. 41-2 at p. 95. Daphne Rollins reported that Plaintiff harmed her physically and smashed her car's windshield with a baseball bat. In addition, at the time of his arrest, Plaintiff was on supervised release relative to a conviction for felony weapons possession. Also, Plaintiff was well-known in the community for his involvement with illegal drugs. For

example, in June 2010, while Plaintiff was on supervised release, he was arrested in the Northern District for possessing drugs. *See United States v Sloley*, 2013 WL 5231462, at *1. In addition, Plaintiff repeatedly violated the terms of his supervised release by traveling to a "drug-infested trailer in the Northern District." *Id.* at *2.

The search was also justified by information regarding Plaintiff's criminal history. "A suspect's criminal history is a critical part of his identity that officers should know when processing him for detention." *King*, 133 S. Ct. at 1971. When a suspect is booked at a police station, the "task of identification necessarily entails searching public and police records based on the identifying information provided by the arrestee to see what is already known about him." *Id*. at 1972. Here, while Plaintiff was being processed at the police station, the officers accessed his criminal history from the New York State Division of Criminal Justice Services which indicated that Plaintiff had multiple felony convictions and had been convicted of possessing and selling drugs. *See United States v. Sloley*, 2013 WL 5231462, at *1. Such information constituted "computerized information showing pertinent criminal propensities." *See Hartline*, 546 F.3d at 101.

In sum, the trial evidence will show that the search of Plaintiff at SP Catskill was supported by reasonable suspicion and that judgment should be entered in favor of Defendant Eric VanBramer.

## POINT II

### ERIC VANBRAMER IS ENTITLED TO QUALIFIED IMMUNITY

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his

conduct did not violate plaintiff's rights." *Mandell v. Cnty. Of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). "Qualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation." *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal citations and quotation marks omitted). "In light of these considerations, [courts] have developed a standard for determining whether an officer is entitled to qualified immunity that is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) (quoting *Provost*, 262 F.3d at 160).

"[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If the illegality of the conduct would not be so apparent, the officer is entitled to qualified immunity." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (internal citations and quotation marks omitted). "An officer's actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the defendants' actions." *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001) (internal quotation marks omitted). "[I]f at least some reasonable officers in the defendant's position could have believed that [the challenged conduct] was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." *Zalaski*, 723 F.3d at 389 (internal quotation marks omitted).

Here, in light of evidence discussed above, it cannot be said that no reasonable officer in Eric VanBramer's position could have believed that the alleged search of Plaintiff at the police station was appropriate. At worst, Eric VanBramer made a "reasonable mistake" as to whether the alleged search was supported by reasonable suspicion and thus he is protected by qualified

13

immunity. *See Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 499.

## CONCLUSION

Based on the above reasons, Defendant respectfully submits that judgment should be entered in favor of Defendant, and this action should be dismissed in its entirety and with prejudice.

Dated: Albany, New York
August 12, 2022

                                            LETITIA JAMES
                                            Attorney General of the State of New York
                                            Attorney for Defendant Eric VanBramer
                                            The Capitol
                                            Albany, New York 12224-0341


                                            By: *s/ Mark G. Mitchell*
                                            Mark G. Mitchell
                                            Assistant Attorney General, of Counsel
                                            Bar Roll No. 516818
                                            Telephone: 518-776-2583
                                            Fax: 518-915-7738
                                            Mark.Mitchell@ag.ny.gov

                                            By: *s/ Rachael S. Ouimet*
                                            Rachael S. Ouimet
                                            Assistant Attorney General, of Counsel
                                            Bar Roll No. 703304
                                            Telephone: 518-776-2599
                                            Email: Rachael.Ouimet@ag.ny.gov

To:    Via ECF
        J. Remy Green
        Cohen & Green P.L.L.C.
        1639 Centre Street
        Suite 216
        Ridgewood, NY 11385