UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MAXMILLIAN SLOLEY,

                    Plaintiff,                  14-cv-339 (GLS/CFH)

    -v-

ERIC VANBRAMER,

                    Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE***

COHEN & GREEN, P.L.L.C.
1639 Centre St, Suite 216
Ridgewood, New York 11385
(929) 888-9480

Pro Bono Trial Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.    DEFENDANT SHOULD NOT BE ALLOWED TO QUESTION PLAINTIFF ABOUT HIS OTHER LAWSUITS (responding to Dkt. No. 107-1, Point I), AND SHOULD NOT BE ALLOWED TO INTRODUCE ADMITTEDLY IRRELEVANT MEDICAL RECORDS (responding to Dkt. No. 107-1, Point III). ................................................... 2

    II.    DEFENDANT SHOULD NOT BE PERMITTED TO INTRODUCE FELONY CONVICTIONS (responding to Dkt. No. 107-1, Point II ............................................. 7

    III.    PLAINTIFF DOES NOT INTEND TO INTRODUCE HEARSAY EVIDENCE OF OTHER IMPROPER SEARCHES (responding to Dkt. No. 107-1, Point IV). ............. 7

    IV.    PLAINTIFF DOES NOT INTEND TO REFERENCE ANY DISMISSED CLAIMS (responding to Dkt. No. 107-1, Point V) ........................................................................ 8

    V.    THE COURT SHOULD NOT QUASH PLAINTIFF'S TRIAL SUBPOENA (responding to Dkt. No. 113-1, Point I). ................................................................................................ 8

        a.    Construing the motion as a motion to quash, the Court should deny it. ......................... 9

        b.    Even construed as a discovery request, the trial subpoena is proper. ........................... 10

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brewer v. Jones*,
   222 F. App'x 69 (2d Cir. 2007)..................................................................................6

*Crenshaw v. Herbert*,
   409 F. App'x 428 (2d Cir. 2011)................................................................................11

*Dukes v. Schuck*,
   637 Fed. App'x 37 (2d Cir. 2016)...............................................................................6

*Gross v. Lunduski*,
   304 F.R.D. 136 (W.D.N.Y. 2014)..............................................................................11

*Jean-Laurent v. Hennessy*,
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) ................................................................2, 5, 6

*Lewis v. Velez*,
   149 F.R.D. 474 (S.D.N.Y. 1993) ................................................................................6

*Lore v. City of Syracuse*,
   670 F.3d 127 (2d Cir. 2012).........................................................................................4

*Mitchell v. Siersma*,
   No. 14-CV-6069G, 2017 U.S. Dist. LEXIS 109751 (W.D.N.Y. July 14, 2017).........4

*Olsen v. Cty. of Nassau*,
   615 F. Supp. 2d 35 (E.D.N.Y. 2009) ...........................................................................4

*Revander v. Denman*,
   2004 U.S. Dist. LEXIS 628 (S.D.N.Y. Jan. 20, 2004) ...........................................9, 10

*Ruhlmann v. Ulster Cty. Dep't of Soc. Servs.*,
   194 F.R.D. 445 (N.D.N.Y. 2000)................................................................................4

*Sims v. Blot*,
   534 F.3d 117 (2d Cir. 2008).........................................................................................5

*Sloley v. Hudson*,
   12-cv-01751 ...........................................................................................................2, 3

*Sloley v. Lebow*,
   17-cv-00068 .................................................................................................................3

*Sloley v. Seeley*
    (18-cv-856) ...........................................................................................................3

*Sloley v. Vanbramer*,
    945 F.3d 30 (2d Cir. 2019)................................................................................5, 7

**Other Authorities**

Fed. R. Ev. 609 ...........................................................................................................9

Fed. R. Ev. 801(d)(1)(A)..............................................................................................2

Rule 33(b)(4)..............................................................................................................10

Rule 34 .......................................................................................................................10

Rule 34(b)(2)(B) ........................................................................................................10

Rule 34(b)(2)(C) ........................................................................................................10

S.D.N.Y. Local Rule 83.10 ........................................................................................11

# PRELIMINARY STATEMENT

Plaintiff offers the following as his opposition to Defendant's motions *in limine*. Defendants, across their motions, seek six forms of *in limine* relief (*see* Dkt. No. 107-1 at 3; 113-1 at 1):

