

August 29, 2022

Hon. Christian F. Hummel, U.S.M.J.
Northern District of New York
James T. Foley U.S. Courthouse, Suite 509
445 Broadway
Albany, NY 12207

By Electronic Filing.

> **Re:    Case No. 14-cv-339, <u>Sloley v. VanBramer.</u>**

Dear Judge Hummel:

As the Court knows, my firm has been appointed to serve as pro bono trial counsel to the Plaintiff in the case above. As the Court permitted today, I write to provide Plaintiff's argument for admitting the attached affidavit of Daphne Rollins (also available on the docket as Dkt. No. 46) under the residual hearsay exception in Rule 807. After doing the research this evening, Plaintiff also intends to ask that the Court give an absent witness charge regarding Ms. Rollins — and previews that request herein, given that such a charge would serve much the same purpose (albeit to a lesser degree) as allowing in her affidavit.

As explained below, the facts here are all but explicitly described in the 2019 Committee Note to Rule 807. If any case fits Rule 807, it is this one. So the Court should admit Ms. Rollins' affidavit, subject to appropriate instructions on its use.

## I.  The Court Should Admit Ms. Rollins's Affidavit Under Rule 807 Because the Circumstances Here Are Genuinely Exceptional.

The residual hearsay exception in Rule 807 is not meant to be used frequently.[1] Indeed, "[t]he residual hearsay exception is to be used only rarely, in truly exceptional cases." *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005). But it does exist. And it exists for cases just like this one: This fact pattern is almost certainly never going to repeat, and there is no way to avoid significant prejudice to Plaintiff other than to allow Ms. Rollins' testimony in by affidavit.

---

[1] Rule 807 was meaningfully amended in 2019. However, with the global pandemic essentially drawing trial practice to a halt (or at least a crawl) until vaguely recently, there are not as many cases interpreting new-807 as there might be otherwise. Thus, this letter cites a number of pre-2019 cases, as well as cases decided under similarly worded state rules.



A.    **The Court should admit the affidavit as a straightforward application of Rule 807.**

Rule 807, or the "residual exception" to hearsay, allows admission of hearsay statements on a set of two criteria (plus either notice of good cause):  (1) sufficient trustworthiness and (2) being more probative than any other evidence available through reasonable efforts.  The rule "was designed to encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeon-holed elsewhere."  *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977).  To sum up, this situation is exactly the kind of unexpected and impossible to recreate (or create intentionally) scenario that the residual exception was made for.

In full, the rule reads:

"**(a) In General.** Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

> **(1)** the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

> **(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

**(b) Notice.** The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name— so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice."

Courts have reworked that text into "five criteria":

"First, the statement must have equivalent circumstantial guarantees of trustworthiness comparable to those found in Rule 803's and Rule 804's enumerated hearsay exceptions. Second, it must be offered as evidence of a material fact. Third, the statement must be more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable effort. Fourth, admitting it [must] ... serve the purposes of these rules and the interests of justice.  And finally, the proponent of the statement must have given an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name[2], so that the party has a fair opportunity to meet it."

---

[2] The prior version of the rule required an address.  However, the 2019 amendment removed that requirement.  As the Committee explained:  "the prior requirement that the declarant's address must be disclosed has been



*United States v. Slatten*, 431 U.S. App. D.C. 420, 459-60 (2017) (cleaned up)) or otherwise have "good cause [that] excuses a lack of earlier notice."[3]

Here, Ms. Rollins' affidavit meets all five criteria.  It is very much like a recent case decided under the amended 807 (see point B below), now-Circuit Judge Nathan admitted an affidavit even in the absence of any cross-examination, because, like here, the state forewent the opportunity to depose the affiant.  *See Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 288 n.1 (S.D.N.Y. 2020).[4]  *Cf. also, Ogg v. Ford Motor Co.*, No. N15C-07-160 ASB, 2020 Del. Super. LEXIS 333, at *9 (Super. Ct. July 1, 2020) (allowing in an affidavit under the Delaware equivalent).[5]  Working through the five factors in order:

***First***, and as explored in more depth in point I.B below, there are a number of circumstantial guarantees of trustworthiness.  The statement is in many ways a statement against interest that Ms. Rollins had no ***need*** to make.  As to an ex-boyfriend who she previously had an order of protection against — and with a history where an order of protection would have been easy to get again — Ms. Rollins had every reason and ability to just tell Mr. Sloley to go away when he asked if she would correct the record.  Instead, however, she felt the need to do so because certain statements made her feel the proceedings were "very unethical and unfair[, n]ot only [from] a legal standpoint but also a moral standpoint."  Rollins Aff. at 2.  It was the very fact that she believed other statements were not trustworthy — and were, for that matter, inconsistent with her previous written statements — that she felt compelled to offer her affidavit.

