1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF NEW YORK

3

4    MAXMILLIAN SLOLEY,                    )
                                           )
5                                          )
              Plaintiff,                   ) CASE NO. 14-CV-339
6                                          )
       vs.                                 )
7                                          )
     ERIC VANBRAMER,                       )
8                                          )
              Defendant.                   )
9    _____)

10              **TRANSCRIPT OF PROCEEDINGS**
            **BEFORE THE HON. CHRISTIAN F. HUMMEL**
11              **TUESDAY, AUGUST 23, 2022**
                 **ALBANY, NEW YORK**
12

13   **FOR THE PLAINTIFF:**
       COHEN & GREEN P.L.L.C.
14     By:  REMY GREEN, ESQ.
       1639 Centre Street, Suite 216
15     Ridgewood, New York 11385

16   **FOR THE DEFENDANT:**
       NEW YORK STATE ATTORNEY GENERAL
17     By:  MARK G. MITCHELL, ESQ. and RACHAEL OUIMET, ESQ.
       The Capitol
18     Albany, New York 12224

19

20

21

22

23

24

25

**Sloley v. VanBramer - 14-CV-339**

 1       (Open court with videoconference.)

 2            THE CLERK:  Today is Tuesday, August 23, 2022.  It's

 3  11:01 a.m.  The case is Sloley versus State of New York, et al.,

 4  docket No. 14-CV-339.  Appearances for the record, please.

 5            ATTY. GREEN:  Good morning, Your Honor.  This is Remy

 6  Green for plaintiff as pro bono trial counsel.

 7            THE COURT:  Good morning, Counselor.

 8            ATTY. MITCHELL:  Your Honor, I'm Mark Mitchell from

 9  the Attorney General's Office, and Rachael Ouimet is here too.

10  We represent the defendant, Eric VanBramer.

11            THE COURT:  Good morning, Counselors.

12            The Court scheduled this appearance this morning

13  because the parties have filed a number of motions in limine,

14  which the Court intends to address this morning.

15            Based upon my review of the docket, it appears that

16  docket No. 104 is a motion in limine filed on behalf of the

17  plaintiff Maxmillian Sloley.

18            Docket No. 107 is a motion in limine filed by the

19  defendant Eric VanBramer.

20            Docket No. 113 is a motion in limine, supplemental

21  motion concerning disciplinary records filed by defendant

22  VanBramer.

23            Docket No. 115 is a supplemental motion in limine

24  filed by the attorney for the plaintiff Maxmillian Sloley.

25            Docket No. 116 is a response in opposition to docket

**Sloley v. VanBramer - 14-CV-339**

1  No. 115 filed by the attorney for Mr. Sloley.

2      Docket No. 117 is plaintiff's memorandum of law in

3  opposition to defendant's motion in limine.

4      It's my intention to start first with the first of

5  these documents, which is plaintiff's motion in limine which was

6  filed at docket No. 104, and go through and address those issues

7  raised therein one at a time and then proceed in what appears to

8  me at least to be a logical order to the remaining issues

9  presented by these various motions in limine.

10     So Attorney Green, if I turn to you, I'm looking at

11  docket No. 104, argument No. 1, which reads:  The Court should

12  allow non-party witness Daphne Rollins to testify by

13  videoconference or other remote means, or in the alternative,

14  should adjourn the trial of this matter.  I would note that that

15  request was addressed in the response filed at docket No. 116 by

16  the attorneys for defendant VanBramer.

17     Attorney Green, what do you want to tell me?

18     ATTY. GREEN:  Yes, Your Honor.  I think, you know,

19  Ms. Rollins is not a party.  She left New York and moved to

20  North Carolina a number of years ago.  She's obviously a very

21  important witness in the case, and she is not my client.  I

22  don't control her schedule, and she is unavailable, at least not

23  without remote means, at the date the Court has scheduled.  I

24  mean obviously, we could subpoena her.  I don't think that would

25  be great, and I think the state's purported interests in

1  protecting her as a victim are not well served by subpoenaing

2  her and forcing her to show up in person when she doesn't want

3  to.

4        The only thing I think that defendants raise in their

5  opposition that warrants direct addressing is they say that

6  there's no direct or admissible evidence.  I don't think that

7  there -- you know, certainly defendants have not offered

8  admissible evidence in terms of supporting their own factual

9  contentions in their motions in limine because there is not an

10  admissible evidence standard for, you know, factual contentions

11  in a motion in limine.

12        I don't think it would be particularly difficult to

13  obtain an affidavit from her setting out what she's doing and

14  why she's doing it, why she cannot attend.  I did not do that,

15  but you know, in part because she's not my client and she does

16  not have independent counsel, but we could certainly do that.

17        Other than that, I only note that in the same way that

18  there is, you know, inadmissible evidence, as defendants put it,

19  that she is out of state and cannot attend, the only source of

20  the accusation that she said that she didn't want to testify at

21  her deposition is also inadmissible, right.  Defendants stated

22  as a fact that she said she was scared of testifying at a

23  deposition.  Well, she denies that, and there is no source of

24  admissible evidence otherwise.

25        So I think this should be pretty straightforward.

**Sloley v. VanBramer - 14-CV-339**

1    We've all learned to do remote proceedings during the pandemic.

2    I don't know why we wouldn't do this.

3                    THE COURT:  Thank you.

4                    Mr. Mitchell, how are you prejudiced by this?

5                    ATTY. MITCHELL:  Your Honor, as we discussed in the

6    opposition, the plaintiff has certain things that they have to

7    show.  They haven't met their burden.  We don't even know if

8    this person is inconvenienced.  And I also just mention I think

9    there are serious issues here that have to be addressed in

10   person to protect the integrity --

11                   THE COURT:  Let me ask you a question, Mr. Mitchell.

12   How is the integrity of the process damaged if I let someone

13   testify remotely?

14                   ATTY. MITCHELL:  Well, you know, I point out that one

15   of these issues is that the plaintiff has to show that there are

16   appropriate safeguards.  I cited a case where the Court had set

17   forth various procedures that had to be followed.  One of them

18   was that there has to be videoconference operator with the

19   witness to make sure that they're alone.

20                   And if this person -- I don't know how they're even

21   going to be testify, if they're going to be on the phone, some

22   location.  We don't know who is around them.  The person could

23   be reading off of a script written by Sloley.

24                   THE COURT:  Do you have any evidence that Mr. Sloley

25   has written a script and provided it to Ms. Rollins?

**Sloley v. VanBramer - 14-CV-339**

1          ATTY. MITCHELL:  I have no evidence of that, Your

2     Honor.  However, there is this troubling history that he beat

3     Daphne Rollins.  He destroyed her car.  She had an order of

4     protection against him.  She said she was afraid of him.  She

5     called 911.  There was the issue at the deposition where she

6     said she was afraid of him.

7          He also has this past history with his other

8     girlfriend who we talk about.  He was managing to threaten her

9     even while he was in prison, and then he ended up getting

10     arrested for it.  She got an order of protection against him.

11     Judge Pauley had to put in additional parole conditions to bar

12     him from having contact with Cary Andersen and her family.

13          So I just think there's a lot of concern here about

14     coercion, manipulation.  I mean is this witness going to come in

15     and just disavow her signed statement to the police, the 911

16     records, the statements in the police report?

17          THE COURT:  Mr. Mitchell, if she testified in person,

18     couldn't she disavow her statement in the same fashion?

19          ATTY. MITCHELL:  She could, Your Honor, but I think we

20     would be able to judge her credibility and demeanor because she

21     would be here.  She's not going to be on the phone where we

22     can't even see her face or might not be able to hear her.

23          THE COURT:  If she testifies by video, you can see her

24     face.  Can't you make the same credibility evaluation then?

25          ATTY. MITCHELL:  I think it's difficult.  When I've

**Sloley v. VanBramer - 14-CV-339**

1    done the video, you know, it constantly freezes.  You can't

2    really see the person.  You can't hear what they're saying.  You

3    have no clue what they might be looking at.  I think there are a

4    lot of extra issues, and especially with these problems with

5    manipulation by her abuser, I think that the video route is not

6    appropriate here.

7            THE COURT:  I'm going to overrule your objection.  I

8    find that the plaintiff's attorney has shown good cause for

9    taking the deposition of Ms. Rollins by video.  I would note

10   that Ms. Rollins is in North Carolina.  There's no evidence

11   before the Court contrary to that.

12           I would further note that many of the cases cited by

13   Mr. Mitchell and Ms. Ouimet in their brief, including the Pope

14   versus County of Albany case, are from 2014 and predate the

15   pandemic.  I would note that since the pandemic, the use of

16   video testimony at depositions and at trial has become common.

17           I would further note that I recently had two cases in

18   which Mr. Mitchell's office was involved in which they

19   represented the defendants.  In each of those cases, they were

20   the party arguing for the use of video depositions.  In a recent

21   exhaustion hearing, I let two of the state's witnesses appear by

22   video.  There was no concern raised their attorneys.  In a

23   recent trial, I let one, if not two of the correction officer

24   defendants testify by video.  There was no difficulty there.

25           I see no reason why Ms. Rollins should not be

**Sloley v. VanBramer - 14-CV-339**

1   permitted to testify from North Carolina.  So I'm going to

2   overrule that objection.  I'm going to permit the testimony.

3           Counselor Green, the question then becomes:  You need

4   to take steps to secure her availability to testify by video.

5   In order to do that, you need to provide the Court with an email

6   address for Ms. Rollins and a telephone number so she can be

7   contacted and the steps can be taken to make sure that she has

8   the ability to testify remotely.  Have you discussed that issue

9   with her, Counselor?

10          ATTY. GREEN:  Of course, and yes.  My understanding is

11  she will find a quiet room and use a computer.  I will confirm

12  that.  I will obviously get her email address.  I only have her

13  phone number, but I've been able to speak to her a couple times.

