UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MAXMILLIAN SLOLEY,

                             Plaintiff,                 **14-cv-339 (PJE)**

       -v-

ERIC VANBRAMER,

                           Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTIONS *IN LIMINE***

Cohen&Green, P.L.L.C.
J. Remy Green
Regina J. Yu
1639 Centre St, Suite 216
Ridgewood, New York 11385
(929) 888-9480

Pro Bono Trial Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................................i

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I.    PLAINTIFF READOPTS HIS PRIOR MOTIONS *IN LIMINE*. ...................................... 1

II.   THE COURT SHOULD PRECLUDE DEFENDANT FROM DISPLAYING AS A
      DEMONSTRATIVE OR INTRODUCING AS AN EXHIBIT A POSTER OF
      POLICE DOG "RYDER"............................................................................................. 2

      a.    The Poster is Inadmissible Because It Does Not Meet the Bar for an Illustrative Aid
      Under FRE 107 and is Not Relevant Under FRE 401. .......................................... 2

      b.    Even if Found Relevant, This Evidence Is Still Impermissible Propensity Under FRE
      404 and Any Relevance is Substantially Outweighed by the Risk of Unfair Prejudice Under
      FRE 403. ................................................................................................................ 3

III.  THE COURT SHOULD REQUIRE DEFENSE COUNSEL TO USE LEADING
      QUESTIONS WHEN EXAMINING WITNESSES ON SUBJECTS THAT RISK
      VIOLATING *IN LIMINE* RULINGS.............................................................................. 6

IV.   THE COURT SHOULD PRECLUDE DEFENDANT FROM MAKING EMOTIONAL
      APPEALS ON BEHALF OF DEFENDANT DURING CLOSING ARGUMENT. ... 10

      a.    Defendant Should Be Precluded from Arguing in his Summation that the Jury Should
      Not Brand Defendant as Someone Who Violates Peoples' Constitutional Rights, While
      Plaintiff is Someone Who is Generally Manipulative and Dishonest................................. 10

      b.    Appeals to Sympathy for Defendant and His Future Career in Police Work Are
      Improper Under FRE 401 and 403, and are a Violation of the "Golden Rule."................... 13

      c.    In the Alternative, Should Defendant Intend to Make this Argument Again, the Court
      Should Preemptively Allow Plaintiff to Elicit Testimony About Indemnity, Police that are
      Not Heroes, and to appeal Similarly to the Jury's Emotions................................................ 14

V.    THE COURT SHOULD RECONSIDER ALLOWING REFERENCE TO OTHER
      CASES FILED BY PLAINTIFF. .................................................................................. 14

i

VI.   THE COURT SHOULD RESERVE CERTAIN ISSUES FOR THE CHARGE
      CONFERENCE HERE, AS IT DID IN THE PRIOR TRIAL. ................................... 17

CONCLUSION............................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dyson v Szarzynski*,
2014 US Dist LEXIS 174671 (ND Ill Dec. 18, 2014) ............................................................12

*Gyasi v. City of N.Y.*,
No. 05 Civ. 9453 (S.D.N.Y.) ...............................................................................................11

*United States ex rel. Hill v Deegan*,
268 F Supp 580 (SDNY 1967) ...............................................................................................9

*Holt v Lewsader*,
2021 US Dist LEXIS 171596 (CD Ill Apr. 19, 2021) .........................................................12

*Huddleston v. United States*,
485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) ........................................................4

*Hynes v. Coughlin*,
79 F.3d 285 (2d Cir. 1996) .....................................................................................................4

*Ivy v. Security Barge Lines, Inc.*,
585 F.2d 732 (5th Cir. 1978) ................................................................................................13

*Maiorino v. Scully*,
746 F Supp 331 (S.D.N.Y. 1990) .........................................................................................10

*Shepherd v Fischer*,
2018 US Dist LEXIS 106682 (SDNY June 26, 2018) .........................................................16

*Tomaino v O'Brien*,
315 F App'x 359 (2d Cir 2009) ............................................................................................17

*United States v. Gilan*,
967 F.2d 776 (2d Cir. 1992) ...................................................................................................4

*United States v. Matera*,
489 F.3d 115 (2d Cir. 2007) ...................................................................................................5

*United States v. Quinones*,
511 F.3d 289 (2d Cir. 2007) ...................................................................................................5

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002) .................................................................................................1

*United States v. Shellef*,
  507 F.3d 82 (2d Cir. 2007)......................................................................................5

