UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MAXMILLIAN SLOLEY,

                    Plaintiff,                    **14-cv-339 (PJE)**

        -v-

ERIC VANBRAMER,

                    Defendant.

# PLAINTIFF'S TRIAL BRIEF

COHEN&GREEN, P.L.L.C.
J. Remy Green
Regina J. Yu
1639 Centre St, Suite 216
Ridgewood, New York 11385
(929) 888-9480

Pro Bono Trial Attorneys for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES ......................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................ 5

    I.    Defendant's Visual Cavity Search of Plaintiff Lacked Reasonable, Articulable Suspicion, Violating the Fourth Amendment. ............................................................................ 5

    II.    Plaintiff is Entitled to Compensatory and Punitive Damages........................................... 6

        a.    Compensatory damages. ....................................................................................... 6

        b.    Punitive damages. ................................................................................................. 7

CONCLUSION........................................................................................................................ 8

## PRELIMINARY STATEMENT

Like the last time, this trial should turn on a very narrow factual question: What, if any, suspicion drove Officer Eric VanBramer[1] to conduct a visual cavity search on Plaintiff Maximillian Sloley?

And like last time, Defendant will likely spend this trial trying to establish that Mr. Sloley is a bad person:

> "So I'd like you to ask yourself, is the plaintiff Maxmillian Sloley someone who would tell falsehoods and smear others to benefit himself? Is he a manipulative person who tries to work the system? Would he make up false self-serving allegations in an attempt to persuade you, the jury, to put money into his pocket? I suggest that's exactly what he's doing in this case."

Day 2 Tr. 380:13-19. Similarly, he will try to evade basic golden rule principles, asking the jury to consider that police have a hard job — and suggest falsely that there are some consequences to a verdict beyond VanBramer being indemnified by the State.

> "Eric VanBramer is going to be branded as somebody who violated the Constitution of the United States. And just think about what a serious charge that is to make against any American, but especially against Eric VanBramer, who served approximately 15 years in public service in a job that is at times dangerous, difficult, and even heartbreaking, as you heard."

> "Eric VanBramer. He's the one who's putting his life on the line to do that job. And I wonder how many of us would like to do that job. That's very difficult. And unfortunately sometimes your reward for all that is that you get hauled into court and accused of violating the Constitution of the United States." (Day 2 Tr.

Day 2 Tr. 380:2-8; 388:2-7. And he will likely spend the trial arguing, contra the standard, that Defendant VanBramer had suspicion to find drugs *on* Mr. Sloley's body, notwithstanding two Second Circuit decisions otherwise at this point.

---

[1] There are two relevant Officer VanBramers: Bryan and Eric. As the only defendant is Eric VanBramer, references to "VanBramer" are to Eric, unless specifically noted.

1

But that has nothing to do with the questions at issue in this trial. As the Second Circuit held *twice* now:, "it makes little sense in this context to draw Fourth Amendment lines that rest on the felony—misdemeanor distinction. Whether a person is arrested for a felony or a misdemeanor says nothing about the likelihood that that person is secreting contraband on or in his or her person." *Sloley v. Vanbramer*, 945 F.3d 30, 38-39 (2d Cir. 2019) ("*Sloley I*"). That is:

> In *Sloley I*, we held that a visual body cavity search incident to arrest may only be conducted when supported by "a reasonable suspicion to believe the arrestee secreted evidence *inside* a body cavity." *Sloley I*, 945 F.3d at 38 (emphasis added). However, the District Court instructed the jury that it could return a defense verdict if it concluded that VanBramer had "a reasonable suspicion that Sloley was hiding contraband in or on his person." This disjunctive instruction permitted a jury to find in VanBramer's favor if it concluded that he had reasonable suspicion to believe that Sloley had drugs "on his person," rather than in it. That less exacting standard of reasonable suspicion was a misstatement of the law as established by *Sloley I*.

*Sloley v Vanbramer*, 2025 U.S. App. LEXIS 24965, at *3-4 (2d Cir Sep. 26, 2025) (record citations omitted; alterations adopted) ("*Sloley II*").

## STATEMENT OF FACTS

In the early hours of April 1, 2013, Greene County Sheriffs arrested Plaintiff Maximillian Sloley while he was driving east on State Route 23 in Catskill, New York. He had just left his then girlfriend Daphne Rollins's home following an altercation in which the windshields of both Ms. Rollins's and Mr. Sloley's cars were smashed and Ms. Rollins's phone was broken. Ms. Rollins called the police. Bryan VanBramer, a Trooper with the State Police, was dispatched to the scene. While Bryan VanBramer claims otherwise, Ms. Rollins will testify that she never mentioned anything about drugs. See Dkt. No. 46 at 1 ("[T]he state police blatantly lied and said that I told them that Mr. Sloley possessed, or possibly possessed, or was in any way connected to drug activity. I never said any of these things or anything remotely close to those things on that night of our incident that took place on April 1st, 2013.").

