**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

MAXMILLIAM SLOLEY,

                                        Plaintiffs,

           v.                                                    1:14:CV-339
                                                                 (PJE)
ERIC VANBRAMER,

                                        Defendant.

---

**U.S. Magistrate Judge
Paul J. Evangelista**

**APPEARANCES:**                                      **OF COUNSEL:**

Cohen & Green P.L.L.C.                                REMY GREEN, ESQ.
1939 Centre Street, Suite 216                         REGINA J. YU, ESQ.
Ridgewood, New York 11385
Attorneys for plaintiff[1]

New York State Attorney General                       MARK G. MITCHELL, ESQ.
State of New York                                     RACHAEL OUIMET, ESQ.
The Capitol
Albany, New York 12224
Attorneys for defendant

**DECISION & ORDER**

## I. Introduction

A jury trial in this case is set to begin on April 7, 2026, before the undersigned.

The parties have moved *in limine*, each seeking rulings on the admissibility of a variety

of matters. *See* Dkt. Nos. 180, 194.  Each motion is opposed.  *See* Dkt. Nos. 199, 200.

Defendant's opposition contains supplemental *in limine* requests.  *See id.* at 200.[2]

---

[1] *See* Dkt. No. 168 (Order Appointing Pro Bono Counsel).
[2]  The Court's citations to the parties filing are to the pagination located at the header of each page, generated by the Court's electronic filing software, not the documents' original pagination.

Familiarity with the facts and procedural history underlying this action is presumed and will not be repeated here.

As the Eastern District of New York has recently laid out:

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Gorbea v. Verizon N.Y., Inc.*, No. 11-CV-3758(KAM)(LB), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 462 (1984)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Further, the court's ruling regarding a motion in limine is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*[,] 469 U.S. at 41, 105 S. Ct. at 463. In considering a motion in limine, a court "may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Gogol v. City of New York*, No. 15 Civ. 5703(ER), 2018 WL 4616047, at *1 (S.D.N.Y. Sept. 26, 2018).

*Zhang v. Rosenbaum, Famularo & Segall, P.C.*, No. 22-CV-1422(SIL), 2025 WL 622548, at *2 (E.D.N.Y. Feb. 25, 2025).

## II. **Motions**

In his motion *in limine*, recognizing this Court's intention to adopt Judge Hummel's rulings made in the final pretrial conference in the first trial in this action, plaintiff "readopts his prior motions *in limine.*" Dkt. No. 180-1 at 6. He argues as follows (1) that defendant be precluded from displaying or introducing as an exhibit a poster of police dog Ryder; (2) that the Court direct defense counsel to use only leading questions "when examining witnesses on subjects that risk violating *in limine* rulings"; (3) preclude defendant from arguing in his summation "that the jury should not brand defendant as someone who violates peoples' constitutional rights, while plaintiff is someone who is generally manipulative and dishonest," "appeals to sympathy for defendant and his future career in police work," and, alternatively, if defendant so

2

argues, "the Court should preemptively allow plaintiff to elicit testimony about indemnity, police that are not heroes, and to appeal similarly to the jury's emotions"; (4) the Court should reconsider its ruling on allowing "basic information" about some of plaintiff's prior civil actions; and (5) the Court should "reserve certain issues for the charge conference," "including but not limited to the precise wording of jury instructions . . . and any issues concerning qualified immunity that will depend on how the evidentiary record is developed." Dkt. No. 180-1 at 6-23.

Defendant seeks this Court to (1) allow cross examination of plaintiff about his other federal civil lawsuits, *Sloley v. Seeley, et al.*, 9:18-CV-0856; *Sloley v. Filli, et al.*, 1:12-CV-01751; and *Sloley v. NYS DOCCS, et al.*, 9:23-CV-01469, (2) permit defendant to inquire into plaintiff's convictions and supervised release pursuant to the Court's earlier rulings; (3) preclude plaintiff from "offering testimony or other evidence . . . about other individuals claiming that they were searched by Eric VanBramer or other state troopers" and "offering any testimony or other evidence . . . about Eric VanBramer or other state troopers having a reputation for engaging in improper searches"; (4) preclude plaintiff from offering evidence, testimony, or cross-examination regarding defendant's or nonparty Bryan VanBramer's disciplinary records or histories; (5) preclude plaintiff from referencing dismissed claims; (6) preclude plaintiff from alleging defendant engaged in a "conspiracy" or "cover-up" with nonparty Bryan VanBramer or the New York State Police; (7) preclude plaintiff from seeking an adverse inference instruction or arguing that the jury should draw an adverse inference based on the destruction of drug evidence; and (8) admit into evidence records from plaintiff's mental health provider Dr. Richard Kessler. Dkt. No. 194-1.