> (1) Permitting defense counsel to cross-examine Plaintiff about the allegations in his other lawsuits;
>
> (2) Permitting defense counsel to inquire into Plaintiff's felony convictions, including the statutory names of the offenses, the dates of conviction, and the overall sentences imposed;
>
> (3) Admitting as evidence the records from Dr. Kessler;
>
> (4) Precluding Plaintiff from offering any testimony or other evidence at trial about:
> (a) other individuals being searched by Eric VanBramer or by other State Troopers; and
> (b) Eric VanBramer or other State Troopers having a reputation for carrying out improper searches;
>
> (5) Precluding any reference to claims previously dismissed by the Court; and
>
> (6) Barring both (a) introduction of disciplinary records related to police witnesses and (b) any cross-examination about police witnesses' disciplinary histories.

As explained below, Plaintiff does not have any intention of offering the evidence discussed in (4) and (5), at least outside of any direct testimony from VanBramer about pervious searches.[1] As to the rest, Defendants' requests should be denied.

---

[1] That is, as explained below, Plaintiff *does* intend to ask Defendant VanBramer directly about things like whether he has conducted visual cavity searches under other circumstances — and whether or not those searches produced results. That information goes directly to whether Defendant VanBramer had a reasonable suspicion that he would specifically find contraband in Mr. Sloley's anal cavity. But Defendant's main objection seems to be about "[u]ndated, non-specific, hearsay accounts of other alleged incidents" — perhaps offered by Plaintiff himself. But just like any testimony about Plaintiff's reputation, such hearsay would be "nothing more than an attempt to show that [the party] has a propensity to commit such acts." Dkt. No. 107-1 at 8.

1

**ARGUMENT**

I.  **DEFENDANT SHOULD NOT BE ALLOWED TO QUESTION PLAINTIFF ABOUT HIS OTHER LAWSUITS (responding to Dkt. No. 107-1, Point I), AND SHOULD NOT BE ALLOWED TO INTRODUCE ADMITTEDLY IRRELEVANT MEDICAL RECORDS (responding to Dkt. No. 107-1, Point III).**

Defendant's argument that they should be allowed to question Plaintiff about "his allegations" in one unresolved lawsuit and two that have been resolved is (Dkt. No. 107-1 at 3[2]), essentially, that the damages are overlapping. That is, they argue that "Plaintiff alleged injuries nearly identical to those he alleges in the present action, and he claimed a cause of those injuries that is unrelated to Defendant" — and thus, they claim, the fact that Plaintiff has filed other claims with emotional distress related damages makes those suits relevant.

That does not necessarily follow. As Defendant's own case dictates, the only proper purpose of reference to other lawsuits is to admit them "as a prior inconsistent statement as to causation under Federal Rule of Evidence 801(d)(1)(A)." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 543 (E.D.N.Y. 2011). And, as explained in Plaintiff's motion in limine, offering prior suits for the purpose of showing a party is a serial litigant is categorically improper. *See generally*, Dkt. No. 104-1 at 8-10 (Point II.b).

Additionally, it is not clear how the damages *in fact* overlap in the other suits, even putting all of that to the side. *Sloley v. Hudson*, 12-cv-01751 was resolved by a stipulation of dismissal in February of 2014. And to introduce a case resolved that way, the Court would need to explain to the jury the circumstances under which parties discontinue actions (as is common), that such resolution is not unheard of, and so on. Moreover, that will inevitably result in a

---

[2] All page references are as paginated (rather than as stamped by the ECF system, when the two differ).

satellite trial: the dismissal in *Hudson* is directly the subject of litigation in *Sloley v. Lebow*, 17-cv-00068. That is, as Judge McAvoy explained it, here is the basic summary of the case: "Plaintiff alleges that he hired Defendants to file a civil complaint in this District. Defendants filed suit, but then dismissed the action without his knowledge or consent." *Lebow*, Dkt. No. 100 at 1. Explaining to the jury exactly how that morass **might** impact causation here would likely require far more context than can be offered in the short time available for trial here. Because *Lebow* remains ongoing,[3] the question of why *Hudson* was dismissed becomes much more complicated. And dealing with all of that poses significant issues that far outweigh the potential probative value of asking Plaintiff whether he suffered *different* emotional distress because of a different strip search.