Additionally, Ms. Rollins put herself under penalty of perjury and literally called an assistant attorney general a liar.  *See* Rollins Aff. at 2 ("I am appalled to see that a State Attorney would intentionally lie").  Such an accusation is serious.  If it was not true, Ms. Rollins would be at serious risk for criminal prosecution.

Finally, another relevant contextual factor is the potential efficacy of cross-examination.  Here, cross-examination would limited meaningfully by the fact that Defendant has no prior inconsistent statement to offer.  As brought out during Eric VanBramer's re-direct today, the only contemporaneous written statement from Ms. Rollins makes absolutely no mention of drugs:

---

deleted. That requirement was nonsensical when the declarant was unavailable, and unnecessary in the many cases in which the declarant's address was known or easily obtainable."  2019 Committee Note to Fed. R. Ev. 807 ("2019 Comm. Note").

[3] The good cause exception was also added in the 2019 amendments.  2019 Comm. Note (noting specifically as an example of why the exception was added that "the proponent may plan to call a witness who without warning becomes unavailable during trial, and the proponent might then need to resort to residual hearsay.")

[4] Note, however, that Judge Nathan also states she did not rely on the affidavit in reaching her decision — making her analysis technically dicta.

[5] *Cf. also, Jacobson v. Hound Dog Pet Hotel, LLC*, No. 04-3809 (PAM/RLE), 2005 U.S. Dist. LEXIS 54735, at *4 (D. Minn. Aug. 1, 2005) (denying admission under the residual exception because, unlike here, the evidence was not "necessary" to the case and nothing about the fact pattern was "rare" or "exceptional"); *Ragin v. Newburgh Enlarged City Sch. Dist.*, 2011 U.S. Dist. LEXIS 59728, at *6-7 (S.D.N.Y. June 3, 2011) (denying admission under the residual exception because, unlike here, the party it was offered against never had any opportunity to cross examine the declarant).

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Suspect Name (Last, First, M.I.)
SLOLEY, MAX

I, Daphne L. Rollins (victim/deponent name), state that on 4/01/13, (date) at 730 Am,
Yo, ___ (nombre de victima/deponente), declaro que en tal fecha __/__/__ en

(location of incident), in the County/City/Town/Village of Athens, of the state of New York, the following did occu
(donde el incidente ocurrio), el condado/ciudad/aldea/pueblo de ___, del estado de Nueva York, lo siguiente occurio:

I was at my house in the livingroom talking to Max Sloley about our relationsh when I told him I can't be with him. He stood up off the couch pushed me onto the floor, then sat on me, grabbed my phone, and went outside. I followed max outsid told him I would call the cops if I didn't get my phone back. Then he grabbed me arm and dragged me up the stairs through the front door, and threw me into the radiator. Then he punched me several times on my back and shoulders. Then he grabbed the aluminum bat from the door in the hallway, went outside and proceeded to hit my car with the bat. After I watched him swing the bat, I came into the house again and called the cops. I told him I was calling the cops, at that point he left. I would like him arrested for this.

[…]

False Statements made herein are punishable as a Class A Misdemeanor, pursuant to section 210.45 of the Penal Law.
Declaraciones falsas hechas aqui son castigables como una clase de delito menor, de acuerdo con la seccion 210.45 de la ley penal.

Victim/Deponent Signature          Date    04·01·13
Firma de victima/deponente         Fecha

Interpreter                        Date

Witness or Officer    #2037        Date    04·01·13

(Use additional pages as neede

D-13 at 2.  If, as everyone expected to happen, Ms. Rollins came in and testified consistently with her affidavit, Defendant would not have had any prior inconsistent statements to impeach her with. Thus, any prejudice from having to deal with the affidavit is minimal:  Defendant can make all the same credibility arguments he would have made had Ms. Rollins testified, and indeed, the effect of Ms. Rollins' affidavit is significantly less than what her live testimony would have been.  Further, any prejudice can be mitigated by the Court instructing the jury on the history here, as well as allowing Defendant to argue credibility because of Ms. Rollins' absence in closing.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



**Second**, there is no question that what Ms. Rollins said to police is a material fact. Defendant offered it through two different witnesses today. All parties have stressed its importance at one point or another. What Ms. Rollins said to the police who interviewed her is absolutely critical in this case. And without this affidavit, given the unexpected cease in communications from Ms. Rollins, there is no way Plaintiff will get to show the jury Ms. Rollins' version of that story.

**Third**, and relatedly, there is no other available (and admissible for truth) evidence on this point — at least for the truth of the matter asserted. Similarly, there is no question that Plaintiff has been diligent in trying to procure it. Plaintiff initially and vigorously litigated whether he could call Ms. Rollins to offer remote testimony. *See generally*, Dkt. No. 104-1 at 1-3. As soon as Ms. Rollins stopped responding to communications, Plaintiff notified the Court by email — and ultimately made an application to serve a subpoena by unconventional means. *See* Dkt. No. 119. And the Court granted that application this morning based on supplemental authority submitted Friday evening. *See* Dkt. No. 120. While the timeframe here has been compressed, there is no question of diligence. Thus, the evidence is easily "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable effort." 431 U.S. App. D.C. at 459-60.