14  I'll get her email address and pass it along to the Court.  I

15  assume by email and not on the docket.

16          And you know, any other safeguards we need, obviously

17  we can arrange.  Some of that is going to -- obviously if we

18  have to pay, for something to show up on the reimbursement form,

19  but otherwise, you know, I take seriously the concerns

20  Mr. Mitchell has raised.  And I think, yes, we should make sure

21  that, you know, everything is aboveboard.  And yes, we will do

22  all of that.

23          THE COURT:  To the extent, Counselor, that you need to

24  do that, you need to reach out to Ms. Burtt, my courtroom

25  deputy, and provide her with a phone number and email address so

**Sloley v. VanBramer - 14-CV-339**

1   we can send the appropriate link to the client -- to the witness

2   so that when the time comes, they will be available to

3   participate by video.

4          ATTY. GREEN:  Of course, yes.  I am also assuming -- I

5   don't know how long jury selection is taking these days for you

6   all.  I assume we're probably thinking Tuesday afternoon or

7   Wednesday morning?

8          THE COURT:  Now that you've raised the jury selection

9   issue, I'll address it for you, if I'm going to address it

10  later.  Here in the Northern District of New York, Counselor,

11  the bulk of the questioning during jury selection is done by the

12  Court.  You each submitted questions which you'd like the Court

13  to ask, you'd like to ask yourselves.  I will ask the bulk of

14  the questions, and then I'll give you each a period of 15 or 20

15  minutes to ask your own questions, and then we'll proceed with

16  jury selection.  I anticipate having a jury before lunch next

17  Monday morning and beginning the trial.

18         So Counselor Green, you should proceed according to

19  that schedule when you make arrangements with Ms. Rollins for

20  her testimony.

21         ATTY. GREEN:  Makes perfect sense.

22         THE COURT:  That brings us to the second issue raised

23  in docket No. 104.  The Court should preclude or narrowly

24  curtail evidence of any of Mr. Sloley's criminal history and

25  other lawsuits.

**Sloley v. VanBramer - 14-CV-339**

1    I'd like to address his criminal history first.

2  Attorney Green, what is your position with respect to

3  Mr. Sloley's criminal history?

4    ATTY. GREEN:  Of course.  I think most of this is 609.

5  We're largely talking about very old convictions that have

6  nothing to do with truthfulness.  I think perhaps the hardest

7  question is what to do with the violation for harassment, so not

8  a crime.  So I guess criminal history is not quite the right

9  descriptor, but the harassment violation that came out of this

10 incident.

11   I think most of it is straightforward 609.  It doesn't

12 bear on credibility.  It is more -- the value of it is not

13 significantly outweighing the prejudice.  And as defendant says

14 in their own motion, this is going to be a case largely about

15 credibility.  I think the problem is that that actually cuts

16 against allowing this kind of stuff in because that presents

17 significant risks that the jury is, rather than actually

18 evaluating credibility, going to reach a conclusion that if

19 you've been convicted of a felony, you lie, and I don't think

20 that's, you know, how we do things.

21   In terms of the harassment charge, I think -- and this

22 is an issue that we'll probably come back to on some of the

23 other issues.  I don't think there's anything confusing about

24 excluding the harassment charge, right.  This is not a prisoner

25 case in the traditional sense where we have, you know, a lawsuit

**Sloley v. VanBramer - 14-CV-339**

1   about something that happened in prison, so that the jury

2   necessarily knows that somebody was convicted of a crime and is

3   in prison.

4           This is a case where just as -- you know, had

5   Mr. Sloley not pled out to a violation, avoiding much more

6   significant charges, he very well could have been acquitted of

7   the harassment charge and not had any record from this at all.

8   And in that case, right, assuming away some of the other

9   unrelated criminal issues, I don't see how it would be confusing

10  to the jury that somebody was arrested, searched, and then

11  acquitted.

12          And so I think the appropriate thing to do here is

13  to -- because harassment has nothing to do with secreting

14  evidence in an anal cavity -- and to the extent it does, it's

15  the worst kind of propensity evidence -- I think that it runs a

16  lot of risks of prejudice without any probative value.  So I

17  think ultimately, our view remains that all of this should be

18  excluded and especially the harassment violation because it's

19  not even a misdemeanor.

20          THE COURT:  Thank you, Counselor.

21          Mr. Mitchell.

22          ATTY. MITCHELL:  Your Honor, I set forth our position

23  in the papers, but I'm troubled by this idea that the plaintiff

24  says you should just preclude all of the evidence of this

25  incident, what led to it.

**Sloley v. VanBramer - 14-CV-339**

1          THE COURT:  Let me ask you a better question.  Which

2    of Mr. Sloley's prior convictions are you endeavoring to use?

3          ATTY. MITCHELL:  Criminal possession of a weapon

4    second degree, 2017, where he's currently serving a 14-year

5    sentence.  That should come in as well as the sentence.

6          Felon in possession of a firearm, 2005.  That's the

7    federal one.  He was sentenced to 88 months.  So the sentence

8    and the conviction should come in.

9          Criminal impersonation, this was from 1996.  The

10   plaintiff even admits that's relevant to credibility.

11         Criminal possession of a weapon third degree, 1997.

12   That ought to come in.

13         Criminal sale of a controlled substance third degree,

14   narcotic drug, 1997.  The plaintiff admitted that was for

15   selling crack cocaine, Columbia County.

16         THE COURT:  Are you concerned at all about the age of

17   those convictions, Counselor?

18         ATTY. MITCHELL:  Your Honor, I'm not because --

19         THE COURT:  Because they benefit your case?

20         ATTY. MITCHELL:  -- because these are part of the

21   information that the officers checked in the station in terms of

22   getting identifying information about this person.  And I know

23   that Judge Sharpe mentioned that he thought that the criminal

24   history of selling drugs and possessing drugs was relevant.  I

25   don't want to say that's the only factor, but you're supposed to

**Sloley v. VanBramer - 14-CV-339**

1    look at the totality of the circumstances, the information

2    available to the police.  This is some factor to suggest that

3    perhaps this crack cocaine did belong to the plaintiff and that

4    a search was appropriate.

5            And then in terms of, you know, I think that according

6    to the Hartline case, the crimes that were charged, the charges

7    that were involved with this incident with the arrest are

8    relevant.  The characteristics of the arrestee and the

9    circumstances of the arrest, I don't think you can keep that

10   out, not to mention the fact he took a plea deal to resolve

11   these charges, and the plea deal set the stage for his federal

12   parole being revoked.

13           THE COURT:  Let me ask you a better question,

14   Mr. Mitchell.  You indicated that the 1996 conviction, you'd

15   like to use.  What is that for?

16           ATTY. MITCHELL:  This is the criminal impersonation

17   charge.

18           THE COURT:  Attorney Green, what is your position with

19   respect to the criminal impersonation charge from 1996?

20           ATTY. GREEN:  I think that that one is the closest

21   call, but ultimately I think that one is one where the probative

22   value is not substantially outweighed by the -- I'm sorry.  I've

23   flipped the words around, but you know what I'm saying.  I don't

24   think the balancing test is satisfied there, at least not

25   without more and without getting into the underlying facts, and

**Sloley v. VanBramer - 14-CV-339**

1    you know, exactly how dishonesty was implicated.

2           THE COURT:  Mr. Mitchell, how would you propose to use

3    it then?  You're going to ask him if he pled guilty to that

4    charge in 1996?

5           ATTY. MITCHELL:  Yes, Your Honor.  We would

6    cross-examine about the name of the crime, the date, and then we

7    also want to have the sentence.

8           THE COURT:  With respect to the 1996 conviction, I'll

9    permit you to ask him the date of the conviction and the charge

10   for which he was convicted.  I don't think the sentence is

11   relevant, and the prejudicial value of the sentence far

12   outweighs its probative value.  So with respect to the 1996

13   criminal impersonation, you can ask him if he pled guilty and

14   the date on which he pled guilty.

15          With respect to the 1997 criminal sale of a controlled

16   substance, Attorney Green, what do you want to tell me?

17          ATTY. GREEN:  This has no probative value.  Its only

18   use is pure character evidence, right.  This is propensity.

19   It's -- he 20 years ago had something to do with crack cocaine.

20   So you should assume he had something to do with crack cocaine

21   now.

22          You know, I think defendant even acknowledges that

23   that use would be improper in their own in limine motion talking

24   about asking about other searches.  And we actually agree with

25   them there that just asking, you know, have you improperly

**Sloley v. VanBramer - 14-CV-339**

1    searched somebody before, would be improper.  In the same way,

2    did you have crack cocaine in the 90s, as a window into what

3    happened in the 2010s is pure protensity.  And not only is it

4    not outweighed, it just has no probative value.

5                    THE COURT:  Mr. Mitchell.

6                    ATTY. MITCHELL:  Your Honor, Rule 609 reflects the

7    legislature's view that felony convictions are a special

8    category that are relevant to credibility.  And like I said,

9    it's also relevant based on the information that was available

10   to the officers.  I think the fact that the guy had been guilty

11   of selling narcotics in Columbia County does have some relevance

12   here.

13                   THE COURT:  I agree with Attorney Green.  I'm not

14   going to allow the 1997 conviction to be used for any reason.  I

15   would note that that's a 1997 conviction.  It's now 2022.  If my

16   math is correct, that's 25 years ago.  I would further note that

17   the prejudicial import of that conviction far outweighs any

18   probative value it may have.  So the 1997 conviction for

19   criminal sale of a controlled substance will not be used for any

20   purpose.

21                   I believe, Mr. Mitchell, that brings us next to the

22   2005 pleading guilty of being a felon in possession of a

23   firearm.

24                   Attorney Green, what is your position with respect to

25   that?