*United States v. White*,
  692 F.3d 235 (2d Cir. 2012)....................................................................................5

*Wallace v Booth Mem. Hosp.*,
  163 AD2d 917 (4th Dept 1990) .............................................................................12

**Other Authorities**

Fed. R. Evid. 104(b)...................................................................................................4

Fed. R. Evid. 107 ...................................................................................................2, 3

Fed. R. Evid. 401 .........................................................................................2, 3, 5, 13

Fed. R. Evid. 402 ......................................................................................................4

Fed. R. Evid. 403 ............................................................................................. *passim*

Fed. R. Evid. 404 .............................................................................................3, 4, 10

Fed. R. Evid. 404(a)................................................................................................3, 4

Fed. R. Evid. 404(b)................................................................................................4, 5

Fed. R. Evid. 611 ......................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum of law in support of his motions *in limine* set forth in his notice of motion.

## ARGUMENT

### I.    PLAINTIFF READOPTS HIS PRIOR MOTIONS *IN LIMINE*.

As discussed at the most recent conference, Plaintiff understands this Court is adopting the Hon. Judge Hummel's rulings on the parties' motions *in limine* made during the final pretrial conference held on August 23, 2022 (ECF 146), in advance of the first trial in this matter — with the exception of any issue either side specifically asks the Court to reconsider.  When a court reconsiders its own ruling on an issue, "that decision should generally be adhered to by that court in subsequent stages in the same case,' unless 'cogent' and 'compelling' reasons militate otherwise," *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (citing *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991).

To the extent necessary, Plaintiff adopts his prior motion. Because the rulings on that motion addressed and resolved many of the same evidentiary issues likely to arise in the present trial, including questions about the admissibility of certain pieces of character evidence and references to Plaintiff's criminal history and alleged prior conduct that could cause unfair prejudice, adopting them would promote consistency and efficiency in the presentation of evidence to the jury.  Further, Judge Hummel's rulings were made after full briefing and oral argument by the parties and were designed to ensure that the trial focused on the narrow constitutional question presented.  Adopting the prior rulings will avoid unnecessary re-litigation of matters that have already been considered and decided.  Since the factual and legal issues in

1

the present trial remain the same, and without any cogent or compelling reasons to change course, this Court may appropriately rely on those prior determinations.

## II.     THE COURT SHOULD PRECLUDE DEFENDANT FROM DISPLAYING AS A DEMONSTRATIVE OR INTRODUCING AS AN EXHIBIT A POSTER OF POLICE DOG "RYDER".

During the last trial, Defendant displayed a massive poster with a picture of the police dog, Ryder, who he says alerted *outside* the car.  This time around, Defendant should be precluded from displaying to the jury during trial as a demonstrative or introducing into evidence a poster depicting the police dog Ryder under Fed. R. Evid. 107, 401, 404(a), and 403.  The poster has no probative value with respect to any issue the jury is tasked with deciding in this case; further, it serves only to appeal to the jurors' emotions and sympathies by emphasizing improper character bolstering.  Accordingly, this evidence should be excluded from trial.

### a.    The Poster is Inadmissible Because It Does Not Meet the Bar for an Illustrative Aid Under FRE 107 and is Not Relevant Under FRE 401.

Rule 107 of the Federal Rules of Evidence provides, in relevant part, as follows:

**(a) Permitted Uses.** The court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweigh by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time.

Pursuant to this Rule, illustrative aids typically may be permitted when they assist the jury in understanding complex testimony or technical evidence; for example, using diagrams, charts, or similar visual aids where they help clarify scientific processes, locations, or other matters that may otherwise be difficult for jurors to understand through testimony alone.  Here, however, the poster depicting Ryder does not serve any such explanatory function — it is not *illustrating* anything.  Because the poster will neither assist the jury in resolving any disputed issue of fact nor help them understand the evidence or arguments, but would instead risk

2

diverting their attention from the actual issues before them, it does not meet the bar for permitted uses under FRE 107 or for relevance under FRE 401.

With respect to FRE 401, evidence meets the relevance threshold if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. The central issue for the jury in this case is whether Defendant had a specific, articulable factual basis to believe Plaintiff was concealing drugs inside his body cavity when Defendant conducted a visual body cavity search. Ryder's physical appearance has no bearing on that question — and a massive poster about the dog has even less to say on that question. The fact that there was a police dog involved in this incident is undisputed, and Defendant may still present testimony regarding the dog's alleged alert to the car Plaintiff was driving through witness testimony (provided that testimony is otherwise admissible). The poster, though, does not make the existence, veracity, or reliability of any alleged alert more or less likely.