2

While Bryan VanBramer was interviewing Ms. Rollins, deputies from the Greene County Sheriff's Office located and began questioning Mr. Sloley. A deputy asked Mr. Slolely whether he had damaged Ms. Rollins's car. The deputy then handcuffed Mr. Sloley, and brought him to Ms. Rollins's house. At Ms. Rollins's house, Mr. Sloley met Bryan VanBramer, who then proceeded to question him about the altercation. At no point did Bryan VanBramer or any of the Greene County officers ask Mr. Sloley whether he currently possessed or had recently used drugs.

While Mr. Sloley was being questioned, Bryan VanBramer asked Eric VanBramer, his brother and a State Trooper in the Canine Unit, to search Mr. Sloley's car for drugs. VanBramer proceeded to Mr. Sloley's car, along with a canine certified in odor recognition of narcotics. VanBramer claims the dog alerted at each side of the car, the hood, and the center console, but no drugs were recovered at those parts of the vehicle. Instead, VanBramer claims that — while he personally was searching — he found a "loose, chunky substance" in the driver's seat crease, a location where the dog had not alerted. He speculated that the substance must have been spilled while Mr. Sloley hurriedly tried to hide contraband. VanBramer claims he performed a field test on that substance that tested positive for cocaine.

That supposed field test raises serious questions: it has never been produced, nor has any photograph or other definitive record of what VanBramer claims to have seized. Instead, Defendants admit that they destroyed that evidence in December of 2013. And indeed, when asked to produce the substance at the station, VanBramer admitted he could not produce it because it was "too small to see." VanBramer then returned to the police station with his dog. He spoke with other officers, who informed him that Mr. Sloley had a criminal history. At some

3

point during the night, VanBramer walked past Mr. Sloley with his drug dog. The dog, which walked next to Mr. Sloley, did not alert.

Eric VanBramer then confronted Mr. Sloley in the small office where he was handcuffed and accused him of hiding drugs inside his rectum. He then told Mr. Sloley that the small amount of drugs he had found was "enough for us to strip-search you." Mr. Sloley responded it was impossible that drugs were in the car. He said it was impossible because only he and his mother had used the car, and neither of them used cocaine. VanBramer then conducted a visual body cavity search on Mr. Sloley. Eric VanBramer and Bryan VanBramer both stated that they believed "it was reasonable to suspect that Mr. Sloley was concealing drugs on his person at the time he was being processed" based on a threadbare set of circumstances described in their affidavits.[2] VanBramer removed Mr. Sloley's handcuffs and took him to a private room. He ordered Mr. Sloley to strip. As Mr. Sloley stripped, Eric VanBramer searched each of Mr. Sloley's clothes and found no evidence of drugs.

At the first trial, VanBramer gave the testimony ***on direct*** that he searched Mr. Sloley because "***[t]hese people*** are crafty, if they're doing it for a while, they know how to evade the police. … These are the people that you're dealing with, they just -- they're not honest people" Day 2 Tr. 295:13:23.  That is, he directly evoked racial animus.[3]

VanBramer then ordered Mr. Sloley to lift his genitals, turn around, bend over, and spread his buttocks. VanBramer peered into Mr. Sloley's spread buttocks but did not see any drugs. Mr. Sloley dressed, and Eric VanBramer walked him back to the bench in the prior room, where Mr. Sloley was re-cuffed. Bryan VanBramer then informed Mr. Sloley that he would be

---

[2] *See also, e.g., Sloley v. Vanbramer*, 945 F.3d 30, 46 (2d Cir. 2019) ("once the disputed fact that Eric recovered crack cocaine from Sloley's car is disregarded, the evidence available to Eric supports no more than a mere hunch that Sloley was secreting drugs inside his anal cavity.").
[3] To the extent he did not, he impermissibly labeled Mr. Sloley as a drug dealer despite the Court's rulings.

charged with second-degree harassment, two counts of third-degree criminal mischief, and seventh-degree drug possession. The drug possession charges were ultimately dropped — and Mr. Sloley pled guilty to a harassment charge as a violation (that is, *not* a crime).

## ARGUMENT

### I.    Defendant's Visual Cavity Search of Plaintiff Lacked Reasonable, Articulable Suspicion, Violating the Fourth Amendment.

Under 42 U.S.C. § 1983, a plaintiff "must show that: (1) the defendants acted under 'color of state law'; and (2) their conduct or actions deprived plaintiff of a right, privilege or immunity guaranteed by the Constitution or laws of the United States." *Rivera v. Goord*, 119 F. Supp. 2d 327, 335 (S.D.N.Y. 2000) (*citing Shabazz v. Vacco*, F. Supp. 2d 1998 WL 901737 *2 (S.D.N.Y. 1998) (*citing, Pitchell v. Callan,* 13 F.3d 545, 547-48 (2d Cir. 1994))).

The first element is not disputed here. Defendant—a state police officer in the middle of arrest processing—was clearly acting under color of state law, as he was on duty and engaged in law enforcement. As to the second element, as the Second Circuit explained in this case, "[v]isual body cavity searches are invasive and degrading, occasioning a serious invasion of privacy and working a significant harm to a person's bodily integrity," so any "such searches must be based on reasonable suspicion to believe that the arrestee is secreting evidence inside the body cavity to be searched." *Sloley I*, 945 F.3d at 38-39. Thus, unless Defendant is able to show "more than a mere hunch that Sloley was secreting drugs inside his anal cavity," liability necessarily follows.