3

In opposition, plaintiff reiterates most of the arguments raised in his Motion in Limine. The Court discusses only where his arguments differ or are expanded in response to defendant's motion. As to plaintiff's prior civil cases, plaintiff contends, should defendant use plaintiff's prior civil suits to suggest plaintiff has a propensity for litigation, "the Court should warn Defendant in advance that it will give a curative instruction that informs the jury that Defendant was told not to make this argument, that it was improper, that those suits will be addressed elsewhere and could be meritorious, and further allow Plaintiff to make arguments that the violation of the rule allows inferences about other issues." Dkt. No. 199 at 5. As for plaintiff's criminal convictions, plaintiff contends that he "does not ask the Court to reconsider the substance of its prior rulings [] but has raised concerns over *how* the criminal history was handled," arguing that his request to require defendant to ask pre-screened leading questions would cure that concern. *Id.* at 6. As to the conspiracy point, plaintiff states that he "does not intend to argue conspiracy qua conspiracy," but that he "***will*** touch on exactly what the Second Circuit said is at issue: whether the 'trier of fact [will] disbelieve Eric's account of finding drugs in Sloley's car." *Id.* at 8 (quoting *Sloley v. VanBramer*, 945 F.3d 30, 45 (2d Cir. 2019). "If VanBramer is not telling the truth, what he says he did may involve something ***broadly*** fair to describe as an effort to 'cover-up' such a deprivation.'" *Id.*

Next, in response to defendant's *in limine* request that there be no adverse inference charge or argument made to the jury with respect to the destroyed drug test kit, plaintiff argues that defendant applies the wrong test, and that under the "special relationship test," an adverse inference should be given or, alternatively, any reference to the drug test kit should be precluded. Dkt. No. 199 at 9-10.

4

In defendant's opposition he reiterates his arguments in his motion *in limine*; thus, only those arguments that differ from his motion *in limine* or new arguments are detailed here.  *See* Dkt. No. 200-1.  With respect to plaintiff's *in limine* request to exclude a photographic image of police dog Ryder (exhibit D-19 in *Sloley I*), defendant argues (1) Ryder passed away and cannot be produced for trial; (2) plaintiff stipulated to Exhibit D-19 in *Soley I,* which means he "conceded that Exhibit D-19 is appropriate evidence in this case," and (3) the Second Circuit rejected his argument on appeal that the Court improperly allowed the photographic evidence of Ryder.  *See id.* at 4 (citing Dkt. No. 194-6 at 19-20[3]).  As to plaintiff's request that defense be directed to submit prescreened questions and ask only leading questions surrounding plaintiff's criminal convictions, defendant contends that (1) the Second Circuit rejected plaintiff's argument that the Court "erred by not doing enough to exclude evidence of Plaintiff's prior convictions" (citing *Sloley II*, 2025 WL 2741780, at *3), (2) plaintiff ignores that he "opened the door by referencing his criminal history and trying to create the false impression that Plaintiff was acquitted of the charges from the April 1, 2013 incident," and (3) at trial, "the Court faulted Plaintiff's counsel for, among other things, attempting to testify about matters that plainly were not in evidence (Dkt. No. 144 at pp. 182, 239) and trying to insinuate that Defendant is a racist (Dkt. No. 145 at p. 315)" such that if the Court imposes "special precautions, they should be imposed on Plaintiff's counsel in order to deter such conduct."  *Id.* at 6-8.