Similarly, offering anything about *Sloley v. Seeley* (18-cv-856) would also cause satellite litigation issues. *Seeley* was not decided on the question of whether Plaintiff suffered injuries — or even whether something happened that caused injuries. Rather, there was no question that Plaintiff "did not receive any medical attention" for several days following arrival at a custodial facility, that he was not allowed a restricted diet because of his history of high blood pressure — and a variety of other issues.[4] *Seeley,* Dkt. No. 10 at 3. The Court dismissed those claims because "the case law of this Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years" (*Id*

---

[3] The case was administratively closed "until such time as Plaintiff [was] able to secure his appearance at trial," but later the Court entered an Order finding "that the order closing the case constituted clear error of law." *Lebow,* Dkt. No. 100 at 2.
[4] *See, e.g., Seeley,* Dkt. No. 10 at 3 (detailing issues with heat and cold, unsanitary facilities, neck and back pain caused by the quality of sleep facilities, and — as was later exposed to be a much larger problem by the COVID-19 pandemic, issues with transmission of viral disease).

at 5-6) — as well as for personal involvement and *Monell* pleading issues. To explain this resolution to a jury, the Court would need to — without it having direct relevance — explain the extraordinarily high (and non-intuitive) burdens prisoners face in litigating medical care claims. And *then* it would have to give instructions limiting the use of the suit, since it relates not to the garden-variety emotional distress claims here, but to other issues (which accrued much later than the claims here). None of that is a good use of the parties', the Court's, or the jury's time.

On that point, Defendant appears to conflate *all* emotional distress as the same thing. That is contrary to caselaw: what are at issue as Plaintiff's damages here are conventional, "garden variety" emotional distress damages. This Court has offered the following explanation in the past:

> "Garden-variety" means ordinary or commonplace. Webster's New World Dictionary 656 (3d College ed. 1988). Garden-variety emotional distress, therefore, is ordinary or commonplace emotional distress. Garden-variety emotional distress is that which simple or usual. In contrast, emotional distress that is not garden-variety may be complex, such as that resulting in a specific psychiatric disorder, or may be unusual, such as to disable one from working.

*Ruhlmann v. Ulster Cty. Dep't of Soc. Servs.*, 194 F.R.D. 445, 449 n.6 (N.D.N.Y. 2000).

While garden variety damages *can* be quite significant (*see, e.g., Lore v. City of Syracuse*, 670 F.3d 127, 179 (2d Cir. 2012) (affirming an award of $150,000.00 in garden variety emotional distress damages)), they are categorically different than severe emotional distress damages. That is, though "[g]arden variety emotional distress claims generally merit $ 30,000 to $ 125,000 awards" (*Olsen v. Cty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (discussing at length the kinds of emotional distress claims)), they are the kinds of damages that a reasonable person suffers directly from certain kinds of conduct. *See, e.g., Mitchell v. Siersma*, No. 14-CV-6069G, 2017 U.S. Dist. LEXIS 109751, at *6-7 (W.D.N.Y. July 14, 2017) ("I do not find that Mitchell's expected testimony about his emotional distress amounts to a claim for more than

4

garden variety distress, particularly because it will not be accompanied by medical evidence or testimony, evidence that he was diagnosed with a psychiatric disorder, or evidence that his distress resulted in physical manifestation").

This distinction makes clear that Defendant's claim that there are overlapping causation and damage issues is definitionally misguided. Plaintiff only seeks to recover for those damages that a reasonable person would experience when — and that come part and parcel when — a police officer unlawfully engages in a inherently "degrading" search that, by its very nature, "require[s] an arrestee not only to strip naked in front of a stranger, but also to expose the most private areas of her body to others." *Sloley v. Vanbramer*, 945 F.3d 30, 38 (2d Cir. 2019). Those damages exist whether or not Plaintiff has been harmed in other ways, on other dates. Indeed, Defendant's argument seems to be that it's *less bad* to search Plaintiff's anus because he has had his rights violated by the police (and by his former counsel) in other instances. That argument should not work.