**Fourth**, admitting the affidavit serves the interests of justice. Defendant has already offered — albeit with an instruction that the jury cannot use it for truth — a version of what Ms. Rollins said that contradicts what she said under oath in the affidavit. Plaintiff has prepared his entire trial strategy with the assumption that Ms. Rollins would be testifying — and with her assurances she would do so voluntarily. For Plaintiff to be unable to offer **any** version of Ms. Rollins' testimony would be unjust. And that is particularly true when Defendant in fact had the opportunity to take her testimony and made a strategic decision not to. *See generally,* Point I.B below. Further, if Ms. Rollins' testimony does not come in in some form, it invites the jury to unfairly blame *Plaintiff* (at least, if the Court does not, in the alternative, give a missing witness charge) for the fact that she is not here.

**Finally**, on notice, this case presents exactly the fact pattern the Committee anticipated in crafting the "good cause" exception added in the 2019 amendments. In explaining the amendments, the Committee wrote:

> "[T]he pretrial notice provision has been amended to provide for a good cause exception. Most courts have applied a good cause exception under Rule 807 even though the rule in its current form does not provide for it, while some courts have read the rule as it was written. Experience under the residual exception has shown that a good cause exception is necessary in certain limited situations. **For example,** the proponent may not become aware of the existence of the hearsay statement until after the trial begins, or **the proponent may plan to call a witness who without warning becomes unavailable during trial, and the proponent might then need to resort to residual hearsay.**"

2019 Comm. Note (emphasis added). What the Committee anticipated is exactly what happened here: Plaintiff planned to call Ms. Rollins, and it was only during the week before the trial that she appeared to become unavailable. Further, this motion only becomes relevant if, by tomorrow morning, Ms. Rollins has not complied with a Court order issued this morning. Thus, it is during

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



the trial that Ms. Rollins has become unavailable, and thus that Plaintiff "need[ed] to resort to residual hearsay."

Of note, that does not leave Defendants without some recourse.  The Committee anticipates this and offers that "[w]hen notice is provided during trial after a finding of good cause, the court may need to consider protective measures, such as a continuance, to assure that the opponent is not prejudiced."  2019 Comm. Note.  While good cause does exist here — it is exactly the example provided by the Note — there may be any number of measures that protect Defendant from any prejudice, including by instructing the jury on the full history of Ms. Rollins' testimony.

> B.    **The facts here are as close to a "'near-miss' of one of the Rule 803 or 804 exceptions" as there is.**

Another lens to whether 807 is appropriate — offered by the Committee itself — is looking to how close to various other hearsay exceptions the offered testimony is.  In the 2019 amendments, the Committee made changes to make sure that courts were more "uniform" in analyzing corroborating evidence, clarifying that the "existence or absence of corroboration is relevant to, but not dispositive of, whether a statement should be admissible under this exception."  2019 Comm. Note.  The Committee Note suggest that Courts ought to specifically consider whether a particular fact pattern amounts to a "near miss" on one of the other hearsay rules:

> "The rule in its current form applies to hearsay 'not specifically covered' by a Rule 803 or 804 exception. The amendment makes the rule applicable to hearsay 'not admissible under' those exceptions. This clarifies that a court assessing guarantees of trustworthiness may consider whether the statement is a "near-miss" of one of the Rule 803 or 804 exceptions. If the court employs a 'near-miss' analysis it should—in addition to evaluating all relevant guarantees of trustworthiness—take into account the reasons that the hearsay misses the admissibility requirements of the standard exception."

2019 Comm. Note.  *See also, Volland-Golden v. City of Chi.*, 89 F. Supp. 3d 983, 992 (N.D. Ill. 2015) (a pre-amendment case discussing the "near-miss" theory).

Here, the Rollins Affidavit is as near a miss to Rule 804(b) as it comes.  If Ms. Rollins had testified — as the affidavit indicates she would have — at the deposition, instead of saying (as Defendant already suggested to the jury) that Mr. Sloley was using drugs, she would have testified that she "ha[s] no knowledge of Mr. Sloley being involved with drugs period."  Rollins Aff. at 2. Defendant had an opportunity to take Ms. Rollins' deposition[6] and declined — deciding his case was better off without her testimony.  Indeed, as Ms. Rollins tells it, it was exactly *because* that would have been her testimony that Defendant declined to get her testimony on the record:

---

[6] Similarly, if the Court had not accepted Ms. Rollins' affidavit on summary judgment, it might have directed the parties to take her deposition as she offered (Rollins Aff. at 2) — and then Rule 804(b) would squarely apply.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



"As a matter of fact, it was Mr. Mitchell who decided I didn't need to testify.  He specifically asked me about the incident that took place on April 1st, 2013 between myself and Mr. Sloley.  All he said he needed to know was if I told the police that Mr. Slolely had or was in connection with illegal drugs, to which I answered, 'No I have no knowledge of Mr. Sloley being involved with drugs period.'  After that, Mr. Mitchell told me that was all the information he needed from me."