**Sloley v. VanBramer - 14-CV-339**

1      ATTY. GREEN:  I think that one, particularly given the

2    nature of the offense, ultimately has balancing issues because

3    it smuggles in the felony convictions that I think we've just

4    excluded, if I'm not mistaken, right.  If he's asked, did you

5    plead guilty to being a felon in possession of a firearm?  That

6    has just told the jury that he was convicted of a felony that we

7    just kept out.  I think beyond that, it doesn't have a whole lot

8    of value.

9      And just kind of a global point that I haven't found

10   the right place to say, but my friend on the other side just

11   said earlier that Judge Sharpe found some of this persuasive in

12   the summary judgment decision.  I think the important thing to

13   note about all of that is Judge Sharpe was overturned on that,

14   that the Second Circuit, in fact, said just saying somebody is a

15   drug dealer is not sufficient to provide a basis to say

16   therefore, they are likely to have drugs in an anal cavity.

17   That really was a major issue on appeal.

18      But kind of coming back to the 2005 charge, we're

19   still in 609 world on this one.  And ultimately, I think that it

20   doesn't have anything to do with the honesty and doesn't have

21   any particular value, beyond which it also smuggles in something

22   we've kept out.

23      THE COURT:  Mr. Mitchell.

24      ATTY. MITCHELL:  Your Honor, I think the conviction

25   under Rule 609 is admissible.  It also was less than ten years

1    ago from the date of this incident, which was 2013.

2              I also think it's important to know that he was still

3    on parole at the time for that conviction, and I think it's

4    relevant to the issues here that he left the jurisdiction,

5    violated his parole conditions to go to the Greene County.

6              THE COURT:  What does that have to do with the issue

7    of whether or not he was properly arrested and searched by your

8    client?

9              ATTY. MITCHELL:  Because I think the jury might want

10   to know why didn't he tell his parole officer that he was going

11   to the Northern District.  It seems like he was trying to hide

12   something.  And then this also ended up resulting in him being

13   dragged back to the Southern District, and then he fled the

14   courthouse.  And then he pleaded guilty to violating his

15   conditions and went back into prison.

16             I cited Judge Suddaby's decision from the Picciano

17   case that talks about how subsequent arrests of the plaintiff

18   are relevant to the claims for emotional damages supposedly

19   resulting from contact with law enforcement.

20             THE COURT:  I agree with Attorney Green.  I'm not

21   going to allow the 2005 conviction for felon in possession of a

22   firearm.  That conviction is over 17 years old.  It has no

23   probative value on the issue of whether or not he secreted drugs

24   in his anal cavity prior to the search.  It adds nothing to this

25   other than to paint Mr. Sloley as a convicted and repeat felon.

**Sloley v. VanBramer - 14-CV-339**

1    It adds nothing to the jury's consideration of these matters.

2    Therefore, I'm not going to allow any discussion of the 2005

3    felon in possession of a firearm charge.

4           That brings us to the 2017 conviction which Mr. Sloley

5    has to my understanding for criminal possession of a weapon in

6    the second degree, fleeing the police in a motor vehicle in the

7    third degree, and reckless driving.

8           Attorney Green, what is your position with respect to

9    those?

10          ATTY. GREEN:  Your Honor, I think we've skipped over,

11   and perhaps this was intentional and we'll come back to it, but

12   we skipped over the 2014 conviction or I guess violation.

13          THE COURT:  I was going to go through felonies first,

14   Counselor, and then come back to the harassment charge.

15          ATTY. GREEN:  Just making sure.  Okay.

16          THE COURT:  I appreciate that.

17          ATTY. GREEN:  For this one, you know, I think this

18   ultimately does not satisfy the balancing test, right.  It's

19   criminal possession of a weapon.  That's not really relevant to

20   the case here.  It's not relevant to whether he was secreting --

21   or secreting.  I think secreting means something very

22   different -- secreting drugs in his anal cavity.  And I think

23   even under the easier, not-ten-years-old balancing test, I don't

24   think that the Attorney General has satisfied their burden of

25   showing this has probative value as to really the only fact

**Sloley v. VanBramer - 14-CV-339**

1   question in this case, which is:  What did the officer

2   reasonably believe at the time?

3           And in fact, I think it goes further than that, which

4   is unlike the older ones, this doesn't have any relation because

5   it's not what the officer saw when they pulled the criminal

6   history.  This is a subsequent criminal conviction that just has

7   no relation.

8           THE COURT:  What about the fact it may go to his

9   credibility, which is Mr. Mitchell's argument?

10          ATTY. GREEN:  I just don't see how being convicted of

11  a criminal weapon possession charge really goes to credibility

12  in a meaningful way.  I understand that, you know, the idea is

13  that bad people lie and we do allow some of that to come in, but

14  I don't think that that's outweighed, particularly given the

15  importance of credibility in this case and kind of some of the

16  lack of documentary evidence that ought to still exist that does

17  not.

18          THE COURT:  Mr. Mitchell.

19          ATTY. MITCHELL:  Your Honor, this is a very recent

20  conviction.  I think also fleeing from the police is an issue

21  that's relevant to credibility.

22          And also, I think it's also relevant to the fact that

23  the sentence, the fact he's serving this 14-year sentence that

24  was just imposed a couple of years ago, because this is a person

25  who's claiming emotional and psychological injuries.  Well,

1    maybe part of the reason that he feels humiliated and unhappy

2    with his life is because he's serving a prison sentence for some

3    new crimes.  I think the jury needs to know a fuller picture

4    about his emotional situation.

5           THE COURT:  Mr. Mitchell, what about his conviction

6    for reckless driving?

7           ATTY. MITCHELL:  Well, my understanding is that the

8    fleeing from the police and the reckless driving are not

9    felonies.  However, I do think the fleeing from the police is a

10   bad act that ought to come in.

11          THE COURT:  Attorney Green, anything else you want to

12   tell me?

13          ATTY. GREEN:  I think that one thing Mr. Mitchell

14   raised is that if this is purely about damages -- and you know,

15   I think that Mr. Mitchell has a better point there then perhaps

16   on liability -- if this is purely about damages, perhaps that

17   speaks to if bifurcation is appropriate.  Maybe that would

18   actually ultimately save the Court some time if we lose.

19          But otherwise, I think, you know, it is going to be

20   hard for jurors to separate in their mind, you know, something

21   that only comes in for damages.  And maybe that means that we

22   ought to strike the damages from the initial phase of the trial,

23   though if we ultimately win on the liability phase, that's going

24   to require more time.  That's the only thought I have there.

25          THE COURT:  The Court is not going to bifurcate the

1   trial.  We're going to proceed with the trial in its entirety.

2          I'm going to let Mr. Mitchell inquire of Mr. Sloley

3   regarding the 2017 criminal possession of a weapon charge.  He

4   can ask him the year in which he was convicted of that charge

5   and the date of that conviction.  He cannot ask him the sentence

6   which he is currently serving because I don't believe the

7   sentence has any probative value whatsoever, and the prejudicial

8   value clearly outweighs that.  So with respect to the criminal

9   possession of a weapon charge, you can ask him about that.

10          I'll permit you to ask him about the fleeing the

11  police charge, which I believe clearly goes to the issue of his

12  damages and his credibility.

13          I'm not going to allow you to ask him about the

14  reckless driving charge.  I don't believe it adds anything to

15  the issues before the jury.

16          That brings us to the harassment charge, which he pled

17  guilty to I believe in 2014.  What's your position, Attorney

18  Green, with respect to that?

19          ATTY. GREEN:  Yes, Your Honor.  I think that that in

20  particular has a lot of risk of being used improperly by the

21  jury.  I think it is going to be kind of -- the kind of thing

22  where in closing, for example, Mr. Mitchell might say, plaintiff

23  was even convicted of crimes for this incident, which

24  particularly given that Mr. Sloley was not convicted of any drug

25  charge, is going to pose a real big issue.

**Sloley v. VanBramer - 14-CV-339**

1          And that's even bigger because we don't have the test.

2     The test was destroyed.  The only thing we have is a statement

3     from the defendant himself that the test produced a particular

4     result, right.  Like we have a big problem there, and I think

5     letting the harassment charge in -- particularly as it's just a

6     violation.  It's not even a misdemeanor.  It's not even a crime.

7     It's a violation -- invites the jury to kind of speculate about

8     what that conviction says about other crimes.

9          I think there's no objection to asking about the facts

10     underlying this because of course those are relevant, right.

11     The fact that both Mr. Mitchell and Ms. Rollins destroyed each

12     other's windshields, yes.  That's obviously something that's

13     going to come in.  We have no objection to that, but to the fact

14     of the plea, I think that just asks the jury to --

15          THE COURT:  Mr. Mitchell, how is the harassment plea

16     admissible?

17          ATTY. MITCHELL:  So Your Honor, as I said, the

18     Hartline case says that all the crimes that were charged about

19     the incident --

20          THE COURT:  Harassment is not a crime though,

21     Mr. Mitchell, is it?

22          ATTY. MITCHELL:  No, Your Honor.  It's a violation.

23     However --

24          THE COURT:  Do you have any authority in which to

25     indicate that a violation could be admitted for purposes of

**Sloley v. VanBramer - 14-CV-339**

1  impeachment?

2          ATTY. MITCHELL:  I think that it would come in also

3  under the bad act situation.

4          And we've also got the problem that the victim who he

5  harassed is now coming in to testify on their credibility

6  issues.  I think it's relevant for the jury to know that he

7  admitted to harassing this person.  That would also possibly be

8  an explanation about why she's changing her story.

9          THE COURT:  I'm not going to allow the harassment

10  conviction.  I find that the prejudice far outweighs any

11  probative value.  I would further note that it is not a crime.

12  Harassment is a violation and not a crime in New York State.

13  Therefore, I'm not going to permit that.

14          That would appear to me, Attorney Green, to address

15  all of the issues involving his criminal history.  Is that

16  correct from your perspective?

17          ATTY. GREEN:  That is.  I'm certainly not aware of any

18  other crimes.

19          THE COURT:  Mr. Mitchell, does that address all the

20  crimes?