    **b.  Even if Found Relevant, This Evidence Is Still Impermissible Propensity Under FRE 404 and Any Relevance is Substantially Outweighed by the Risk of Unfair Prejudice Under FRE 403.**

Even if assuming, *arguendo*, the Court does find that the poster of Ryder is marginally relevant to the facts of this case, the Court should exclude this evidence under Fed. R. Evid. 404(a) because it functions as a form of improper bolstering.

Rule 404 of the Federal Rules of Evidence provides, in relevant part, as follows:

(a) **Character Evidence.**

    1) Prohibited Uses. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

The poster improperly serves to bolster the credibility of the dog – and, by extension, Defendant, the dog's handler – because it invites the jury to view the case through a lens that implicitly frames Defendant and his K-9 partner in a heroic, sympathetic, or trustworthy light, simply because of the positive emotions the average juror may associate with animals working as first responders.  FRE 404(a) is a safeguard that prohibits parties from introducing evidence solely to enhance a witness's credibility or character for purposes unrelated to the factual issues in dispute, which is precisely the risk introducing this poster carries.  The exhibit serves no clear evidentiary purpose other than to reinforce the image of Defendant as a member of an admirable K-9 unit engaged in law enforcement work deserving of deference, which constitutes precisely the type of propensity reasoning prohibited by Rule 404.

Fed. R. Evid. 404(b) does permit evidence of "other crimes, wrongs, or acts...' for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Hynes v. Coughlin*, 79 F.3d 285, 290 (2d Cir. 1996).  The Supreme Court addressed these exceptions by outlining the test for the admissibility of other acts as evidence under Fed. R. Evid. 404(b) in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).  For evidence to be admitted, four prongs must be satisfied: "1) the evidence must be introduced for a proper purpose, such as proof of knowledge or identity; 2) the offered evidence must be relevant to an issue in the case pursuant to Rule 402, as enforced through Rule 104(b); 3) the evidence must satisfy the probative-prejudice balancing test of Rule 403; and 4) if the evidence of other acts is admitted, the district court must, if requested, provide a limiting instruction for the jury." *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992).  Here, Defendant can offer no such exception demonstrating a proper purpose.

4

Even if the Court was persuaded that the poster was relevant pursuant to Fed. R. Evid. 401 and fell under an exception permitted by Fed. R. Evid. 404(b), the Court still retains the discretion to exclude the evidence due to risk of undue prejudice under the Fed. R. Evid. 403 balancing test. *United States v. Quinones*, 511 F.3d 289, 308-11 (2d Cir. 2007).  Pursuant to Rule 403, to be admissible, evidence must be both (1) relevant and (2) not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012); see also *United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007) ("The district court is commanded by Rule 403 to weigh the probative value against the unfair prejudice.").  An offer of evidence appropriately made under an exception allowed by 404(b) cannot escape the reach of FRE 403. *See, United States v. Shellef*, 507 F.3d 82, 101 (2d Cir. 2007).   Thus, FRE 403 allows the Court to exclude this type of demonstrative exhibit, designed primarily to evoke an emotional reaction, rather than for the permitted use of assisting jurors in evaluating the constitutional issue the jury must decide here.  A large and visually striking poster of a police dog risks transforming this image into a symbolic or emotional focal point of the trial.  Allowing such an exhibit would therefore create a substantial risk that the jury's evaluation of the evidence will be influenced by emotional considerations rather than by logic, common sense, and the factual record.  Since any probative value this evidence holds would be substantially outweighed by its prejudicial effect on the jury, Defendant should be prohibited from displaying and offering this evidence.

5

III.   **THE COURT SHOULD REQUIRE DEFENSE COUNSEL TO USE LEADING QUESTIONS WHEN EXAMINING WITNESSES ON SUBJECTS THAT RISK VIOLATING *IN LIMINE* RULINGS.**

During the last trial, Defendant violated the Court's *in limine* rulings. As illustrated in several examples:

Q All right. And on the far right section there, is there a section called suspect drugs/alcohol history?

MX. GREEN: Objection.

THE COURT: Objection sustained, we're not going to go into that, Mr. Mitchell, I've told you that repeatedly.

Day 1 Tr. at 184:7-14.

Q And was he charged with various offenses?