None of the other traditional wrinkles in a 1983 case show up here: there's no question of personal involvement, there's no *Monell* claim, and qualified immunity[4] (as the Court ruled in drafting jury instructions in the last trial) does not rear its head directly, because there is a perfect overlap with its elements because of the posture of this case (that is, that the Second Circuit has already rejected any argument the right here is not clearly established).[5]

No one disputes that Defendant conducted a visual cavity search. No one disputes he did so intentionally. Plaintiff will present evidence that Defendant did not have more than a hunch he would find drugs when he did so — and believes the jury will not credit testimony otherwise. And that single fact, whichever way it goes, decides this entire case.

## II.    Plaintiff is Entitled to Compensatory and Punitive Damages.

In this action, Mr. Solely seeks various remedies available to him under 42 U.S.C. § 1983 including, inter alia, compensatory damages for mental anguish and emotional distress as well as punitive damages.[6]

### a.  Compensatory damages.

Compensatory damages are a form of relief available to a successful plaintiff under 42 U.S.C. § 1983. Fair and reasonable compensatory damages are appropriate where the plaintiff's

---

[4] A relatively recent discovery suggests that modern qualified immunity jurisprudence may entirely grow out of a transcription error between when Section 1983 was passed and as publised in the first version of the United States Code in 1926. *See* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. L. Rev. 201 (2023). A clause that would bar application of the common law immunities that the Supreme Court used to build qualified immunity was omitted in the version of the statute that was codified. Plaintiff respectfully reserves the right to argue "the doctrine of qualified immunity—misbegotten and misguided—should go." *McKinney v City of Middletown*, 2022 U.S. App. LEXIS 26863, at *54 (2d Cir. Sep. 26, 2022) (Calabresi, J., dissenting).

[5] As the Second Circuit suggested in *Sloley II*, this also means the Court should not — as it mistakenly did (over Plaintiff's vigorous objection) last time — "g[i]ve an instruction about negligence, indicating that VanBramer was not liable if he merely 'acted in a way that reflected a lack of due care for the plaintiff,' even though negligence was not at issue in the case, and despite the fact that reasonable suspicion under the Fourth Amendment is an objective inquiry." *Sloley II*, 2025 U.S. App. LEXIS 24965, at *4, n 5 (cleaned up).

[6] Plaintiff will also seek an award of costs, including a reasonable attorneys' fee, and respectfully reserves the right to make an application for such an award following the entry of final judgment. See Fed. R. Civ. P. Rule 54(b)(2).

injury was caused by the violation of a constitutional right. *Arroyo Lopez v. Nuttall*, 25 F. Supp. 2d 407, 410 (S.D.N.Y. 1998). Plaintiff will ask the jury in this case to award him compensatory damages based upon his mental anguish and emotional distress suffered during the visual cavity search. Moreover, in this type of case, the testimony of a plaintiff alone provides a sufficient basis for a jury to award damages for mental anguish and emotional distress and punitive damages. *Courtney v. City of New York*, 20 F. Supp. 2d 655, 661 (S.D.N.Y. 1998) (holding that a plaintiff "is not required to corroborate [her] testimony regarding mental anguish in order to support a compensatory damage award." (citation omitted)); *Lore v. City of Syracuse*, 670 F.3d 127, 179 (2d Cir. 2012) (affirming significant emotional damages award, though acknowledging it was extremely large).

### b. Punitive damages.

Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Mathie v. Fries*, 121 F.3d 808, 815 (2d Cir. 1997) (*quoting Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983)). Punitive damages may also be awarded "in a proper case under § 1983 for the purpose of deterring or punishing a violation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 257 n. 11, 98 S. Ct. 1042, 1049 n. 11 (1978); *see also, In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1272 (2d Cir.), *cert. denied*, 502 U.S. 920, 112 S. Ct. 331 (1991) (reviewing history of punitive damages).

Here, the nature of Plaintiff's claim indicates that punitive damages are appropriate. If the jury finds that the VanBramer forced Mr. Sloley to endure a visual cavity search on a hunch — or worse, just because he thought Mr. Slolely was a bad person — the deterrence value of actual damages alone will not be sufficient. *See, e.g., Grimm v. Lane*, 895 F.Supp. 907 (S.D. Ohio

1995) (awarding punitive damages against officers who conspired to administer a beating to prisoners who they felt needed an "attitude adjustment").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motions *in limine* in their entirety, and for such other relief as the Court deems just and proper.

Date:   March 18, 2026
        Ridgewood, NY

                                            Respectfully submitted,

                                            COHEN&GREEN, P.L.L.C.

                                            _____/s/_____

                                            J. Remy Green
                                            Regina J. Yu
                                            1639 Centre St Suite 216
                                            Ridgewood, New York 11385
                                            t: 929-888-9480
                                            e: remy@femmelaw.com

                                            *Pro Bono Trial Attorneys for Plaintiff*