Next, responding to plaintiff's "emotional appeals" argument, defendant asserts that plaintiff "did not object to the defense closing, which refutes Plaintiff's newly-

---

[3] Defendant cited the original pagination, pages 11-12.

adopted view that the closing was improper." Dkt. No. 200-1 at 8.  Plaintiff argues that in his appeal, he presented the argument that the Court erred "by permitting defense counsel to 'idolize VanBramer in closing[,]'" and the Second Circuit rejected that argument."  *Id.*  Defendant argues that he is permitted to (1) introduce evidence about defendant's long service as a police officer, training, and experience as credibility is "key" in this trial; and (2) argue that the jury should not find "certain witnesses credible, including by arguing that plaintiff is making false allegations in an effort to obtain money from the jury."  *Id.* at 9-10.[4]

Defendant newly argues that plaintiff should be precluded from arguing that defendant would be indemnified should they find for plaintiff as (1) the Court resolved the issue in the first trial by ruling that neither party would be permitted to introduce evidence as to "'who will or will not pay any award which plaintiff may receive with respect to this matter' which is "the law of the case" (quoting Dkt. No. 146 at 39), (2) such evidence would be prejudicial and could influence the jury, and (3) "[w]hether or not Defendant would be indemnified should Plaintiff obtain a judgment in this action is a determination that has not yet been made." Dkt. No. 200-1 at 10.  In response to plaintiff's request that the Court reserve "certain issues" for the charge conference, defendant argues that the Court should instruct the jury on nominal damages as the Court ruled in favor of defendant on this *in limine* request in *Sloley I* which is the law of the case.  *Id.* at 14.  Further, defendant provides, "although Plaintiff claims to have waived his entitlement to seek nominal damages, Plaintiff's proposed jury instruction

---

[4]  In a footnote, defendant argues that the Court, in its May 25, 2023, decision concluded that defendant's testimony about searching for missing children was properly admitted " 'as an example of [Defendant's] use and success working with a canine in conducting a search.' And should be admitted at the retrial of this matter."  Dkt. No. 200-1 at 9 n.2.

tells a different story as the instruction "is conspicuously silent about what the jury should do in the event that it finds in favor of Plaintiff on liability, but determines that Plaintiff's damages have no monetary value" which risks misleading the jury. *Id.* at 16.

Defendant next argues that the Court should preclude plaintiff's proposed witness Aaron King from testifying. *See* Dkt. No. 200-1 at 16. Plaintiff's witness list states that plaintiff may call Mr. King "'to testify about his own experience encountering Eric and Bryan VanBramer approximately one year after Plaintiff's experience, under similar circumstances involving a car stop, an alert by a K-9, and a subsequent strip search.'" *Id.* (quoting Dkt. No. 197 at 2). Defendant avers that Mr. King has no personal knowledge about the April 1, 2013, incident underlying this complaint; his testimony about a different search is not relevant; it can be viewed by the jury as propensity evidence; any probative value is substantially outweighed by the risk of unfair prejudice; and the search involves Bryan VanBramer, who is not a defendant. *Id.* at 17.

Lastly, defendant seeks the Court to preclude plaintiff from introducing defendant's "first appellate brief from the first appeal as evidence or offering any proof or testimony about the contends of that brief." Dkt. No. 200-1 at 17. Defendant argues (1) an appellate brief is not evidence, (2) there was a different standard of review applied to the appeal as it was on review of a motion for summary judgment which required all inferences be drawn in plaintiff's favor, and (3) any relevance "would be outweighed by the risk of confusing the issues and misleading the jury." *Id.* at 18. Defendant argues, if plaintiff is permitted to introduce defendant's first appellate brief, he should be permitted to introduce his second appellate brief from the second appeal

wherein defendant "maintained, among other things, that he did <u>not</u> conduct a visual body cavity search of Plaintiff."  Dkt. No. 200-1 at 19 (citing Dkt. No. 200-2 at 11, 24-25, 32).

### III. **Discussion**

### A. **Police Dog Display**

Plaintiff's first request is granted in part and denied in part.  With respect to the display of Ryder, the argument plaintiff made to the Second Circuit was in the context of his assertion that this Court allowed defendant "to give irrelevant and prejudicial testimony," "including" that defendant elicited testimony about defendant's "love of animals and his love of the K-9 unit," that the police dogs become part of your family, and that during defendant's testimony "the defense presented a banner of his police dog to the jury."  Dkt. No. 194-6 at 20.  The Court rejected plaintiff's remaining arguments as improper, which includes plaintiff's arguments with respect to the "banner" of police dog Ryder.