Finally — and for largely the same reasons — Defendant should not be allowed to introduce the irrelevant and hearsay medical records from Dr. Kessler. Under *Sims* and its progeny (*Sims v. Blot*, 534 F.3d 117, 142 (2d Cir. 2008)), use of mental health records where a plaintiff disclaims "any non-garden variety emotional injury" is improper. And here, Plaintiff only has garden-variety claims: he is seeking to recover for the emotional harm that any reasonable person, in the same situation, would experience.

Defendant's cases are not to the contrary. For example, the decision in *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 543 (E.D.N.Y. 2011)[5] only permitted the defendant to introduce

---

[5] Judge Matsumoto's decision in *Jean-Laurent **does*** grant very similar in limine relief to other things Plaintiff is seeking here — and defendant is opposing. *See, e.g., id.* at 545 (precluding defendants from referring to a prior

5

"limited deposition testimony" — as well as the fact of the action — where that testimony *was in fact* a prior inconsistent statement. But here, Defendant is not attempting to introduce deposition testimony inconsistent with any statement Plaintiff has made here. So the reasoning in *Jean-Laurent* simply does not apply. So too with *Brewer v. Jones*, 222 F. App'x 69, 71 (2d Cir. 2007), which does not specify the injuries or previous cases, but strongly suggests that they *in fact* showed a possible alternative cause of injuries; and *Dukes v. Schuck*, 637 Fed. App'x 37, 39 (2d Cir. 2016) and *Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993), which does not appear to address prior litigation at all.[6]

Yet, Defendant's only argument on this point is that "Dr. Kessler's records are probative as to the nature of Plaintiff's mental and emotional conditions and the causes of them." Dkt. No. 107-1 at 9. That seems to be based on a misreading of the records. As the transcript Defendant himself points to says, this case was "not the reason [Plaintiff] went there." Dkt. No. 41-2 at 108:5-8. Indeed, as a review of the records shows, they have nothing to do with "the nature of Plaintiff's mental and emotional" *injuries* at all. Instead, contrary to what he says in his motion, Defendant appears to want to use Dr. Kessler's records as a backdoor to reiterate to the jury that they think Mr. Sloley is a bad person — and to color any sympathy the jury might have for him with Dr. Kessler's comments like, "Maximillian seems to be unable to recognize the feelings or needs of others nor does he care." D15 at 13. But *that* use is facially improper, particularly

---

conviction); at 546 (precluding defendants from entering an order of protection against the plaintiff related to domestic abuse).

[6] Defendant appears to cite these for the uncontroversial principle that alternative causes are relevant to challenging specific injuries. But the application goes too far. For example, *Lewis* involved specific, visible "injuries to [the plaintiff's] head, face, and left eye." *Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993). The Court deferred ruling on admissibility before seeing relevant portions of the records — so it could evaluate whether they in fact called into question causation. That is a far, far cry from what Defendant seeks to do here: to admit a complaint filed years after the events, with the apparent argument that somehow Plaintiff could only have suffered garden variety emotional distress a single time in his lifetime.

when Dr. Kessler will not be available to be cross-examined on how he reached that view of Mr. Sloley.

Finally, to the extent Defendant identifies some portion of the record that is (1) somehow not hearsay and (2) relevant, the records should be otherwise redacted.

## II. DEFENDANT SHOULD NOT BE PERMITTED TO INTRODUCE FELONY CONVICTIONS (responding to Dkt. No. 107-1, Point II

Plaintiff explains in his own motion in limine why Defendant's requests to admit various convictions should be denied — and in fact, Defendant should be precluded from offering the jury that information. *See* Dkt. No. 104-1 at 3-8. Defendant's analysis does not supersede that. Nor does Defendant's analysis gel with the Second Circuit's decision in this case. Defendant says that "the police's knowledge that Plaintiff had past convictions for possession and sale of drugs tends to support the conclusion that there was reasonable suspicion that Plaintiff was concealing contraband on his person." Dkt. No. 107-1. Wrong. As the Circuit explained: "some suspicion that Sloley might have been involved in drug activity generally" does not constitute a freestanding "factual basis to reasonably conclude he was secreting drugs inside his anal cavity." *Sloley v. Vanbramer*, 945 F.3d 30, 45 (2d Cir. 2019). Rather, what would be relevant would be whether "Sloley himself was previously known to **secrete drugs inside his anal cavity.**" Sloley, 945 F.3d at 46 (emphasis added). None of the prior offenses suggest anything of the kind. Instead, they suggest Defendant intends to present exactly the theory of the case the Circuit rejected: that, at least when drugs are concerned, "a strip search [can] be treated as a routine search of an arrestee's person." *Id.* at 37.