Rollins Aff. at 2.

Analyzed under Rule 804(b), other than the fact that the affidavit is **not** testimony "at a trial, hearing, or lawful deposition," it meets the criteria.  It is former testimony — albeit "testimony through affidavit."  *Rubens v. Mason*, 387 F.3d 183, 188 (2d Cir. 2004).[7]  And Defendant has had an "opportunity and similar motive" to develop the testimony — he simply made a strategic choice not to do so.  While it would be preferable for all concerned if the parties had actual deposition testimony from Ms. Rollins, the **reason** the parties do not is that Defendant made that strategic choice.[8]

As noted above, the "near-miss" comment is a recent addition.  As far as Plaintiff can tell, there is only a single case (published or unpublished) that discusses that comment — and that case says nothing of relevance.  *See, e.g., United States v. Anderson*, No. 3:17-CR-00222-M, 2020 U.S. Dist. LEXIS 134153, at *6 (N.D. Tex. July 29, 2020) (rejecting application of 807 in part because" no explanation is provided as to why the Andersons did not secure a custodian or other qualified witness to lay a foundation for the bank statements under the business records exception, nor why doing so would exceed 'reasonable efforts'").  Thus, in many ways, the Court faces a pure issue of first impression.  And as set out above, as a matter of first principles, the unique fact pattern here — along with the many efforts Plaintiff has made to secure Ms. Rollins' live testimony and Defendant's uncharacteristic[9] decision to simply **not** pursue Ms. Rollins' deposition —- make this case exactly the kind of "near-miss" the Committee Note contemplates.

---

[7] *See, also, for example, BD Dev., LLC v. Local 79, Laborers Int'l Union of N. Am.*, No. 14-CV-4876(JS)(AKT), 2018 U.S. Dist. LEXIS 44609, at *19 (E.D.N.Y. Mar. 19, 2018) (discussing "affidavit testimony"); *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (same).  *Cf., Surles v. Air France*, 2004 U.S. Dist. LEXIS 3710, at *3-4 (S.D.N.Y. Feb. 23, 2004) (collecting cases and individual rules that allow and sometimes even *require* direct testimony in affidavit form).

[8] It borders on speculative, but if Defendant had not categorically opposed remote testimony, the parties might be in a meaningfully different situation right now.  It was not until last week that Plaintiff knew he would even be allowed to take Ms. Rollins' testimony remotely.  If Defendant had agreed instead, and *then* Ms. Rollins had gone silent, Plaintiff would have been able to brief the subpoena range issue much sooner — and perhaps even sent an investigator to find her.

[9] That is, as discussed on the record today, Defendant's choice to simply not take testimony makes very little sense as a courtesy to Ms. Rollins, particularly given the positions they took on remote testimony — but makes perfect sense if they anticipated her testimony would not be favorable.

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



## II. In the Alternative, the Court Should Give a Missing Witness Charge.

Finally, to the extent that the Court is not inclined to allow Ms. Rollins' affidavit in under the residual exception, Plaintiff submits that a missing witness charge is appropriate. Defendant listed Ms. Rollins in his initial disclosures (by stating that a group of attached documents, that repeatedly named Ms. Rollins, contained "the name and address of any individual likely to have discoverable information"). Defendant initially subpoenaed Ms. Rollins, then made a strategic decision that commemorating her testimony was not in his interests. And Defendant (unlike Plaintiff) has offered Ms. Rollins' statements in hearsay form while making no efforts to offer them in a form that allows the jury to consider them for truth. In those circumstances, a missing witness charge is appropriate (at least if the affidavit does not come in) to mitigate the harm of the hearsay statements already in — along with the fact that Defendant even paid for a transcript for Ms. Rollins' deposition, but simply declined to get *her* testimony.

Thus, Plaintiff submits there should be an appropriate charge that instructs the jury that:

(1) Plaintiff subpoenaed Ms. Rollins;
(2) Ms. Rollins has not responded;
(3) Defendant had the opportunity to take her testimony; and
(4) Defendant's choice not to call Ms. Rollins as a witness permits, but does not require, an inference that she been called, her testimony would not have supported Defendant's position.

Respectfully submitted,

/s/
_____
J. Remy Green
    *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

Enclosure.

cc:
All parties by ECF.

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com