21          ATTY. MITCHELL:  Yes.  I think the only other issue is

22  the parole issue, but I think you said you were going to discuss

23  that separately.

24          THE COURT:  Right.  Let's next go to the issue of

25  prior lawsuits in which he alleges he suffered emotional

**Sloley v. VanBramer - 14-CV-339**

1    damages.  It's my understanding there are three prior lawsuits

2    which are referenced in this matter, two of which were lawsuits

3    which Mr. Sloley filed against employees of DOCCS, and the third

4    is a lawsuit which he filed against one of his former attorneys.

5            Attorney Green, it appears in this case, that your

6    client is alleging he has sustained emotional damages as a

7    result of this incident.  Given the fact that he alleges he

8    sustained emotional damages in earlier incidents in earlier

9    litigation, why is that not admissible?

10           ATTY. GREEN:  So I think that goes to the fact that

11   all that's at issue in this case are garden variety emotional

12   damages.  And garden variety emotional damages are not like the

13   cases that defendant cites on this issue where, for example,

14   when somebody has gone to see a doctor and has PTSD or when

15   somebody has scratches on their face or a broken arm, where you

16   can really say, like we're trying to figure out what caused this

17   particular injury.

18           The injuries here, you know, to quote some of the

19   authority on garden variety emotional damages, are those damages

20   that a reasonable person in the same situation would suffer,

21   having gone through what -- and right.  If we're talking about

22   damages, we're assuming that we're prevailing -- what was proven

23   at trial.  I think the premise here that I think is mistaken is

24   that somebody's garden variety emotional damages are kind of a

25   one-time thing or are a unique injury that kind of -- I don't

**Sloley v. VanBramer - 14-CV-339**

1    know -- can only happen once.

2          You know, I think when we look at like, right, what

3    these lawsuits are about, if you look at the malpractice case,

4    for example, yes.  He alleged emotional damages, but I don't

5    think that the fact that somebody's lawyer dismissing a case

6    without their permission -- that's what's alleged -- would cause

7    some emotional harm, would suggest that the person didn't suffer

8    emotional harm when they had a visual cavity search conducted,

9    right.  Both of those things can be true at the same time, that

10   they're not -- this goes to, right, the authority for letting

11   these in is the authority that you're letting them in as a prior

12   inconsistent statement, but the statements are not inconsistent.

13         And I think that goes to one of the cases that

14   defendant cites.  What was let in was a deposition from the

15   other case, and then in the deposition, right, the context for

16   that, which is the name of the suit, what it was about, and so

17   on, but there is no deposition here.  These are suits that were

18   resolved.  Basically the other two -- the malpractice case is

19   ongoing.  The other two were resolved on -- one I believe on the

20   Court's filtering obligation for prison litigation and the other

21   on a voluntary dismissal prior to motion practice.

22         So I think you have to explain to the jury those

23   things in weighing it, and that really starts to put it into

24   satellite litigation and explaining our entire legal system and

25   how prisoner litigation is very difficult to jurors, which I

**Sloley v. VanBramer - 14-CV-339**

1    don't think is what we're here to do.

2            THE COURT:  Mr. Mitchell.

3            ATTY. MITCHELL:  Your Honor, the plaintiff's counsel

4    misunderstands the theory for introducing this.  It's not prior

5    inconsistent statements.  Rather, the issues are damages and who

6    caused the damages.  He didn't allege garden variety injuries.

7    He actually gave me a whole list of injuries in discovery, and I

8    quoted them.  Fear, paranoia, anxiety, humiliation, and fear and

9    loss of trust for law enforcement.  He says these are the

10   injuries caused by Eric VanBramer on April 1, 2013.

11           I show though that he's got these other lawsuits where

12   he claims almost the same language, the same injuries, but says

13   that they were caused in different years by different people at

14   different locations.

15           THE COURT:  Mr. Mitchell, how would you propose to use

16   this?  What would be your line of questions?

17           ATTY. MITCHELL:  Well, Your Honor, I know that for

18   example, in the recent trial I had with Judge Suddaby, he didn't

19   let me use the word lawsuit.  He thought that was a little bit

20   shaky.  So he said I could question, did you allege that, for

21   example, that the Hudson police caused you these injuries in

22   this year, or did you have a claim that Philly caused these

23   injuries to you in this year?  So I want to use it that way.

24           THE COURT:  Attorney Green, what's your response?

25           ATTY. GREEN:  I think if that's what Mr. Mitchell

**Sloley v. VanBramer - 14-CV-339**

1  wants to do with it, then the appropriate thing would be to voir

2  dire out of the presence of the jury and let Mr. Sloley clarify

3  whether those are the same injuries.  If he says they're not the

4  same injury, then obviously that's the end of it.  If he says

5  they are the same injuries, I think we redo that in front of the

6  jury, and Mr. Mitchell can follow up.

7       But I think the problem remains that these are not the

8  same injuries, and we're talking about complaints here and not

9  even a verified complaint, as I understand it.  So it's not

10  like -- we're talking about stock language for emotional damages

11  that, you know, he probably copied from a prison library, or you

12  know.  I don't think that the reason that the claims are

13  identical is because they're -- you know, it's stock language.

14  It's not -- these are not specific injuries that go, actually go

15  to causation.  I don't see it.

16       THE COURT:  With respect to the prior lawsuits, with

17  respect to the two lawsuits in which he alleges he sustained

18  prior emotional damages, both of which I believe involved DOCCS,

19  I'll let Mr. Mitchell inquire whether or not he had filed a

20  claim, and in the course of that claim, did he allege he

21  suffered emotional damages, and Mr. Mitchell can inquire

22  further.  You're not to get into the underlying acts,

23  Mr. Mitchell.  We're not going to try those two lawsuits in the

24  course of this lawsuit.

25       With respect to the third lawsuit in which he sued one

**Sloley v. VanBramer - 14-CV-339**

1    of his attorneys for malpractice, I think that has no probative

2    value, and you're not to mention that lawsuit.  Do you

3    understand that, Mr. Mitchell?

4          ATTY. MITCHELL:  Thank you, Your Honor.

5          THE COURT:  That brings us to the issue of a parole

6    violation.  Mr. Mitchell, what is your position with respect to

7    that?

8          ATTY. MITCHELL:  Your Honor, I think the violation of

9    parole is relevant to credibility, and I think it's also

10   relevant to -- you know, the Hartline case talks about the

11   characteristics of the arrestee and the circumstances are

12   relevant.  I think the fact that he was on parole, wasn't even

13   supposed to be in the Northern District on April 1, 2013, is

14   relevant.  I also think the fact that he subsequently had his

15   parole revoked, the fact that he's got subsequent arrests, I

16   think these are also relevant to damages.  He's put his contact

17   with law enforcement at issue, and the fact he was put away for

18   an extra 14 months is relevant to damages, and also might be a

19   motivation frankly for why he filed this lawsuit.  He's upset

20   the police caught him.  Thank you, Your Honor.

21         THE COURT:  Attorney Green.  Attorney Green, are you

22   still there?

23         Attorney Green appears frozen, Tara.

24         THE CLERK:  Yes.

25                  (Discussion off the record.)

**Sloley v. VanBramer - 14-CV-339**

1    ATTY. GREEN:  My computer has crashed.  So I'm going

2   to do this on my phone just so that we can keep moving.

3    THE COURT:  So Attorney Green, I was asking you, and I

4   think you may have crashed during the question.  Mr. Mitchell

5   had indicated he wishes to bring in information regarding a

6   parole violation for your client, which resulted in him being

7   incarcerated I believe for an additional 14 months.  What is

8   your position with respect to the parole violation?

9    ATTY. GREEN:  Yes.  Ultimately, I'm not sure I see any

10   probative value to the parole violation.  It is a bad act being

11   offered to suggest that Mr. Sloley -- bad way on another

12   occasion.  A parole violation is a parole violation, but it is

13   not -- it does not go to whether he is likely to -- or on one

14   hand, it doesn't go to whether the officer had any reason to

15   believe that he was secreting drugs in his anal cavity.  And on

16   the other hand, it doesn't go to whether or not he's telling the

17   truth about, you know, not having cocaine in his car.  I don't

18   see the probative value, and I think that the risk of prejudice

19   that inviting the jury to essentially say this is a bad person,

20   far outweighs or at a minimum just outweighs the probative

21   value.

22    THE COURT:  Mr. Mitchell, I'll permit you to ask the

23   plaintiff if the plaintiff was on parole at the time of this

24   incident.  I'm not permitting you to ask if his New York State

25   parole was violated or he was incarcerated following that

1    violation.  You're also not to ask him about the underlying

2    charge for which he was on parole.  If you wish to ask him if he

3    was in fact on parole at the time of this incident, you're

4    welcome to do so.

5          That would seem to me to address all of the issues

6    regarding his criminal record and his prior lawsuits.  Does that

7    reflect your understanding, Attorney Green?

8          ATTY. GREEN:  Yes, it does.  Thank you, Judge.

9          THE COURT:  Attorney Mitchell?  Attorney Ouimet?

10         ATTY. MITCHELL:  Yes, thank you, Your Honor.

11         THE COURT:  That next brings us to the drug kit and

12   plaintiff's motion in limine seeking to exclude the alleged

13   positive drug test which was performed by defendant VanBramer

14   allegedly using a NIK field test.  Attorney Green, what is your

15   position?

16         ATTY. GREEN:  Right.  So I think it's important to

17   note that we're not moving to exclude the drug test because the

18   drug test doesn't exist anymore.  What we're moving to exclude

19   is the hearsay record, that is the evidence destruction record

20   and the evidence locker record, that stated there was a positive

21   test, because the State of New York destroyed the test.

22         And you know, for whatever reason, the Attorney

23   General has declined to let us know whether that destruction was

24   in compliance with preservation policies, in which case, you

25   know, I think they would have a stronger argument, or whether it

31

**Sloley v. VanBramer - 14-CV-339**

1    was not, in which case I think we would have some problems.