A Yes, he was, sir.

Q What were they?
A He was charged with two counts of -- He was charged with two counts of –

MX. GREEN: Objection.

THE COURT: Mr. Mitchell, my understanding is we addressed this matter during the motions in limine.

MR. MITCHELL: Your Honor, could we approach.

THE COURT: Sure.

[…]

MR. MITCHELL: I know that your Honor ruled that we couldn't get in evidence that he pleaded guilty to harassment, however, the *Hartline* case explicitly says that the crime charged, the characteristics of the arrestee and circumstances of the arrest are the relevant factors.

THE COURT: Harassment's not a crime, is it, Counselor?

MR. MITCHELL: What?

THE COURT: Is harassment a crime?

6

MR. MITCHELL: No, but he was charged with the criminal mischief and criminal possession.

THE COURT: All of which were dismissed, isn't that true?

MR. MITCHELL: No -- well, yes, as part of a plea bargain.

THE COURT: The answer to my question is they were dismissed.

MR. MITCHELL: Right.

THE COURT: I'm staying with my ruling, I'll note your objection for the record, move on.

Day 1 Tr. at 230:4-25, 231:1-6.  And that was basically identical to what happened at the final pretrial conference:

THE COURT: Mr. Mitchell, how is the harassment plea admissible?

ATTY. MITCHELL: So Your Honor, as I said, the *Hartline* case says that all the crimes that were charged about the incident –

THE COURT: Harassment is not a crime though, Mr. Mitchell, is it?

ATTY. MITCHELL: No, Your Honor. It's a violation. However –

THE COURT: Do you have any authority in which to indicate that a violation could be admitted for purposes of impeachment?

ATTY. MITCHELL: I think that it would come in also under the bad act situation. And we've also got the problem that the victim who he harassed is now coming in to testify on their credibility issues. I think it's relevant for the jury to know that he admitted to harassing this person. That would also possibly be an explanation about why she's changing her story.

THE COURT: I'm not going to allow the harassment conviction. I find that the prejudice far outweighs any probative value. I would further note that it is not a crime. Harassment is a violation and not a crime in New York State. Therefore, I'm not going to permit that.

Final Pretrial Conf. Tr. at 22-23.

That is, as shown above, even with the Court's direction in hand, counsel for Defendant asked forbidden questions about criminal history, apparently because he decided he did not have

7

to follow the Court's reading of *Hartline* if he disagreed with it.[1] That calls for a more proactive approach.

To the extent the Court is not inclined to simply exclude everything, given the repeated violations last time, Rule 611 of the Federal Rules of Evidence provides, in relevant part, as follows:

> **(a) Control by the Court; Purposes.** The Court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
>
> > (1) make those procedures effective for determining the truth;
> > (2) avoid wasting time; and
> > (3) protect witnesses from harassment or undue embarrassment.

The Court should exercise its broad authority to control the mode of witness examination under Fed. R. Evid. 611 to require defense counsel to use pre-cleared leading questions when examining witnesses on the topics of alleged prior criminal conduct, alleged prior drug use, dismissed criminal charges, and other improper character evidence, which implicate matters excluded by the Court's rulings on these and the prior motions *in limine*. This procedural safeguard is necessary to ensure that the Court's evidentiary rulings are respected and to prevent the jury from hearing inadmissible and prejudicial testimony before objections can be raised and ruled on.

As far as criminal history, the bell cannot be unrung: Once the jury hears any of the answers, or if the wording of a question suggests or presupposes the answer, there is nothing Plaintiff can do to cure the prejudice — and he will have already forfeited his opportunity to (as the technique is sometimes called) "take the sting out of any possible cross-examination." *Cf.*

---

[1] Defendant raised his reading of *Hartline* on the motion (ECF No. 116 at 2). The Court reviewed the argument and disagreed. To ask the questions anyway was improper — and extraordinarily prejudicial.

*United States ex rel. Hill v Deegan*, 268 F Supp 580, 587 (SDNY 1967) (deciding other issues; Plaintiff cites the case simply because it references the technique).

Here, allowing defense counsel to ask open-ended narrative questions through these portions of testimony may create a prejudicial impact that even a limiting instruction cannot cure. Moreover, given the history of violating the Court's Orders in front of the jury, more careful monitoring is necessary this time. In addition, clarifying the permissible scope of testimony before it is presented to the jury and requiring leading questions in these areas of questioning will reduce the need for repeated interruptions that reduce the efficiency of trial, i.e., objections and sidebar conferences.