Considering that plaintiff stipulated into evidence the exhibit during the first trial, did not object to the display at trial, presented an argument about the display of police dog Ryder to the Second Circuit on appeal, which collectively rejected plaintiff's argument, the Court will not now exclude this exhibit. *See generally In re Coudert Bros. LLP*, 809 F.3d 94, 98-99 (2d Cir. 2015) (internal citations omitted) ("The scope of a mandate may extend beyond express holdings, and precludes relitigation both of 'matters expressly decided by the appellate court" and of "issues impliedly resolved by the appellate court[ ].'  A mandate, therefore, may expressly dispose of certain issues raised on appeal, or if the disposition of an issue is 'necessarily implied' by our decision,

a mandate may also foreclose such an issue from being considered by the lower court.").  The Court will, however, limit the display of the exhibit to being in the jury's view only during that portion(s) of defendant's testimony specific to police dog Ryder.  Accordingly, plaintiff's *in limine* request on this ground is denied.

### B. **Leading Questions**

Plaintiff seeks the Court to require defense counsel to ask leading questions when examining witnesses on topics "that risk violating *in limine* rulings."  Dkt. No. 180-1 at 11; Dkt. No. 199 at 6 (seeking "leading questions, screened in advance").  The Court denies the request as premature.   Should defense counsel engage, or appear on the verge of engaging, in a line of questioning is improper based on the Court's earlier rulings, the Court will, at that time, consider requiring the use of leading questions.

### C. **Emotional Appeals**

Plaintiff's request is addressed as follows. The Court will allow general character evidence and parties to invite the jury to draw conclusions as to each party's character. The Court will allow defense counsel to question defendant as to his experience and accomplishments relating to his police work specific to his K9 experience and search-related work.  However, the Court will not permit testimony or closing arguments about the impact of a verdict on defendant's future police career or reputation.  To the extent plaintiff is concerned about defendant attempting to portray plaintiff as someone who is trying to game the system, while the Court will also allow general character evidence and allow the jury to reach their own conclusions about each witness' character and credibility based on the testimony presented, absent evidence that plaintiff's other civil

lawsuits were fraudulent, the defendant will be required to proceed cautiously with arguments making that suggestion to the jury.

### D. Plaintiff's Prior Civil Cases

Insofar as plaintiff seeks this Court to reconsider Judge Hummel's earlier decision regarding plaintiff's other civil suits, the motion *in limine* is denied and defendant's is granted. The Court adopts Judge Hummel's ruling as to plaintiff's prior civil actions. The Court will allow defendant to present general information about the filing of plaintiff's civil suits, such as the nature of the allegations, date the actions were commenced, and the emotional damages claims:

(1) *Sloley v. Seeley, et al.*, 9:18-CV-856 (N.D.N.Y. 2018): cruel and unusual punishment as pretrial detainee, claimed psychological impact ("tremendous harmful psychological effects, such as stress, depression, fear, anxiety")

(2) *Sloley v. Fili*, 12-CV-1751 (N.D.N.Y. 2012): strip search in connection with an arrest, claimed injury that included "great mental anguish, emotional distress, public humiliation, and . . . fear of physical harm and violence."

(3) *Sloley v. NYS DOCCS, Dr. Andola, et al.,* 9:23-cv-01469 (N.D.N.Y. 2023). The Court adopts Judge Hummel's prior ruling to exclude evidence about *Sloley v. Lebow*, 17-CV-68 (N.D.N.Y. 2017) as plaintiff did not claim emotional damages in the complaint in that case. In referring to plaintiff's other civil lawsuits, parties are to refer to them as "cases."