## III. PLAINTIFF DOES NOT INTEND TO INTRODUCE HEARSAY EVIDENCE OF OTHER IMPROPER SEARCHES (responding to Dkt. No. 107-1, Point IV).

Plaintiff and Defendant appear to be in accord on this point. Plaintiff does not intend to adduce any evidence about Defendant (or other state troopers) having a general reputation[7] for conducting improper searches. All Plaintiff intends to do on this count is to ask Defendant to discuss his personal experience with strip searches and cavity searches. As Defendant concedes, information about "the police's knowledge" (albeit in a different context) is relevant to the reasonable suspicion analysis. Plaintiff should be allowed to probe what a reasonable officer in Defendant's position would expect to find, by asking about what he *has* (or has not) found in the past.

### IV. PLAINTIFF DOES NOT INTEND TO REFERENCE ANY DISMISSED CLAIMS (responding to Dkt. No. 107-1, Point V)

Like the point above, Plaintiff and Defendant appear to be in accord here. Plaintiff does not intend to mention any dismissed claims or dismissed defendants. But by the same token, Defendant should not be permitted to state that any claims or defendants have been dismissed — at least, not without Plaintiff getting to explain what they were and why they were dismissed. But since the parties appear to agree that any reference to the case as it existed before trial would be "confusing and a waste of time" for the jury (Dkt. No. 107-1 at 10), Plaintiff agrees the Court should bar everyone from discussing dismissed claims and mentioning that any dismissed party was previously a party.

### V. THE COURT SHOULD NOT QUASH PLAINTIFF'S TRIAL SUBPOENA (responding to Dkt. No. 113-1, Point I).

---

[7] This is for much the same reason Defendant should not be permitted to argue that Plaintiff is someone who has been convicted of felonies and had drugs, and therefore, on this specific occasion, he did things that involved drugs and crimes.

### a. Construing the motion as a motion to quash, the Court should deny it.[8]

Defendant's prime argument is that records and histories are not relevant. But that argument is threadbare — because Defendant has not stated what disciplinary history exists. Obviously, if, for example, Defendant VanBramer has been disciplined for engaging in improper cavity searches, that would be relevant. So too if Defendant VanBramer — or his brother — have been disciplined for conduct that involved a lack of candor, since such a history would be relevant for impeachment (at least, in an analogy to Rule 609, if it was not more than 10 years old). The subpoena that Plaintiff served was very limited. It only asked for: "Documents sufficient to identify, by allegation, date, and disposition, any investigation or complaint of any kind concerning Eric VanBramer or Bryan VanBramer, that is: (1) less than 10 years old; and (2) concerns similar allegations to those in this case OR concerns allegations relating to truthfulness." Green Ex. 1.

In short, there is no question that the records requested would be relevant. The only question is the procedural propriety of the trial subpoena. Defendant's only argument on ***that*** front is that "it is too late for Plaintiff to demand the records of Eric VanBramer and Bryan VanBramer." Dkt. No. 113-1 at 2. For this proposition, Defendant cites a case rejecting trial subpoenas that were discovery requests in disguise: "Defendant's argument that the subpoenas are trial, as opposed to discovery, subpoenas is belied by their broad scope. Subpoenas calling for "any and all records" are exactly the kind of "shotgun" subpoenas that should not be issued on the eve of trial." *Revander v. Denman*, 2004 U.S. Dist. LEXIS 628, at *4 (S.D.N.Y. Jan. 20, 2004). But that broad scope is absent here.

---

[8] While Plaintiff had not served a trial subpoena as of the date Defendant filed the motion, he served it shortly after (asking, given the prior representation status, that Defendant's counsel confirm whether personal service was objectionable as a communication with a represented party — which Defendant's counsel has not responded to).

Instead, the records will be relevant, since Plaintiff intends to ask Defendant VanBramer and the non-party VanBramer about their disciplinary history, and having that on paper serves exactly the permissible of "purposes of memory recollection and trial preparation" mentioned in *Revander*. *Id.* at *3. Indeed, without such records, the Court may need to have those witnesses subject to voir dire outside the presence of the jury in order to make sure no improper information — about irrelevant discipline — enters evidence. And as to Defendant's argument about the timing, that is addressed below.