2          So we're left with -- where I think would happen if

3    these documents come in is that, you know, or if reference is

4    made, we don't have the best evidence, which is the drug kit.

5    We don't have -- we don't have, you know, the more reliable test

6    that best practices require, which is after you get a positive

7    from the field kit, what you're supposed to do is go and have a

8    lab test since all that drug kits provide is a presumptive

9    positive.

10          THE COURT:  Attorney Green, let me interrupt you.  Let

11   me ask you a question.  It's my understanding that this test was

12   allegedly performed by the defendant VanBramer; is that correct?

13          ATTY. GREEN:  That's correct.

14          THE COURT:  So if he testifies about his observations

15   based upon his performing the test, how is that not admissible?

16          ATTY. GREEN:  So I think if we're just talking about

17   his oral testimony, that is admissible in that sense.  I think

18   that our argument there is only about probative value.  I think

19   it's different if we're talking about an official looking piece

20   of paper that reflects his own hearsay statement or --

21          THE COURT:  Who created the official looking piece of

22   paper?

23          ATTY. GREEN:  His signature as well as the name of

24   somebody else is on it.  So I actually don't know.

25          THE COURT:  So assuming for purposes of conversation,

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

**Sloley v. VanBramer - 14-CV-339**

1    defendant VanBramer testifies that he created that record and

2    it's a record created in the ordinary course of business for New

3    York State Troopers.  Why is that not admissible?

4         ATTY. GREEN:  I think the answer is we don't know

5    that.  There is a layer of hearsay, at least until they provide

6    foundation.  And you know, I think part of our motion was they

7    shouldn't be allowed to do this unless they lay foundation.  But

8    assuming they lay that foundation, I think we still have the

9    problem, which is that this makes it look like his recollection

10   is somehow more official than it is, right.  We don't have the

11   actual record, and in fact, the best practice.  So we have this

12   issue that almost calls for expert testimony, which we don't

13   have.  So I think the issue there is that to get into whether

14   this is reliable, we have a lot of things we haven't done and

15   are not going to do, given witness lists.

16        THE COURT:  Mr. Mitchell.

17        ATTY. MITCHELL:  Your Honor, Eric VanBramer is the one

18   who performed the test.  My understanding, he's going to come in

19   and talk about how the police canine alerted to the vehicle, the

20   substance that he saw on the seat that the plaintiff had been

21   sitting in at the time of the arrest, the fact that Eric

22   VanBramer performed the NIK field test.  He can talk about what

23   the test is because he's done it hundreds of times and was

24   trained in it.  He can talk about the results of the test.

25        He'll also be able to talk about how it was delivered,

**Sloley v. VanBramer - 14-CV-339**

1    you know, the chain of custody of it, and he'll have official

2    records that he and Brian VanBramer filled out about it.  I mean

3    we also put on our list the person who was the evidence

4    custodian.  I don't know if he's even needed, but he can also

5    verify that he signed it.

6         You know, the plaintiff says there ought to have been

7    a lab test.  That's just the plaintiff's opinion.  Also, the

8    fact Sloley pleaded guilty only three days after the arrest.  He

9    got a plea bargain.

10        And in terms of this destruction of the evidence,

11   you'll see in the records that basically the police followed up

12   with the Court, found out that the drug charge was dismissed,

13   and then the drugs were destroyed in late November 2013, about

14   seven months after this incident.

15        Also, you might have noticed the plaintiff did not

16   seek an adverse inference instruction about spoliation.  That's

17   because this lawsuit was not filed until March 27, 2014, more

18   than four months later.  So this lawsuit did not exist at the

19   time the drugs were destroyed.

20        THE COURT:  The Court is going to permit the

21   introduction of the NIK field test, assuming that Mr. Mitchell

22   through Mr. VanBramer can lay a proper foundation.  To the

23   extent that plaintiff's counsel wishes to argue that the test

24   was improperly destroyed or that somehow goes to validity of the

25   test, they're welcome to do so on cross-examination.

1    Which next brings me from docket No. 104-1 to two

2  requests, which appear to be directed to jury instructions.  One

3  is on the issue of qualified immunity, and the second of which

4  is with respect to the issue of nominal damages.

5    The Court will address both of those issue at the

6  charge conference at the end of the trial, but it is my practice

7  that, Attorney Green and Attorney Mitchell and Ouimet, not to

8  address the jury on the issue of qualified immunity unless and

9  until the jury returned a verdict in favor of the plaintiff.  If

10  that occurs, I will then hear from counsel to whether or not a

11  qualified immunity instruction would be appropriate.

12    With respect to the issue of nominal damages, I will

13  address that issue at the time of the charge conference, which

14  we will conduct after the trial has begun.

15    The next issue is showing the jury Mr. Sloley's mug

16  shot.  Mr. Mitchell, do you intend to show the jury

17  Mr. Mitchell's mug shot?

18    ATTY. MITCHELL:  We wanted to put in the DCJS record

19  because that was something the police reviewed in the police

20  station.

21    THE COURT:  What does this mug shot have to do with

22  it?

23    ATTY. MITCHELL:  It's just merely because it's part of

24  that record, and I think the totality of the circumstances

25  should be available.

**Sloley v. VanBramer - 14-CV-339**

1           THE COURT:  There's no probative value in putting his

2    mug shot before the jury.  I'm going to direct that you not put

3    his mug shot in front of the jury.

4           I assume, Attorney Green, as I ruled in your favor,

5    you don't need to be heard on that issue.

6           ATTY. GREEN:  I agree.

7           THE COURT:  I assume you saw the wisdom of what I did,

8    Counselor.

9           ATTY. GREEN:  Very much.

10          THE COURT:  The next is docket No. 104-1, page 18:

11   The Court should preclude defendants from introducing evidence

12   concerning plaintiff's financial status.  I'm not certain what

13   your concern is there, Counsel.

14          ATTY. GREEN:  I think that is a generic one that is

15   based on -- this is something that -- our cases from the

16   Southern District and the Eastern District, the New York --

17          THE COURT:  Attorney Green, I apologize.  You need to

18   start over.  You're breaking up a little bit.  If you could

19   start with my question regarding evidence regarding the

20   plaintiff's financial status.  Attorney Green, let me stop you

21   there.

22          Attorney Mitchell, do you intend to introduce that

23   type of evidence?

24          ATTY. MITCHELL:  You know, I'd have to see what he

25   testifies about.  For example, if he starts talking about his

**Sloley v. VanBramer - 14-CV-339**

1    background as a mechanic and other things like that, then I

2    think he's opening the door to that.

3              I also think it's always reasonable for us to argue

4    that he has a financial motive, that he's filing this lawsuit to

5    try to get money.

6              THE COURT:  You can do that, but how does that require

7    you to go into his individual particularized financial

8    situation?

9              ATTY. MITCHELL:  I don't think it would.  I was a

10   little concerned that might be where the plaintiff was going, to

11   keep out any discussion about him having a monetary interest.

12             THE COURT:  Attorney Green, given his current

13   situation, I assume you're not going to try to make any claim

14   for lost wages or lost income?

15             ATTY. GREEN:  No.

16             THE COURT:  I'm going to direct that there be no

17   introduction of his current financial status.  Attorney Mitchell

18   and Attorney Ouimet, if Attorney Green does something you think

19   opens the door, then I'll permit you to revisit the issue at

20   that time.  Given his current life situation, there would

21   certainly be no claim for lost wages.

22             That brings us to No. 8, which is on docket 104-1,

23   page 19:  The Court should preclude the defendant and other

24   police witnesses from testifying or otherwise presenting

25   documentary evidence of awards or commendations they receive

**Sloley v. VanBramer - 14-CV-339**

1    during the course of their employment as law enforcement

2    officers.

3                Mr. Mitchell, sir --

4                Attorney Green, let me address this with Mr. Mitchell

5    first, please.

6                Attorney Mitchell, I assume you intend to put in

7    information regarding his training with respect to the NIK test

8    and perhaps with respect to the canine; is that correct?

9                ATTY. MITCHELL:  Yes, Your Honor.

10               THE COURT:  Beyond that, do you seek to put any

11   additional information in regarding commendations he received?

12               ATTY. MITCHELL:  For Eric VanBramer, it's my

13   understanding he has an award that had to do with his using a

14   police canine in a particular case.  I think that that's

15   relevant for another purpose besides just generic character

16   testimony because the plaintiff is attacking this issue about

17   the police canine, claiming it wasn't there or was not reliable.

18   So I think he should be able for respond for that purpose.

19   Thank you.

20               THE COURT:  Attorney Green.

21               ATTY. GREEN:  Yeah.  Particularly given the issues the

22   circuit identified, which is that the canine alerted in three

23   places, none of which being the place that, you know, that

24   Officer VanBramer ultimately found drugs.  I think that that

25   kind of amounts to bolstering with character evidence.

**Sloley v. VanBramer - 14-CV-339**

1    I certainly don't have any objection to, you know,

2  training on canine issues, training on NIK tests coming in.  I

3  think that's, in fact, only appropriate, but an award for using

4  a canine seems to me to kind of suggest he did good job on this

5  occasion, and therefore, he did a good job on this other

6  occasion, which is improper.

7         THE COURT:  Attorney Mitchell.

8         ATTY. MITCHELL:  Your Honor, the plaintiff just said

9  now that they're going to argue somehow there was a problem with

10  the canine search.  So they're just proving my point that this

11  award should come in.  I mean he's trying to defend himself

12  against these allegations.  I think he should be able to put in

13  some testimony about his experience working with police canines

14  and the award he received for it.  Thank you.

15         THE COURT:  I won't allow it in the first instance,

16  but if Attorney Green inquires of defendant VanBramer and

17  attacks his credibility regarding his competence with respect to

18  the use of canine dogs, I'll let you put in the evidence.  But

19  you cannot put it in the first instance, Mr. Mitchell, unless

20  the issue is raised by Attorney Green.