Below are non-exhaustive examples of specific, explicitly prohibited portions of testimony that were stated during the prior trial, in violation or near-violation of the *in limine* rulings, pursuant to Fed. R. Evid. 401, 403, 404, and 608:

- Questions about the "suspect drugs/alcohol history" box on exhibit D8 (Day 1 Tr. 184:7-14).

- Questions about any alleged unrelated drug use or activity (Day 1 Tr. 201:5-25, 202:1-24).

- Questions about criminal charges that were dismissed (Day 1 Tr. 230:4-25, 231:1-6).

- Questions about any alleged knowledge of Mr. Sloley's "history" or "reputation", and any references to him as one of "these people" or a "drug dealer" or the like: (Day 1 Tr. 160:11-25, Day 2 Tr. 294:1-25, 295:1-23).

Because it seems the *in limine* rulings were not sufficient at the prior trial to ensure defense counsel and defense witnesses did not veer off into impermissible territory, the Court should require defense counsel to instead ask leading questions — cleared in advance — through these portions of testimony, to better protect against unfair prejudice.

9

IV.    **THE COURT SHOULD PRECLUDE DEFENDANT FROM MAKING PREJUDICIAL EMOTIONAL APPEALS ON BEHALF OF DEFENDANT DURING CLOSING ARGUMENT.**

a.    **Defendant Should Be Precluded from Arguing in his Summation that the Jury Should Not Brand Defendant as Someone Who Violates Peoples' Constitutional Rights, While Plaintiff is Someone Who is Generally Manipulative and Dishonest.**

Although counsel is given wide latitude to comment on pertinent factual issues which the jury must decide, expressions of personal opinion and inflammatory or irrelevant comments regarding the veracity of witnesses are improper during summation. *Maiorino v. Scully*, 746 F Supp 331, 337 (S.D.N.Y. 1990) (citing *People v. Butts*, 139 A.D.2d 660, 527 N.Y.S.2d 299 (2d Dep't 1988) (defense counsel's summation was improper where he characterized the state's witnesses as liars).  Such an argument is improper under Federal Rule of Evidence 404 and will likely unfairly prejudice the jury under FRE 403. Arguments of this nature are of particular concern here because Defendant previously used similar impermissible arguments during the first trial of this matter.  Examples of particular statements that violated these principles in the first trial are:

- "Eric VanBramer is going to be branded as somebody who violated the Constitution of the United States. And just think about what a serious charge that is to make against any American, but especially against Eric VanBramer, who served approximately 15 years in public service in a job that is at times dangerous, difficult, and even heartbreaking, as you heard." (Day 2 Tr. 380:2-8).

- "So I'd like you to ask yourself, is the plaintiff Maxmillian Sloley someone who would tell falsehoods and smear others to benefit himself? Is he a manipulative person who tries to work the system? Would he make up false self-serving allegations in an attempt to persuade you, the jury, to put money into his pocket? I suggest that's exactly what he's doing in this case." (Day 2 Tr. 380:13-19).

- "Eric VanBramer. He's the one who's putting his life on the line to do that job. And I wonder how many of us would like to do that job. That's very difficult. And unfortunately sometimes your reward for all that is that you get hauled into court and accused of violating the Constitution of the United States." (Day 2 Tr.

388:2-7).

Absent even more clear and strict guardrails than were put in place from the first trial's *in limine* rulings, there is a substantial (and incurable, should the jury be allowed to hear these arguments) risk that Defendant will again attempt to present arguments that encourage the jury to decide the case based on sympathy, general character judgments, and/or emotional appeals, rather than on the evidence and the law.

Moreover, the particular claim that a person might be "branded as somebody who violated the Constitution of the United States" is designed by its very nature to mislead the jury. It implies that there is **some** consequence (beyond money) to a finding for Plaintiff. But Defendant has offered no evidence whatsoever that there is such a consequence. For example, has the State ever fired — or even modestly disciplined — even a single officer for losing a civil trial? Defendant's claim that a Plaintiff's burden would be a "brand" strongly suggests to the jury the answer is not just "yes," but that the "brand" it is automatic. Yet, as far as counsel is aware, that has never happened. Indeed, this is very similar to the issue Judge Scheindlin discussed in *Gyasi* with regard to indemnity — and the reasoning the Court seemed to adopt in precluding claims that Defendant has limited resources:

> I am not going to mislead [the jury], thinking that [a punitive damages award] comes out of the poor officer's pocket and have the poor officer say, I have a wife and three kids and a mortgage, I can barely afford the payments, and I earn only 38,000, whatever. I am not going to have all that. If in fact the reality is that in the last 100 punitive damages awards the city has always indemnified, I am not going to have that testimony at all about his wife, kids and poor salary, because it's all irrelevant.