Plaintiff contends that, in the first trial, defense counsel relied on the earlier civil trials to imply that plaintiff has a propensity for bringing legal actions. Unless defendant

10

can proffer evidence that any of the other civil lawsuits were fraudulent, he cannot use them to argue that plaintiff has a propensity for bringing lawsuits or claiming false emotional damages. *See Scoma v. City of New York*, No. 16-CV-6693 (KAM/SJB), 2021 WL 1784385, at *7 (E.D.N.Y. May 4, 2021) (citing *Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 125 (2d Cir. 2005) ("A trial court has a duty to prevent charges of litigiousness if they are likely to result in undue prejudice that is not substantially outweighed by their probative value.") then citing *Ragin v. Newburgh Enlarged City Sch. Dist.*, No. 10-cv-2797 (JFK), 2011 WL 2183175, at *2 (S.D.N.Y. June 3, 2011) ("The introduction of evidence concerning [plaintiff's] past litigation would distract the jury from the central issues in the trial and may well lead to prejudice against [plaintiff] as a frequent litigant. We would be getting too close to propensity evidence.")).

### E. **Reserving for Charge Conference; Nominal Damages**

To the extent plaintiff seeks this Court to reserve as to the specific language of the jury charge until the charge conference, that motion is granted insofar as a final determination on the specific language and contents of the jury charge will be made at the charge conference. However, the Court will entertain discussion regarding the jury charge at the final pretrial conference. To the extent plaintiff appears to suggest that he seeks the Court to defer on whether to include a charge as to qualified immunity, it will hear parties' arguments at the charge conference, but the Court intends to follow Judge Hummel's ruling: to not instruct the jury as to qualified immunity unless and until the jury returns a verdict in favor of plaintiff, and if that occurs, the Court will then hear from counsel as to whether further instruction on qualified immunity is appropriate. *See* Dkt. No. 146 at 34.

Defendant has requested a nominal damages charge.  Although the Court reserves on the exact language of the charge, the Court declines to wait until the charge conference to address the issue of whether the jury will be charged with nominal damages.  *See* Dkt. No. 200-1 at 14. The Court adopts Judge Hummel's prior ruling and will charge the jury with nominal damages.  *See* Dkt. No. 145 at 122-24, 139.

### F.  **Plaintiff's Convictions and Supervised Release**

Plaintiff indicates that he is not "ask[ing] the Court to reconsider the substance of its prior rulings" with respect to plaintiff's felony convictions but instead seeks that his request defendant be required to submit prescreened leading questions with respect to those earlier convictions.  Dkt. No. 199 at 6.  The Court adopts Magistrate Judge Hummel's prior rulings for the 2017 convictions.  Defendant will be able to inquire into the statutory name and date of convictions for (1) criminal possession of a weapon in the second degree in 2017, (2) unlawful fleeing from the police in a motor vehicle in 2017, and (3) criminal impersonation in 1996.  *See* Dkt. No. 146 at 14.   Defendant will also be permitted to question plaintiff as to whether he was on supervised release at the time of the incident.

Consistent with Judge Hummel's ruling, defendant will not be permitted to question plaintiff or introduce evidence on his 2005 felon in possession of a firearm conviction or 1997 conviction for criminal sale of a controlled substance as their probative value is minimal and far outweighed by their prejudice.  *See United States v. Vazquez*, 840 Supp. 2d 564, 568-699 (E.D.N.Y. 2011); *Dunham v. Lobello*, No. 11-CV-1223 (ALC), 2023 WL 3004623, at *2 (S.D.N.Y. Apr. 19, 2023) (Under Rule 609(b), "convictions over 10 years old [should] be admitted very rarely and only in exceptional

circumstances, as convictions over ten years old generally do not have much probative value." (first quoting FED. R. EVID 609(b) then (quoting *United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009) (internal citations and quotation marks omitted)) (noting that drug possession crimes have little probative value for credibility purposes).

The Court will not require defense counsel to use leading, prescreened questions as it relates to plaintiff's past convictions.  It will allow plaintiff's counsel to renew this request should it be determined necessary during trial.  It will similarly allow defense to make such a request should plaintiff's counsel proceed with lines of questioning that challenge the Court's *in limine* rulings.