### b. Even construed as a discovery request, the trial subpoena is proper.

Defendant argues that "Plaintiff does not even allege, much less demonstrate, that extraordinary circumstances exist which would justify reopening discovery now, on the eve of trial and more than seven years after discovery closed." Dkt. No. 113-1 at 2 (citing the Court's Order at Dkt. No. 80). Putting aside a large part of the timing is because Plaintiff prevailed in a lengthy appeal process, and then a global pandemic put trials on hold and then backed them up for quite a while, here's the problem with that argument: Plaintiff *did* ask for those records. Plaintiff served requests in March 2015, that Defendants answered in April.[9]

Rather than responding, then-Defendants (including Defendant) generically asserted a grab-bag of objection, without any explanation:

---

[9] The 2015 Amendments to the discovery rules are thus not applicable, since they went into effect in December 2015. Thus, the fact that Defendant's responses fail to state which objection is the basis for withholding is not as clearly problematic as it would be today. *See* Rule 34 Committee Note – 2015 Amendment ("Rule 34(b)(2)(B) is amended to require that objections to Rule 34 requests be stated with specificity. This provision adopts the language of Rule 33(b)(4), eliminating any doubt that less specific objections might be suitable under Rule 34. The specificity of the objection ties to the new provision in Rule 34(b)(2)(C) directing that an objection must state whether any responsive materials are being withheld on the basis of that objection. An objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad. Examples would be a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources. When there is such an objection, the statement of what has been withheld can properly identify as matters "withheld" anything beyond the scope of the search specified in the objection.").

10

> "Defendants object to this demand on the grounds that it is overly broad, unduly burdensome, vague, is not limited as to date, seeks information not material and necessary in the prosecution or defense of this action, and is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the requested information regarding alleged complaints made by other individuals is confidential and/or personal information, the release of which would constitute an unwarranted invasion of personal privacy."

Green Ex. 2 at 2. The problem is this: There is no question that Plaintiff was entitled to at least ***some*** of the "complaints filed on Defendants [sic] from any civilian claiming that wrongdoing was brought upon them [sic] by Defendants." *Id.* The undersigned is not aware of a single case denying discovery of at least ***some*** disciplinary history in a 1983 case — at least in the absence of an affirmation that the file did not contain relevant records.[10] Instead, it is beyond well-settled that such material is discoverable. *Gross v. Lunduski*, 304 F.R.D. 136, 144-49 (W.D.N.Y. 2014) (collecting cases, and engaging in an extensive discussion of the relevance of disciplinary records). *Cf. also*, SDNY Local Rule 83.10 (requiring, in every 1983 case against the NYPD, immediate disclosure of , "[f]or each defendant, the CCRB and CPI indices of complaints or incidents that are similar to the incident alleged in the complaint or that raise questions about the defendant's credibility").

Thus, the issue — as it stands — is that the Attorney General's office simply declined to produce obviously, and well-established to be, relevant records to a *pro se* litigant, without properly asserting an objection. That is something of an "extraordinary circumstance[]." Dkt. No. 80 at 2. Particularly given the proportionality of the request, along with the fact that it is best for all concerned if this case makes it through trial with a minimum of issues for appeal, it

---

[10] *See, e.g., Crenshaw v. Herbert*, 409 F. App'x 428, 430 (2d Cir. 2011) (affirming district court ruling denying discovery of defendant police officer's personnel records based on defendant's affirmation that his personnel file contained no relevant disciplinary records). And this may be true here: if there are no records that are responsive to the subpoena, an affirmation saying as much will put this issue to bed.

11

makes sense to permit Plaintiff to inquire into Defendant's *relevant* disciplinary history (and again, to be clear, Plaintiff's request is strictly limited in that regard).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion *in limine* in its entirety, and for such other relief as the Court deems just and proper.

Date: August 22, 2022
Ridgewood, NY

Respectfully submitted,

COHEN & GREEN, P.L.L.C.

/s/
J. Remy Green
1639 Centre St Suite 216
Ridgewood, New York 11385
t: 929-888-9480
e: remy@femmelaw.com

*Pro Bono Trial Attorneys for Plaintiff*