21         ATTY. MITCHELL:  Thank you.

22         THE COURT:  That brings us to No. 9 on page 20:  The

23  Court should preclude defendants from misleading the jury by

24  pretending defendants will not be indemnified for any damages

25  award.  Do you anticipate doing that, Mr. Mitchell?

**Sloley v. VanBramer - 14-CV-339**

1          ATTY. MITCHELL:  I wasn't going to put in any proof

2     about who would pay a judgment.

3          I'd just also request that by the same token, the

4     plaintiff shouldn't be able to argue that there's an

5     indemnification.  So hey, just give him money because he won't

6     pay it.  I think that should just be kept out entirely.

7          THE COURT:  Attorney Green, does that seem reasonable

8     to you?

9          ATTY. GREEN:  It does.  One thing I want to make sure

10    is I think it's not just evidence about who would pay.  It's

11    arguments that come from:  You're coming after this poor

12    individual officer.  Even if you don't state he's going to pay,

13    you're implying he's going to pay.

14          THE COURT:  There would no proof put in as to who will

15    or will not pay any award which plaintiff may receive with

16    respect to this matter.

17          That brings us to No. 10, page 22:  The Court should

18    permit plaintiff to cross defendants and other police witnesses

19    in plaintiff's case in chief.  Attorney Green, without having

20    you lay out your trial strategy, do you anticipate calling the

21    defendant as part of your case in chief?

22          ATTY. GREEN:  So I think that is something we probably

23    ought to address at some point.  In terms of efficiency, I don't

24    think it makes sense to call witnesses twice.  I think there is

25    some testimony we intend to elicit, and the extent it is not

**Sloley v. VanBramer - 14-CV-339**

1    brought out on direct such that we would be allowed to take it

2    on cross, we would like to take it in our case in chief.

3            But I think that we would have no objection to, you

4    know, considering that as part of our case in chief, but letting

5    defendants call the witnesses so that we don't call them twice.

6    I know that that's not a clean answer, but otherwise there is

7    some testimony I want to elicit from VanBramer in our case in

8    chief, and I still have not fully decided whether I think we

9    want Brian VanBramer in our case.

10           THE COURT:  To the extent that you choose, Attorney

11   Green, to call one or both of the defendant or the nondefendant

12   VanBramer as a witness, you can call them.  To the extent they

13   are -- you believe they're being hostile witnesses, you can ask

14   the Court at that point for the right to cross-examine them and

15   treat them as hostile witnesses.  They need to show some

16   indication first that they're hostile before I'm going to let

17   you do that.

18           I'd ask, Attorney Green, that you and Attorney Ouimet

19   and Attorney Mitchell coordinate the calling of witnesses so

20   that they're not called multiple times.  I mean you call and

21   then Mr. Mitchell and Ms. Ouimet wishes to reserve their right

22   to call as part of their case in chief, they can do that.

23           With respect to No. 11, it's my intent to refer to

24   counsel as Attorney Green, Attorney Mitchell, Attorney Ouimet,

25   or Counselor Green, Counselor Ouimet, Counselor Mitchell.  I'm

**Sloley v. VanBramer - 14-CV-339**

1    not going to refer to anyone by their particular pronoun and I'm

2    not going to call anyone professor or doctor.  As a practical

3    matter, all of you are doctors.  I assume all of you have

4    doctorate degrees, juris doctorate degrees.  If you'd like me to

5    call all of you doctor, I would do that, but it just seems

6    silly.

7            Attorney Green, that seems to be all of the issues

8    raised in docket No. 104.  Am I correct in that matter?

9            ATTY. GREEN:  That's -- Honor.

10           THE COURT:  I apologize, Attorney Green.  You broke up

11   again.

12           ATTY. GREEN:  That is correct, Your Honor.

13           THE COURT:  Then Attorney Mitchell, I believe you and

14   Attorney Ouimet raised some issues.

15           ATTY. MITCHELL:  Yes, Your Honor.

16           THE COURT:  What document are you referencing,

17   Counselor?

18           ATTY. MITCHELL:  I'm looking at -- this was my

19   original motion in limine.  I think it was 107.  It was the

20   longer one filed on August 12.

21           THE COURT:  Which issue remains that we have not

22   addressed for you?

23           ATTY. MITCHELL:  So I had requested that the records

24   from Dr. Kessler be admitted into evidence because in the

25   plaintiff's deposition, he revealed that he had gone to that

**Sloley v. VanBramer - 14-CV-339**

1    mental health professional in 2014.  It was a year after this

2    incident.  He signed an authorization for me to obtain

3    Dr. Kessler's records.  I provided the records to the Court.  I

4    think they were Exhibit E.  It has a business record

5    certification.  So there's no issue there.

6           And it talks about what is going on with his mental

7    and emotional state and what are the causes of it, what things

8    was he complaining about.  One interesting thing is there's

9    nothing in there about him complaining about a search by Eric

10    VanBramer.  It's all these other issues.  So I think that's

11    relevant to his alleged emotional and mental situations and

12    causation in terms of what was caused or not caused by Eric

13    VanBramer.

14           THE COURT:  I guess my concern is, Mr. Mitchell, that

15    he's only seeking garden variety emotional damages.  There's not

16    going to be any expert testimony to the extent of his damages.

17    So why is this testimony from Dr. Kessler, who you don't intend

18    to call, admissible?

19           ATTY. MITCHELL:  Because it bears on, as I said, his

20    claims of damages in terms of the humiliation and embarrassment,

21    fear of law enforcement, being unhappy with his life.  I think

22    since he's injected that, I think the fact that he was seen by

23    this therapist, we ought to get those records in.  Just like if

24    he had claimed a knee injury, we should get in the records about

25    the knee injury of course.

**Sloley v. VanBramer - 14-CV-339**

1        THE COURT:  If he claimed a knee injury, wouldn't

2   somebody bring a doctor in and let them be subject to

3   questioning and cross-examination?

4        ATTY. MITCHELL:  I think because there's a business

5   record certification, it ought to come in as a medical record

6   would come in.

7        THE COURT:  I don't need to hear from you, Attorney

8   Green, because I'm going to rule in your favor.

9        I'm going to exclude the records of Dr. Kessler.  I

10  would note, number one, that Mr. Sloley is only seeking garden

11  variety emotional damages in this matter.

12       Number two, Mr. Sloley is not calling any mental

13  health or doctor in this matter to support his claim of anything

14  beyond garden variety emotional damages.

15       Number three, I've reviewed in great detail the

16  records of Dr. Kessler, and they contain very damaging and

17  prejudicial matter to Mr. Sloley, which far outweighs the

18  probative value.

19       Number four, Dr. Kessler is not available for

20  cross-examination.  So I'm going to exclude Dr. Kessler's

21  records from the record.

22       Number four, Attorney Mitchell, is you're seeking the

23  Court to exclude any evidence of other people who may have been

24  searched by defendant VanBramer; is that correct?

25       ATTY. MITCHELL:  Yes, Your Honor.

**Sloley v. VanBramer - 14-CV-339**

1            THE COURT:  Attorney Green, do you intend to attempt

2      to put such additional information into the record?

3            ATTY. GREEN:  So not directly and certainly not

4      through anyone other than defendant VanBramer.  We do intend to

5      ask him questions like, have you conducted visual cavity

6      searches before?  Have you --

7            THE COURT:  Attorney Green, I apologize.  You need to

8      start again, Counselor.  You continue to break up for some

9      reason.

10           ATTY. GREEN:  Okay.  Let me see if I can do something.

11           THE COURT:  You did.

12           ATTY. GREEN:  Is that better?

13           THE COURT:  It is.  You went off temporarily.  Now

14     you're back.

15           So with respect to the issue of other searches, you're

16     going to inquire of defendant VanBramer if he's conducted other

17     searches prior to this incident; is that correct?

18           ATTY. MITCHELL:  Right, and what the results of those

19     searches are.  We're not going to through hearsay, which I think

20     is one of the several objections.  We're not going to, you know,

21     bring in through Mr. Sloley, oh.  I heard that he searched this

22     other person.  But we do intend to do, because we think it's

23     part of what would form a reasonable suspicion, you know, have

24     you ever found drugs in somebody's anal cavity?  What happened

25     in that case?  Which I don't think is propensity.  That's

**Sloley v. VanBramer - 14-CV-339**

1   about -- expectations are, but otherwise --

2           THE COURT:  Attorney Green, I apologize.  You're

3   breaking up again.

4           ATTY. GREEN:  Oh, my gosh.  Okay.  Let me see.  I'm

5   trying to think if there's anything else I can do I haven't done

6   already.  I have switched to cellular signal.  I don't know if

7   that's going to work.  Perhaps if I turn off my video, that

8   might make it clearer.

9           THE COURT:  You're much clearer now, Counselor.  Your

10  connection is much better.

11          So with respect to defendant VanBramer, to summarize

12  what you were saying, it's your intention to ask defendant

13  VanBramer if he's conducted similar searches involving anal

14  cavity searches, and if any of those prior occasions, he had

15  found drugs.  It's not your intent to ask him hearsay questions

16  that your client may have heard he did a bad thing at a prior

17  time; is that correct?

18          ATTY. GREEN:  Precisely.

19          THE COURT:  Mr. Mitchell.

20          ATTY. MITCHELL:  Your Honor, I think if it's that

21  limited, I mean I think I would ask him that question too.  My

22  concern is just, for example, in the plaintiff's deposition, he

23  started talking about other guys he heard about who told him

24  they were searched.  That's all hearsay, irrelevant,

25  prejudicial.

**Sloley v. VanBramer - 14-CV-339**

1      THE COURT:  Mr. Mitchell, this seems to be a rare

2  occasion when you and Attorney Green agree.