*Gyasi v. City of N.Y.*, No. 05 Civ. 9453 (S.D.N.Y.), on the docket at ECF No. 104-2. And on that front, it **looked** like the parties had agreed this kind of argument would not take place:

> ATTY. GREEN: One thing I want to make sure is I think it's not just evidence about who would pay. It's arguments that come from: You're coming after this poor individual officer. Even if you don't state he's going to pay, you're implying he's going to pay.

11

> THE COURT: There would no proof put in as to who will or will not pay any award which plaintiff may receive with respect to this matter. That brings us to [the next issue].

Final Pretrial Conf. Tr. at 39.  But apparently the parties were not on the same page — so Plaintiff raises this now.

"[B]rand[ing]" arguments like the one Defendant mounted last time are improper.  For example, though not finding it infected the entire trial, the Fourth Department noted "counsel improperly appealed to the jury's sympathy in his comments on summation that an unfavorable verdict would brand defendant as a killer and destroy his life." *Wallace v Booth Mem. Hosp.*, 163 AD2d 917 (4th Dept 1990). Here, of course, it is possible to prevent the "improper[]" appeal before it happens (again).  In a civil case, there is no "brand" of the kind that comes from a criminal case.  These arguments are, essentially, the mirror of forbidden "send a message" arguments.

Similarly, appeals to the jury on the general theme of "police have a hard job" has no probative value, and is purely prejudicial.  "Any general arguments or mentions of police officers risking their lives or their heroism are irrelevant and overly prejudicial to merit admission." *Holt v Lewsader*, 2021 US Dist LEXIS 171596, at *39 (CD Ill Apr. 19, 2021); *accord Dyson v Szarzynski*, 2014 US Dist LEXIS 174671, at *4 (ND Ill Dec. 18, 2014).  *But see, e.g.,* Day 2 Tr. 388:2-7 ("Eric VanBramer. He's the one who's putting his life on the line to do that job. And I wonder how many of us would like to do that job.").  And unlike *Holt*, where the Court had to speculate whether a party would make arguments that violate the "Golden Rule," here, Defendant did ***just that*** in the prior trial.

Accordingly, this form of argument should be explicitly excluded from trial.  And because much of this was during closing last time, Plaintiff's ability to blunt the prejudice was

12

very limited.  Now, the Court has an opportunity to set ground rules — and if there is a violation of a Court Order, it is certainly easier to raise during closing than the difficult question of whether to object during a closing.

### b. Appeals to Sympathy for Defendant and His Future Career in Police Work Are Improper Under FRE 401 and 403, and are a Violation of the "Golden Rule."

A "Golden Rule" appeal (which are typically seen in situations where the jury is asked to put itself in the plaintiff's position, however it should apply with equal force here) "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978), *rev. on other grounds*, 606 F.2d 524 (5th Cir. 1979) (en banc), *cert. denied*, 446 U.S. 956, 64 L. Ed. 2d 815, 100 S. Ct. 2927, *reh. denied*, 448 U.S. 912, 101 S. Ct. 27, 65 L. Ed. 2d 1173, *on remand*, 89 F.R.D. 322 (N.D. Miss. 1980). Arguments that ask jurors to decide a case based on personal feelings of sympathy are inconsistent with the jurors' role to remain neutral in evaluating the evidence and law presented, and instead invite bias into the decision-making process.  Defendant should be precluded from arguing that the jury should feel sympathy or empathy for him solely because of his role as a police officer.  Along the same lines, Defendant should not be allowed to argue that a ruling in Plaintiff's favor may have some vague negative impact on Defendant's career as a police officer. The jury's job is not to evaluate the general worthiness of police officers or to determine whether law enforcement officers perform valuable public service.  Rather, the jury must determine whether Defendant's conduct on the night in question complied with the Fourth Amendment, or violated Plaintiff's constitutionally protected rights.  Arguments portraying Defendant as a heroic or sympathetic figure are therefore irrelevant under Fed. R. Evid. 401 and unfairly prejudicial under Rule 403. For the reasons discussed in subpoint (a) above, limiting these arguments by

13

curtailing their use from the start will ensure Defendant does not use this as an opportunity to frame a civil rights case as a referendum on the value of police work because doing so will (as Plaintiff believes happened in the first trial) distract the jury from the specific legal question it must resolve.