### G.  **Other Searches & Aaron King's Testimony**

Insofar as defendant seeks to preclude plaintiff from seeking to elicit testimony or introduce evidence about (1) other searches defendant or other state troopers performed on individuals other than plaintiff, or (2) any reputation that defendant or other state troopers may have for performing unlawful searches, that motion is granted.[5] Whether other state troopers have engaged in other searches or have a reputation for improper searches is not relevant here.  Further, the Court agrees, even if plaintiff presents evidence that defendant has engaged in other improper searches, inquiry into specific searches would require a "trial within a trial."  As per Judge Hummel's ruling, the Court will permit some general questioning as to whether defendant has performed searches in other cases and found drugs.  *See* Dkt. No. 146 at 43-46.  It will not allow

---

[5]  In the opposition to defendant's motion *in limine*, plaintiff's counsel suggests that the Second Circuit did not reject plaintiff's arguments regarding exclusion of questioning of other searches. *See* Dkt. No. 199 at 7.  Although the Second Circuit did not discuss the other issues plaintiff raised on appeal, it did conclude that it considered and reject all other arguments plaintiff raised, which included this argument.   Further, the Court finds counsel's implication that defense counsel may have used A.I. to be both unnecessary and unsubstantiated especially where defendant's citation properly points to that part of the decision where the Second Circuit rejected all remaining arguments.  *See* Dkt. No. 199 at 7 n.2.

testimony as to specific other complaints involving other individuals alleging that defendant engaged in improper searches.

In his opposition, defendant seeks to preclude testimony from Aaron King, who plaintiff included as a potential witness. In plaintiff's opposition, plaintiff indicates that he intends to introduce evidence of prior searches as they "could be used show absence of mistake, MO, and the like" and be "used on credibility, depending on Defendant's testimony." Dkt. No. 199 at 7. Plaintiff provides that he intends to use potential results of a subpoena, dkt. no. 201, to seek a complaint and "any closing report," and it appears that the complainant is Mr. King. The Court will not allow any testimony on prior searches. Even if they could be used to challenge credibility or in support of the vague categories plaintiff's counsel suggests, it is clear that the probative value is significantly outweighed by the prejudice. Just as Judge Hummel was concerned at the first trial on this manner, a complaint is not conclusive of anything. The true purpose of seeking to include a search alleged to have been improper that involves a different complainant, at a different time, under different circumstances could not be more plain – to suggest to the jury that defendant has a propensity to perform improper searches. Accordingly, the Court grants defendant's motion *in limine* insofar as plaintiff is not permitted to introduce testimony or evidence involving other searches involving individuals other than plaintiff in which defendant was involved.

## H. **Disciplinary History of Defendant or Bryan VanBramer**

As per Judge Hummel's ruling, nothing involving complaints against Bryan VanBramer, who is not a party to this action, is relevant; thus, testimony or evidence relating to the disciplinary history of Bryan VanBramer or any other officer not a party to

14

this suit will not be permitted.  The Court is inclined to conclude that prior *complaints* against defendant, if they exist, will not be permitted.  The Court does not have before it any evidence of defendant VanBramer's prior disciplinary history.   Further, it is not clear for what purpose plaintiff seeks to introduce defendant's potential disciplinary history.  It would appear to the Court that such evidence, if it exists, would be used to demonstrate or suggest propensity to engage in improper conduct, which the Court will not permit.  *See* FED. R. EVID. 404(a)(1), (b)(1).  However, given that the Court has no such evidence before it nor a description of any such evidence, the Court cannot yet conclude "at this stage that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice." *Bryant v. City of Hartford*, 585 F. Supp. 3d 179, 187 (D. Conn. 2022).  Thus, to the extent (1) plaintiff seeks to enter evidence or elicit testimony with respect to Bryan VanBramer or any other officer's disciplinary history, defendant's *in limine* is granted, plaintiff is prohibited from so doing; and (2) plaintiff may wish to enter into evidence or question defendant regarding his disciplinary history, the Court reserves judgment until "th[is] issue[] [is] placed in context at trial" or the charge conference should plaintiff present the Court with a clearer picture. *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)).