3      So Attorney Green, you can question Mr. VanBramer as

4  to -- if you wish to ask him, Mr. Mitchell and Ms. Ouimet, as to

5  any prior anal cavity searches which he conducted and whether or

6  not drugs were found, but no one is going to inquire regarding

7  any hearsay testimony about what was done or not done by either

8  of the VanBramers.

9      ATTY. MITCHELL:  Your Honor, just my other concern

10  that was included.  I don't want them trying to say, oh, the

11  state police as a whole have a bad reputation.  They've

12  mistreated people.  I think that would be irrelevant.

13      THE COURT:  There will be none of that.  The state

14  police are not the defendant here.  Mr. VanBramer is the only

15  defendant here and to the extent he did or did not do things.

16  That is the issue.  Unless someone has direct, personal

17  knowledge based upon their observations, there will be no such

18  testimony.

19      Attorney Green, Mr. Mitchell wants me to confirm that

20  you're not intending to make reference to dismissed claims.

21  Would that be correct?

22      ATTY. GREEN:  That's correct.  By the same token --

23      THE COURT:  Attorney Green, we lost you again.

24      ATTY. GREEN:  Okay.  Yes, that's correct.  And we also

25  don't want, you know, defendants referring to the fact that

**Sloley v. VanBramer - 14-CV-339**

1   claims were dismissed.

2          THE COURT:  There will be no reference made by either

3   party or their attorneys to any claims which have been dismissed

4   by Judge Sharpe or the Second Circuit.

5          That would seem to me to address docket No. 104 and

6   107.  Is that your understanding, Attorney Green?

7          ATTY. GREEN:  Yes.

8          THE COURT:  Attorney Mitchell?

9          ATTY. MITCHELL:  Yes, Your Honor.

10         THE COURT:  That would seem to bring us to docket No.

11  113, which I believe was filed by you, Mr. Mitchell, seeking to

12  exclude any evidence from coming in regarding any disciplinary

13  record or disciplinary histories of attorney -- excuse me,

14  defendant VanBramer and former defendant VanBramer; is that

15  correct?

16         ATTY. MITCHELL:  Yes, Your Honor.

17         THE COURT:  Attorney Green, do you have an intention

18  to inquire in those areas?

19         ATTY. GREEN:  I do.

20         THE COURT:  What is the basis of your inquiry?  Do you

21  have records that indicate that one or both of these people have

22  been disciplined on prior occasions?

23         ATTY. GREEN:  So we do not.  This is in what I filed

24  late last night -- or not late last night.  I don't know if the

25  Court has read it.

**Sloley v. VanBramer - 14-CV-339**

1           THE COURT:  I did read it.

2           ATTY. GREEN:  Yes.  I figured.  But what we served to

3   file as a subpoena, we have limited to issues of honesty, within

4   the last ten years, or issues with similar incidents.  I think

5   for the same reasons some of plaintiff's convictions are coming

6   in, it is only fair that if disciplinary exists, we get to

7   inquire to refresh their memory if they say they do not recall

8   or to make sure they are stating it accurately.  We get some

9   documents that at a high level, summarize exactly the kind of

10  information that's coming in about plaintiff, right, the date

11  the name of the charge, and ultimately whether it was sustained

12  or not.

13          THE COURT:  Mr. Mitchell, are we having an academic

14  discussion here?  Are there in fact such records?

15          ATTY. MITCHELL:  Your Honor, I have no idea.  I was

16  never served with subpoenas.  The plaintiff's counsel emailed me

17  a subpoena yesterday at 5:50.  I don't accept service by email.

18  This thing is directed to Eric VanBramer, Brian VanBramer, and

19  State of New York, and it has a very long list of records.

20  Documents sufficient to identify by -- I don't know if you want

21  me to read the whole thing.

22          THE COURT:  I read it, Counselor.

23          ATTY. MITCHELL:  Yeah.  This is a discovery demand

24  masquerading as a trial subpoena.  Discovery in this case closed

25  more than seven years ago.  In Judge Sharpe's appointment order,

**Sloley v. VanBramer - 14-CV-339**

1     he was absolutely definitive.  Absent extraordinary

2     circumstances, trial counsel shall not conduct any further

3     discovery in this action.  Rather, trial counsel shall prosecute

4     this action based upon the discovery produced to date.

5         So the plaintiff can't serve new demands.  I mean it's

6     less than a week to trial.  I have no way to even try to get

7     these records.  It should have been sought in discovery.  I mean

8     these are also -- these are demands that would go to the state

9     police, who I don't even represent in this case.

10        THE COURT:  So Mr. Mitchell, thank you.

11        Attorney Green, to the extent you wish these

12     documents, Mr. Mitchell has made it clear he's not going to

13     produce documents regarding the nondefendant VanBramer or the

14     New York State Police, as he does not represent them.  He's

15     further indicated he has no such records in his possession.

16        So to the extent you wish to garner such additional

17     records, I suggest you have the subpoena served upon the state

18     police and upon the nondefendant VanBramer.  Make the subpoena

19     returnable here at the courthouse.  If in fact such records are

20     determined, I'll listen to arguments and make a ruling at that

21     time.

22        At this point, it's somewhat of an academic exercise

23     because I'm discussing records which may not exist and which

24     I've never seen.  All right.

25        ATTY. GREEN:  To be clear, I did email last week to --

**Sloley v. VanBramer - 14-CV-339**

1   I emailed, and apparently my computer failed to attach the file.

2   But the reason I did not serve it immediately is because in this

3   case, the Attorney General previously represented those parties,

4   and I did not want to be accused of contacting a represented

5   party.  I just also want to make sure it is therefore kosher for

6   me to send something to Brian VanBramer and --

7           THE COURT:  Two things, Attorney Green.  Again, you

8   broke up a little bit, but to use the technical phrase, it is

9   kosher for you to do that, and you're welcome to serve a

10  subpoena on the nonparty VanBramer and the New York State

11  Police.

12          To the extent you wish to get any records that

13  Mr. Mitchell has, he doesn't accept service by email.  So you'll

14  have to make arrangements with him to serve such a subpoena,

15  while he's indicated he has no such records; is that correct?

16          ATTY. MITCHELL:  Yes, Your Honor.  I still think it's

17  not fair under the discovery rules that they can just get around

18  that and start serving trial subpoenas for records that could

19  have been sought in discovery.

20          THE COURT:  I guess two responses to that,

21  Mr. Mitchell.  Number one, you can use a subpoena to have

22  documents produced at the courthouse for use at trial.  Number

23  two, Mr. Sloley represented himself pro se in this matter and

24  did not have the benefit of Attorney Green's wisdom.

25          So given the Second Circuit's repeated direction that

**Sloley v. VanBramer - 14-CV-339**

1    we show special solicitude to inmate defendants and Mr. Sloley

2    is an inmate at this time, I'm going to permit the service of

3    the subpoena, reserving to you the right to object to the

4    records when and if they're actually produced.  That would seem

5    to address No. 113.

6          That would seem to bring us to No. 115.  I'm somewhat

7    perplexed, Attorney Green, by this.  You indicate at docket

8    No. 115, argument 1, that you wish to introduce a brief from the

9    Second Circuit.  Is there some dispute as to whether or not

10   defendant VanBramer strip-searched your client?  Is that an

11   issue in this matter?

12         ATTY. GREEN:  Apparently it is.  I did not understand

13   it to be, but Mr. Mitchell has indicated he's not willing to

14   stipulate to the fact that there was a visual cavity -- so as a

15   prior inconsistent statement, all we want is the two sentences

16   where --

17         THE COURT:  Attorney Green, you're breaking up again.

18         ATTY. GREEN:  Okay.  All we want is the pair of

19   sentences -- prior inconsistent --

20         THE COURT:  You're breaking up again.  I can't hear

21   you, Counselor.

22         ATTY. GREEN:  Is it any better with my video off?

23         THE COURT:  It seems to be better now.  So your

24   concern is if Mr. VanBramer gets on the stand and testifies that

25   he in fact did not conduct a strip search, you want to use these

**Sloley v. VanBramer - 14-CV-339**

1  two sentences to impeach him regarding his prior inconsistent

2  statement to the Second Circuit that in fact a strip search took

3  place; is that correct?

4         ATTY. GREEN:  Exactly.

5         THE COURT:  Mr. Mitchell, does your client contend

6  there was no strip search?

7         ATTY. MITCHELL:  Your Honor, the issue is I think that

8  the term body cavity search, which is what plaintiff wants to

9  use, I think is something the jury is going to think is

10  something else.  I think they're going to think a body cavity

11  search is where you stick a probe into someone's body cavity.

12  So I think it's important for the officer to actually testify

13  what it actually is.

14         THE COURT:  I don't think that's the issue.  Your

15  concern is that he be allowed to testify in detail what he

16  actually did.

17         ATTY. MITCHELL:  Yes, and I don't want to agree to

18  some stipulation that the lawyer is going to try to twist what

19  it means.  I think the witnesses should come in and say this is

20  what happened.

21         THE COURT:  So Attorney Green, if for some reason

22  defendant VanBramer gets up and testifies he in fact did not

23  conduct a body cavity search, I'll allow you to use two

24  sentences in the brief to the Second Circuit to cross-examine

25  him with respect to that.

**Sloley v. VanBramer - 14-CV-339**

1          On the other hand, if he gets up and describes in

2  detail what he did and it includes an anal cavity search, then

3  I'm not going to let you use the information.

4          ATTY. GREEN:  That's all we would seek to do.  So

5  thank you.

6          THE COURT:  The next issue is docket No. 115-2:  The

7  Court should preclude Mr. Mitchell from making any reference to

8  any conversation he had with Ms. Rollins, or in the alternative,

9  should issue orders which address the attorney-witness problem.

10          Mr. Mitchell, I take it you must have had some

11  conversation allegedly with Ms. Rollins regarding her testifying

12  at a deposition?