      **c.   In the Alternative, Should Defendant Intend to Make this Argument Again, the Court Should Preemptively Allow Plaintiff to Elicit Testimony About Indemnity, Police that are Not Heroes, and to appeal Similarly to the Jury's Emotions.**

Last, should Defendant make clear he intends to make similar arguments — and the Court otherwise denies this motion — Plaintiff should be permitted to examine an appropriate State witness about indemnity, and the ***actual*** effects of what "branding" happens when an officer loses a civil case. He should be able to put on evidence, generally, that not all police are heroes. And he should be able to make his own "send a message" arguments, if Defendant gets to argue about the message — as a "brand" — a verdict would send.

To be clear, Plaintiff would prefer if both sides follow the conventional rules. But Plaintiff should not have to make his arguments following those rules, while Defendant can freely inflame prejudice against Plaintiff.

**V.     THE COURT SHOULD RECONSIDER ALLOWING REFERENCE TO OTHER CASES FILED BY PLAINTIFF.**

Plaintiff also seeks to have the Court revisit whether it will allow Defendant to elicit basic information about other cases Plaintiff has filed. On the prior *in limine* motion, the Court described its ruling — in an exchange with counsel for Defendant — as follows:

> THE COURT: Mr. Mitchell, how would you propose to use this? What would be your line of questions?
>
> ATTY. MITCHELL: Well, Your Honor, I know that for example, in the recent trial I had with Judge Suddaby, he didn't let me use the word lawsuit. He thought that was a little bit shaky. So he said I could question, did you allege that, for example, that the Hudson

14

police caused you these injuries in this year, or did you have a claim that Philly caused these injuries to you in this year? So I want to use it that way.

THE COURT: Attorney Green, what's your response?

ATTY. GREEN: I think if that's what Mr. Mitchell wants to do with it, then the appropriate thing would be to voir dire out of the presence of the jury and let Mr. Sloley clarify whether those are the same injuries. If he says they're not the same injury, then obviously that's the end of it. If he says they are the same injuries, I think we redo that in front of the jury, and Mr. Mitchell can follow up.

But I think the problem remains that these are not the same injuries, and we're talking about complaints here and not even a verified complaint, as I understand it. So it's not like -- we're talking about stock language for emotional damages that, you know, he probably copied from a prison library, or you know. I don't think that the reason that the claims are identical is because they're -- you know, it's stock language. It's not -- these are not specific injuries that go, actually go to causation. I don't see it.

THE COURT: With respect to the prior lawsuits, with respect to the two lawsuits in which he alleges he sustained prior emotional damages, both of which I believe involved DOCCS, I'll let Mr. Mitchell inquire whether or not he had filed a claim, and in the course of that claim, did he allege he suffered emotional damages, and Mr. Mitchell can inquire further. You're not to get into the underlying acts, Mr. Mitchell. We're not going to try those two lawsuits in the course of this lawsuit.

With respect to the third lawsuit in which he sued one of his attorneys for malpractice, I think that has no probative value, and you're not to mention that lawsuit. Do you understand that, Mr. Mitchell?

ATTY. MITCHELL: Thank you, Your Honor.

Final Pretrial Conf. Tr. at 23-28. But as noted above, the way Mr. Mitchell's "use[d] this" was not limited to "did you have a claim that Philly caused *these* injuries to you" (emphasis added). Instead, he turned around and used the mere existence of other cases to invite the jury to consider whether Plaintiff is "a manipulative person who tries to work the system" and whether he would "make up false self-serving allegations in an attempt to persuade you, the jury, to put money into his pocket." Day 2 Tr. 380:13-19. Emphasizing the point, he asked the jury, "did it seem to you like he's somebody who's going through the motions just saying what he thinks he's supposed to say to get money in a lawsuit," before citing *exactly* these cases. *Id.* at 382:2-20. And he did

15

that despite never bothering to *ask* Plaintiff whether the garden variety emotional injuries alleged in this case were the same as the garden variety injuries alleged in the two other cases.  Day 1 Tr. 197:6-199:7.  Of course, Plaintiff answered that question clearly when asked:

> Q Okay. Do you recall when Mr. Mitchell was asking you about other lawsuits and your allegations in those lawsuits?
>
> A Yes.
>
> Q Do those injuries that you alleged in those other lawsuits have anything to do with this case?
>
> A No.