## I.  **Dismissed Claims**

Defendant's request to preclude plaintiff from testifying or introducing evidence as to any dismissed claims is granted.  Plaintiff states that he does not intend to do so, "the Court addressed this issue correctly last time, and Plaintiff does and would not ask to reconsider that ruling." Dkt. No. 199 at 7.  Entry of such testimony or evidence would

be only for the purpose of seeking to litigate adverse determinations that the Court already rendered, and, thus, improper.  *See generally Goreba v. Verizon New York, Inc.*, 11-CV-3758 (KAM/LB), 2014 WL 2916964 (E.D.N.Y. June 25, 2014) (granting motion in limine precluding evidence or previously dismissed claims because such evidence would not be relevant, and, thus, inadmissible under Fed. R. Evid. 401).

## J.  **Conspiracy**

Defendant's request to preclude plaintiff from testifying about defendant's participation in a conspiracy or "cover up" with Bryan VanBramer or the New York State Police is granted as follows.  There is no conspiracy claim in this action.  To the extent plaintiff's counsel means they intend to argue that defendant "is not telling the truth" about finding drugs in plaintiff's car, dkt. no. 199 at 8, the Court will not bar plaintiff from doing so within reason; however, plaintiff's counsel is not to use the terms "conspiracy," "conspired," or "cover up" in so arguing.   Should there be other terms used during the course of the trial that risk crossing over into a suggestion that there was a legal conspiracy or agreement between defendant and any other person, the Court will address such improper uses at that time.

## K. **Destruction of Drug Evidence**

Defendant's request to preclude plaintiff from seeking an adverse inference instruction[6] is granted unless plaintiff can proffer evidence to suggest that the drug evidence was destroyed in a manner other than pursuant to the usual course of

---

[6] The heading of this section of defendant's *in limine* motion states that plaintiff should be precluded from arguing that the jury should draw an adverse inference; however, the case law he cites refers to an adverse inference instruction.  *See* Dkt. No. 194-1 at 18.  Thus, the Court addresses both an adverse inference instruction and the ability of plaintiff's counsel to argue that that the jury should draw an adverse inference.

business.  Plaintiff's alternative request to preclude any testimony or evidence on the existence of the drug test kit is denied.  The Court will later address the different question of whether plaintiff may make this argument to the jury.

Defendant seeks to preclude plaintiff from requesting an adverse inference instruction or arguing to the jury that they should draw an adverse inference from the missing drug test kit, whereas plaintiff, in opposition, argues that the Court should impute liability for destruction of the test from the New York State Police to defendant. *See* Dkt. Nos. 194-1, 199, 200-1.  The Court is not convinced the special relationship test warrants an adverse inference instruction.[7]  Regardless, even if the Court were to determine that the test applies, that does not end the discussion.  The circumstances of the agency's destruction of the evidence is relevant. In *Castro v. Smith*, No. 16-8147, 2023 WL 5371311 (S.D.N.Y. Aug. 22, 2023),

which plaintiff cites, dkt. no. 199 at 9, the Court was considering spoliation sanctions where there was no question that the evidence was destroyed after plaintiff's counsel contacted the Department of Corrections requesting preservation of the evidence. Here, there is no evidence that plaintiff provided the state police or defendant a preservation request before the drug test kit was destroyed or that they would have reason to believe that the drug test kit would need to be retained.  Plaintiff has not shown authority that suggests that a general knowledge that civil litigation can follow criminal litigation is grounds for warranting an adverse inference charge, without more. *See* Dkt. No. 145 at 91-92.

---

[7]  Although plaintiff does not so request, the Court makes clear that it has no intention to charge the jury with the "special relationship" test.

Thus, to the extent plaintiff may be requesting an adverse inference charge, that request is denied.

The Court will, however, allow plaintiff to question defendant about the destruction of the test kit and the "policy" or lack thereof for retaining or destroying evidence, as they did at the first trial.[8]  *See, e.g.*, Dkt. No. 145 at 91-92.  Should plaintiff open the door, defendant will be permitted to counter with the evidence and testimony that the test was destroyed before the lawsuit was commenced, that the test was destroyed pursuant to New York State Police policy, and that defendant was not the deciding individual.   Absent on-point case law otherwise, the Court will not permit plaintiff from arguing that defendant or the New York State Police had a duty to anticipate litigation absent notice of a civil lawsuit or preservation request.[9]