13          ATTY. MITCHELL:  Yes, Your Honor.

14          THE COURT:  It's your position that she indicated she

15  did not do so out of fear of Mr. Sloley?

16          ATTY. MITCHELL:  Yes.  Well, she said she was afraid

17  of him and didn't want to be in the same room as him and talked

18  about having an order of protection against him.

19          THE COURT:  What relevance does that have to the

20  issues before the Court?

21          ATTY. MITCHELL:  Well, we think that if Daphne Rollins

22  does testify, we should able to question her about her prior

23  statements, and one of them would be the statement that she was

24  afraid of plaintiff.

25          THE COURT:  Suppose she denied saying that,

**Sloley v. VanBramer - 14-CV-339**

1    Mr. Mitchell.  Then what are you going to do?

2            ATTY. MITCHELL:  We would then -- I would not testify.

3    It would just be a question, and that's it.

4            THE COURT:  I'll permit you to ask her if she had that

5    conversation and made that statement with you, but if she denies

6    the statement, you're going to move on to something else.  We're

7    not going to go through a full litany of 15 or 20 questions

8    asking the same question in a different way.

9            ATTY. MITCHELL:  Not as to that, although I think that

10   her prior statements also, for example, to the 911 operator, the

11   statements to the police, the signed domestic incident report, I

12   think we ought to be able to put in those records if she

13   testifies inconsistently.

14           THE COURT:  If you can lay a proper foundation for

15   those records, Counsel, I will allow you to do that, but it's

16   incumbent upon you to lay a proper foundation.

17           Do you understand the Court's ruling, Attorney Green?

18           ATTY. GREEN:  Yes, although I would say that

19   Ms. Rollins has already supplied an affidavit that says that she

20   denies that conversation ever took place.  So I would ask that

21   we voir dire her outside the presence.

22           THE COURT:  I'm not going to do that.  He can ask her

23   that one question in front of the jury.  If she testifies

24   consistent with the prior affidavit that I never had that

25   conversation with Mr. Mitchell, I'm not going to permit him to

1  inquire further.

2          ATTY. GREEN:  Okay.

3          THE COURT:  That would seem to bring us next to docket

4  No. 117.  Each of those issues, I believe we've addressed.

5          Attorney Green, with respect to docket No. 117, have

6  we addressed all of the issues that you raised therein?

7          ATTY. GREEN:  Yeah.  117 was only in opposition.  So I

8  would suppose we did.

9          THE COURT:  That would seem to me, Attorney Green,

10  that we've addressed all of the issues raised in this plethora

11  of motions in limine.  Is that your understanding?

12          ATTY. GREEN:  That is, Your Honor.

13          THE COURT:  Mr. Mitchell and Ms. Ouimet, is that your

14  understanding?

15          ATTY. MITCHELL:  Yes, Your Honor.  I think that covers

16  the issues.

17          THE COURT:  Give me one second, please.  Attorney

18  Green, Attorney Mitchell, I'm just checking with my law clerk,

19  who is here to make certain that I'm correct.

20          My attorney indicates -- I feel like her client.  My

21  law clerk indicated to me I've addressed all of the issues set

22  forth in here.

23          So there's one remaining issue, Attorney Green.  We do

24  not have funds to purchase suits for people, for your client to

25  wear to court.  I don't know if he has any clothes at the

1    institution where he is housed.  If he does, we can reach out

2    and direct he be produced in clothes.  In the alternative, it

3    appears we have suits here in the Northern District of New York,

4    one of which may or may not fit your client.  This will be an

5    odd question, Attorney Green.  Do you know what your client's

6    height, weight, and size is?

7         ATTY. GREEN:  That was a question I have.  I scheduled

8    a call with him tomorrow.  I have to send something like a week

9    in advance to get a call or a couple days in advance.

10        THE COURT:  When you have Mr. Sloley on the phone, why

11   don't you inquire if he has clothes at the facility.  If he

12   does, we will reach out to the facility and direct them to

13   produce him in those clothes.  If he does not have clothes, as I

14   indicated to you, we apparently have 15 or 20 men's suits here

15   in the Northern District.  You give me some idea to what

16   Mr. Sloley's height, weight, and size would be.  We will

17   endeavor to see if we can find something for him to wear.

18        Just so you know, Counselor Green and Counselor

19   Mitchell and Counselor Ouimet, here in the Northern District of

20   New York, Attorney Green, we have, for want of a better term,

21   skirts on the benches so that the jury cannot see that the

22   inmate is shackled.  I would direct that his handcuffs be

23   removed, but he will be shackled during the course of the trial.

24        When you determine, Attorney Green, that you wish to

25   call him as a witness, I will have the jury removed from the

**Sloley v. VanBramer - 14-CV-339**

1   courtroom, and I will put him on the bench and have him seated

2   before they come back so they do not see that.  As a practical

3   matter though, I don't know how they do things in the Southern

4   and Eastern District, but there will be two correction officers

5   in the courtroom.  So that's just a practical reality because

6   he's in custody.

7           Anything else you want to address, Attorney Green?

8           ATTY. GREEN:  No.  I think it is very good to know

9   you've got 15 suits.  I assume I should tell Ms. Burtt and give

10  her the sizing.

11          THE COURT:  Yes.  Again, I've never seen the suits.  I

12  didn't know we had them until yesterday when I went to see if we

13  could get money to get your client a suit at Goodwill.  I was

14  told we could not do that, but we have suits.  To the extent he

15  does not have a shirt and we're going to put him in a suit, I'll

16  see what steps we can take to get him a polo shirt so he'll look

17  dapper.

18          Mr. Mitchell, Ms. Ouimet, anything else we can do for

19  you?

20          ATTY. MITCHELL:  Your Honor, one question I was

21  wondering.  So I know in terms of I'm allowed to inquire about

22  his 2017 conviction.  Is it supposed to be kept from the jury

23  that he's currently in prison?

24          THE COURT:  Mr. Mitchell, I guess that was the point

25  of the conversation I just had with you and Attorney Green and

**Sloley v. VanBramer - 14-CV-339**

1   Attorney Ouimet.  He's clearly going to be in prison because

2   he's going to be -- there will be two correction officers seated

3   behind him at all times.  And so the jury will certainly know

4   he's incarcerated.

5          ATTY. MITCHELL:  I just thought of one issue.  I know

6   that when I questioned him at his deposition, I asked about if

7   he'd been strip-searched on other occasions.  He talked about,

8   you know, he gets strip-searched routinely in prison.  So is

9   that fair to ask him about?

10          THE COURT:  Attorney Green, your client is claiming

11   psychological damages from having been strip-searched.  Is there

12   some reason Mr. Mitchell shouldn't be allowed to ask if he's

13   been strip-searched on prior occasions?

14          ATTY. GREEN:  My understanding, and I have not sat in

15   that questioning recently -- or not recently, but thoroughly,

16   but the questioning was strip-searching and not visual body

17   cavity searching, which are, as the Second Circuit said,

18   somewhat different.  I think that given these are garden variety

19   damages, probative value is not outweighing the potential for

20   prejudice and eliciting that he has been in jail for many years,

21   but that is the basis for it.

22          THE COURT:  Mr. Mitchell, I'll permit you to ask him

23   if he's been strip-searched on prior occasions.  You can ask him

24   if he had an anal cavity search.  You're not to get into where

25   he was when it occurred, how many times it occurred.  You can

**Sloley v. VanBramer - 14-CV-339**

1   ask him if he was strip-searched on more than one occasion, if

2   he was subject to anal cavity search on more than one occasion.

3   Beyond that, we're not going to get into the underlying.  You're

4   not going to ask him on December 12, 2017, at Attica, were you

5   strip-searched.  We're not going to do that.

6          ATTY. MITCHELL:  Let's say he says no or says it's

7   once.

8          THE COURT:  You can -- if he says no, you can inquire

9   further.  You can ask him questions to get to it.  I assume he's

10  not going to do that.  We won't know until he gets here.

11         Let me go off the record a minute, Jacqueline.

12                    (Discussion off the record.)

13         ATTY. MITCHELL:  Your Honor, I just had one other

14  question.  In terms of the jury selection, do you use the strike

15  method or is it like Judge Hurd's method with the thing where

16  you pull out a letter?

17         THE COURT:  Ms. Burtt will fill the jury box, and then

18  we will have jury challenges for cause we'll take.  Otherwise,

19  we will alternate peremptory challenges.  You make a peremptory

20  challenge.  Then I'll turn to Attorney Green.  We'll do that

21  until we have eight jurors.  The eight jurors will deliberate,

22  and the verdict has to be unanimous.  We may have one alternate

23  juror.

24         I think this trial will take two or three days.  Maybe

25  I'm misreading this, but at most, there are six witnesses:  the

**Sloley v. VanBramer - 14-CV-339**

1   two VanBramers, the plaintiff, the witness in North Carolina,

2   and Mr. Mitchell and Attorney Ouimet indicated they may call two

3   other people from the state police.  So that's six witnesses.

4               ATTY. MITCHELL:  Thank you.

5               THE COURT:  You folks have a good week.  We'll see you

6   next Monday.  Thank you.

7                         (The matter adjourned at 12:27 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Sloley v. VanBramer - 14-CV-339**

1              CERTIFICATION OF OFFICIAL REPORTER

2

3

4         I, JACQUELINE STROFFOLINO, RPR, CRR, Official Court

5    Reporter, in and for the United States District Court for the

6    Northern District of New York, do hereby certify that pursuant

7    to Section 753, Title 28, United States Code, that the foregoing

8    is a true and correct transcript of the stenographically

9    reported proceedings held in the above-entitled matter and that

10   the transcript page format is in conformance with the

11   regulations of the Judicial Conference of the United States.

12

13         Dated this 26th day of April, 2023.

14

15         **/s/ JACQUELINE STROFFOLINO**

16         JACQUELINE STROFFOLINO, RPR, CRR

17         FEDERAL OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25