*Id.* at 211:10-15.

Now, with the benefit of hindsight, it is clear Defendant was not asking about these cases merely to sort out whether the injuries were overlapping.  Rather, he was laying the groundwork for an improper and inflammatory argument that filing three lawsuits over a number of years makes someone "a manipulative person who tries to work the system."  Day 2 Tr. 380:13-19.

Moreover, to fight the argument Defendant *actually* made using the prior suits — rather than the use he told the Court he would make of them — Plaintiff would need to do exactly what the Court did not want to do: "try those two lawsuits in the course of this lawsuit."  Final Pretrial Conf. Tr. at 27:23-24.  The only way for Plaintiff to rebut the claim that these suits make him "a manipulative person who tries to work the system" (Day 2 Tr. 380:13-19) is *precisely* to "get into the underlying acts" and allegations.  Final Pretrial Conf. Tr. at 27:20-22.

Courts have been clear that this sort of use of prior lawsuits is improper.  Using prior suits "merely" to demonstrate a plaintiff's "propensity for litigation" is improper.  *Shepherd v Fischer*, 2018 US Dist LEXIS 106682, at *24 (SDNY June 26, 2018).  And given that Defendant made *exactly* that propensity argument in closing, it should be clear now that "the risk of unfair

16

prejudice was too great in the context of this case." *Id.* Courts have declined to reverse when this sort of argument is implicit but there are other uses. *See, e.g., Tomaino v O'Brien*, 315 F App'x 359, 361 (2d Cir 2009) ("The testimony regarding Tomaino's previous litigation was not admitted to show that Tomaino had a character trait of filing law suits, and that the instant suit was in conformity with that trait. The jury might, however, have reasonably inferred from the five previous occasions on which he had made strikingly similar claims, that his testimony in support of a sixth such suit was not credible."). But here, Defendant made the improper use plain and explicit: "Is he a manipulative person who tries to work the system?" Day 2 Tr. 380:13-19.

The content of the allegations of harm is merely the recitation — as it is in some form in virtually every single civil rights complaint — that civil rights violations caused him to experience "great mental anguish, emotional distress and public humiliation, and was further caused to experience fear of physical harm and violence" (in one of the complaints) or "fear, paranoia, anxiety, humiliation, and fear and loss of trust for law enforcement" in this one. Day 1 Tr. at 197-199.[2] Given that, combined with the improper use Defendant made, the Court should avoid issues this time around by avoiding the issue entirely. Otherwise, Plaintiff will need to "get into the underlying acts" and allegations in these suits specifically to preempt the claim that Plaintiff is a frivolous, serial litigant. Final Pretrial Conf. Tr. at 27:20-22.

VI.    **THE COURT SHOULD RESERVE CERTAIN ISSUES FOR THE CHARGE CONFERENCE HERE, AS IT DID IN THE PRIOR TRIAL.**

During the first trial, the Court reserved several issues relating to jury instructions and legal standards for resolution during the charge conference. The Court should again reserve for

---

[2] In one of the cases, Plaintiff alleged more specific symptoms — "lack of sleep which also worsened blood pressure" — which were not in the complaint here. *Id.*

17

the charge conference the same issues that were reserved for the charge conference during the prior trial of this matter, including but not limited to the precise wording of jury instructions given relating to the elements of Plaintiff's claim and any issues concerning qualified immunity that will depend on how the evidentiary record is developed.  This approach will allow the Court to evaluate the legal questions while considering the complete evidentiary record actually presented at trial, as opposed to allowing the parties to present arguments based on speculative assumptions about what the trial record will ultimately contain.  Additionally, this approach promotes clarity, efficiency, and fairness in the presentation of evidence to the jury, and at the same time will reduce the risk of presenting evidence that is ultimately irrelevant.  Therefore, the Court should defer decisions on certain jury instruction issues until after the close of the evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motions *in limine* in their entirety, and for such other relief as the Court deems just and proper.

Date:   March 18, 2026
        Ridgewood, NY

Respectfully submitted,

COHEN&GREEN, P.L.L.C.

_____/s/_____
J. Remy Green
Regina J. Yu
1639 Centre St Suite 216
Ridgewood, New York 11385
t: 929-888-9480
e: remy@femmelaw.com

*Pro Bono Trial Attorneys for Plaintiff*

18