## L.  **Dr. Kessler's Records**

The Court adopts Judge Hummel's ruling to exclude Dr. Kessler's records.  *See* Dkt. No. 146 at 42-44.  Plaintiff appears to seek garden-variety emotional damages and proffers no expert testimony as to his emotional damages.  *See Ruhlmann v. Ulster Cnty. Dep't of Soc. Servs.*, 194 F.R.D. 445, 450 (N.D.N.Y. 2000) (quoting Jaffee v. Redmond, 518 U.S. 1, 18 (1996)).  However, if plaintiff opens the door by testifying that

---

[8]   The Court notes that the testimony at the prior trial was that Eric VanBramer destroyed "less than five" test kits personally in his role as an evidence custodian.  *See* Dkt. No. 145 at 95.  The Court does not read this testimony as suggesting "less than 5 drug test kits had apparently ever been destroyed . . . ." Dkt. No. 199 at 10. When asked whether "in your position it was unusual to destroy a test kit, Defendant testified that it was unusual, defendant responded, "in my position as an evidence custodian, it would be unusual for me to have a test kit given to me as an item of evidence." Dkt. No. 145 at 95.  Plaintiff's motion *in limine* suggests that the trial established that there were fewer than five test kits ever destroyed by the New York State Police, when the testimony itself suggested that defendant destroyed fewer than five kits and that it was unusual or uncommon for him in this position to destroy drug test kits.  Should this testimony again be elicited at trial, absent evidence suggesting otherwise, the Court would be unlikely to permit an argument that makes the leap suggested here.  Dkt. No. 199 at 10.

[9]  It will consider allowing testimony about any procedures the New York State Police may have with respect to preservation for civil or criminal lawsuits.

he sought mental health treatment as a result of the incident underlying the complaint or suggests emotional damages beyond garden variety, the Court will allow defendant to renew his argument and will consider its admission.  *See MacMillion v. Millenium Broadway Hotel*, 873 F. Supp. 2d 546, 560 (S.D.N.Y. 2012) ("In 'garden variety' claims, 'the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury'") (quoting *Olsen v. County of Nassau*, 615 F.Supp.2d 35, 46 (E.D.N.Y. 2009)).

### M. **Appellate Briefs**

Defendant seeks to bar plaintiff from entering his first appellate brief into evidence, and argues that if it is admitted, he seeks to enter his second appellate brief into evidence.  *See* Dkt. No. 200-1 at 18 (citing Dkt. No. 196), 17-19.  The Court will not allow either appellate brief into evidence.   As it appears that the first appellate brief was included as a potential means of challenging defendant should he argue that no visual body cavity search occurred, *see id.* at 19, the Court reserves decision as to (1) whether and to what extent it will allow questioning into whether defendant performed a visual body cavity search (versus a strip search) of plaintiff or argument that defendant did not perform a visual body cavity search of plaintiff, and (2) the language of the jury charge and verdict form as further argument and support from parties on the issue underlying is needed.[10]

---

[10]   Parties should come to the final pretrial conference prepared to discuss this issue and whether this argument – that defendant did not perform a visual body cavity search – was preserved or whether the fact that a visual body cavity search occurred is the law of the case.  Although the Court does not intend to finally decide the terms of the charge or verdict forms at the pretrial conference, the Court is aware, from parties' proposed jury charges and proposed verdict forms, that defendant intends to have the jury determine whether a body cavity search occurred and plaintiff's submissions presume that a visual body

N. **Indemnification**

The Court adopts Judge Hummel's ruling from *Sloley I*.  *See* Dkt. No. 146 at 38-39.  It will not allow testimony, argument, or evidence from either party that defendant will or will not be indemnified.  It will also not allow any implication that defendant will or will not be held responsible for any verdict.

IV. **Conclusion**

For the foregoing reasons, as set forth herein, the parties' motions *in limine* are granted in part and denied in part.  *See* Dkt. Nos. 180, 194, 200.

**IT IS SO ORDERED.**

> **Dated**: April 2, 2026
> Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

cavity search occurred.  The Court observes that the verdict form in *Sloley I*, dkt. no. 11, appears to have presumed that a visual body cavity search occurred.  *See* Dkt. Nos. 182, 189.