UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MAXMILLIAN SLOLEY,

                    Plaintiff,                  **14-cv-339 (PJE)**

     -v-

ERIC VANBRAMER,

                 Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR JUDGMENT AS A MATTER OF LAW,
OR, ALTERNATIVELY, FOR A NEW TRIAL**

COHEN&GREEN, P.L.L.C.
J. Remy Green
Regina J. Yu
1639 Centre St, Suite 216
Ridgewood, New York 11385
(929) 888-9480

Pro Bono Trial Attorneys for Plaintiff[1]

---

[1] We appear, at the Court's invitation and request, on this motion.  Our representation is limited to the trial and this set of motion papers.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

    a.    Defendant VanBramer conducted a visual body cavity search. ................................... 3

    b.    Defendant VanBramer testified he lacked reasonable suspicion anything was in the cavity to be searched. ................................................................................................... 5

ARGUMENT .......................................................................................................................... 5

    I.    The Court Should Grant Plaintiff Judgment as a Matter of Law that a Visual Body Cavity Search Occurred. ............................................................................................... 5

    II.    In the Alternative, the Court Should Grant a New Trial on Whether a Visual Body Search Took Place. ......................................................................................................... 8

    III.    Defendant's Violations of the Court's *In Limine* Rulings and Misstatements of the Law Support both Judgment as a Matter of Law and a New Trial. ......................................... 9

    a.    Defendant's counsel misrepresented the law directly in closing and implicitly through testimony, and that misrepresentation was locked in by the Court's decision to preclude further testimony on the types of searches and the answer it gave to the jury question. ....... 11

    b.    Defendant violated the Court's *in limine* ruling on criminal history. ........................... 13

    c.    Defendant violated the Court's *in limine* rulings on bolstering and awards. ................. 14

    d.    Defendant's closing immediately violated the Court's ruling on use of prior suits and emotional appeals. ...................................................................................................... 16

    IV.    The Court Should Also Grant Judgment as a Matter of Law on Liability ........................ 18

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Honda Motor Co., Inc. v Christianson,*
377 Ga App 712, 922 S.E.2d 839 (2025)................................................................15

*Bishop v NY State Dept. of Corr. & Community Supervision,*
2025 U.S. Dist. LEXIS 252565 (NDNY Dec. 8, 2025)..........................................1, 7

*DLC Mgmt. Corp. v. Cohen,*
163 F.3d 124 (2d Cir. 1998)...................................................................................8

*Farrior v. Waterford Bd. of Educ.,*
277 F.3d 633 (2d Cir. 2002)...................................................................................8

*Finn-Verburg v. New York State Dept. of Labor,*
165 F. Supp. 2d 223 (N.D.N.Y. 2001)....................................................................9

*Graham v. City of N.Y.,*
128 F. Supp. 3d 681 (E.D.N.Y. 2015) ................................................................10, 12

*Lee v City of Troy,*
339 F.R.D. 346 (NDNY 2021)...............................................................................2, 10

*Lombardo v. Columbia Dentoform Corp.,*
103 F.R.D. 630 (S.D.N.Y. 1984) ...........................................................................9

*Manley v AmBase Corp.,*
337 F.3d 237 (2d Cir. 2003)...................................................................................5

*Monroe v Gould,*
372 F Supp 3d 197 (SDNY 2019) .........................................................................7, 9

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133 (2000).................................................................................................5

*Sec. & Law Enforcement Empls., Dist. Council 82, etc. v Carey,*
737 F.2d 187 (2d Cir. 1984)...............................................................................6, 7, 11

*Sloley v Vanbramer,*
2025 U.S. App. LEXIS 24965 (2d Cir Sep. 26, 2025) (*Sloley II*) ........................12, 18, 19, 20

*Sloley v Vanbramer,*
945 F.3d 30 (2d Cir. 2019) (*Sloley I*)................................................................ *passim*

*Song v. Ives Laboratories, Inc.*,
 957 F.2d 1041 (2d Cir. 1992)............................................................................................9

*Tolbert v. Queens Coll.*,
 242 F.3d 58 (2d Cir. 2001)...............................................................................................5

*United States v Gonzalez*,
 111 F Supp 3d 416 (SDNY 2015) .....................................................................................7

*United States v Wilcox*,
 487 F.3d 1163 (8th Cir. 2007) .........................................................................................12

*Wallace v Booth Mem. Hosp.*,
 163 A.D.2d 917 (4th Dept 1990) .....................................................................................17

**Other Authorities**

Fed. R. Civ. P. 50.............................................................................................................8

Fed. R. Civ. P. 50(b) .......................................................................................................19

Fed. R. Civ. P. 59.............................................................................................................8

Fed. R. Civ. P.  60(b) ......................................................................................................19

"anal gape,"*Urban Dictionary* (Jan. 13, 2005), *available at*
 https://www.urbandictionary.com/define.php?term=anal+gape..............................................7

"Everything to know about butt plugs," Medical News Today, *available at*
 https://www.medicalnewstoday.com/articles/butt-plugs#safetytc.........................................19

## PRELIMINARY STATEMENT

At trial, Defendant Eric VanBramer testified, unambiguously, that he conducted a visual body cavity search on Plaintiff Maximillian Sloley.  He said he:

1.  Had Plaintiff "remove all of his articles of clothing one by one."  Green Ex. 1, Transcript of Trial for 2026-04-07 ("Day 1 Tr.") at 108:22-24.

2.  "[I]nstructed him to bend over."  *Id.* at 111:1-4.

3.  Had him "use his hands to spread his cheeks apart," to look at the "space between them."  *Id.* at 112:16-19.

4.  "Looked directly at him," such that he saw "the exterior of what we're calling the anus."  *Id.* at 113:1-12.

That is what the Circuit has made clear is a ***visual*** body cavity search.  In this very case, the first (of two so far) times the Circuit has needed to reverse judgments in favor of Defendant, it explained "a 'visual body cavity search' is one in which the police observe the suspect's body cavities without touching them (as by having the suspect to bend over, or squat and cough, while naked)." *Sloley v Vanbramer*, 945 F.3d 30, 36 (2d Cir. 2019) ("*Sloley I*").  Other courts are clear on this.  A visual body cavity search is inspection of the body, "including genitals and anus, without any contact." *Bishop v NY State Dept. of Corr. & Community Supervision*, 2025 U.S. Dist. LEXIS 252565, at *17 (NDNY Dec. 8, 2025), quoting *N.G. v. Connecticut*, 382 F.3d 225, 228 n.4 (2d Cir. 2004). And indeed, the Court's instructions on this were clear too, echoing the Second Circuit's description verbatim.

This leaves a puzzle:  How did the jury come to misunderstand things so dramatically? But misunderstand they did, as shown by their first (and only) question, asking for the definition of a ***strip*** search.[2]  The answer likely lies in the fact that Plaintiff and the Court alike "no idea …

---

[2] The transcripts available to Plaintiff do not include the colloquy on the jury's note or its contents and stop at the last piece of discussion of the jury charge.  *See* Green Ex. 2, Transcript of Trial for 2026-04-08 ("Day 2 Tr.") at 205. The jury note is sealed on ECF.  Counsel are thus working from their notes, which reflect that the jury asked, in

1

of the burgeoning dispute" that would become the heart of Defendant's closing. *Lee v City of Troy*, 339 F.R.D. 346, 355 (NDNY 2021). Defendant repeatedly emphasized that "Eric VanBramer never touched the plaintiff, never put anything into the plaintiff's body. He didn't stick a probe into the plaintiff. He didn't touch him at all." Day 2 Tr. at 188:5-8. And during examination, counsel made a point of asking leading questions to confirm no "touch[ing]," no "reach[ing] inside," no "put[ting] anything in[side]," and so on. *Id.* at 77-78. So, when the Court suggested it would limit Plaintiff's questioning about the fact that a search with "touch[ing]" would be something else entirely (Day 1 Tr. at 79:22-80:1), and later implemented that (*id.* at 85-86), it was ultimately allowing Defendants to mislead the jury.

And mislead is what Defendant did. Rather than fighting about the facts, Defendant essentially mounted a defense of jury nullification: He attacked Plaintiff's character, violated the Court's *in limine* rulings enough that the Court had to caution "I'll strike that last portion of the answer as violating my in limine ruling. This is the last warning" (Day 2 Tr. at 82:16-18); and spent the bulk of closing emphasizing, as if it mattered, that Defendant did not "reach inside" Plaintiff's anus. Ultimately, that added up to a verdict no reasonable juror could have reached: Defendant testified to the exact facts the Second Circuit has repeatedly emphasized constitute a visual body cavity search, and the jury simply checked the first box that allowed it to find against Plaintiff.

Plaintiff is thus either entitled to a new trial or judgment as a matter of law on *at least whether a* visual body cavity search occurred.

---

substance, "what is the definition of a strip search." But because of that imprecision, we do not use quotes above the line.

**STATEMENT OF FACTS**

During trial, the parties gave *consistent* testimony on the following issues.

**a.  Defendant VanBramer conducted a visual body cavity search.**

After bringing Plaintiff to the station, Defendant VanBramer had Plaintiff stand with his hands against the wall, and then "remove all of his articles of clothing one by one."  Day 1 Tr. at 108:22-24; *accord* Day 2 Tr. at 78 (saying to do this kind of search, he would "[h]ave that individual stand with their hands against the wall, not facing me. I'll instruct them not to do anything until they're being told to do so. At which point, I will have them remove an article of clothing, I will have them pass it back, I'll check that article of clothing, until there is no more articles of clothing to check."); at 100-101 (similar).

Then, he "instructed him to bend over."  Day 1 Tr. at 111:1-4; *accord id.* at 77:15-17 (Q: "Have you ever done a strip search on somebody where you didn't have them bend over?" / A: "No.").

After bending over, Defendant directed Plaintiff to "use his hands to spread his cheeks apart," to look at the "space between them."  *Id*. at 112:16-19.  And on this, Defense counsel agreed that was the right interpretation:

> ATTORNEY MITCHELL: I think he said that he had them spread it because you can't see -- remember how he's describing how they fold together, like finger -- fingers, where you have to spread them? That's what he had the guy do.
>
> THE COURT: So –
>
> ATTORNEY MITCHELL: The defendant was about five feet away.
>
> THE COURT: So he did ask him to manipulate his butt cheeks.
>
> ATTORNEY MITCHELL: Right.

Day 2 Tr. at 131.

3

And then, he "[l]ooked directly at him," such that he saw "the exterior of what we're calling the anus." *Id.* at 113:1-12.  And he did so after a long colloquy:

Q But when someone pulls their butt cheeks apart, isn't their anus exposed, the outside of it?

A Yeah.

Q Okay. So you could see that?

A Well, I just want to make sure we're tracking the definition of anus. Making sure your definition isn't different than mine.

Q Okay. What is your definition?

A The exterior of the bubble.

Q Okay. Right. I'm not talking about the anal cavity, which would be inside the body. I'm talking about the exterior of the anus which you can see when you're spreading somebody's butt cheeks apart.

Q So when you asked Mr. Sloley to use his hands to spread his cheeks apart, what part of his body were you looking at?

A His butt cheeks.

Q And the space between them, right?

A Correct.

Q The space that opened up when he used his hands to spread his cheeks apart?

A Again, I wasn't looking inside of his cavity. I never told him to spread it so I can see inside of his cavity. I saw the exterior of the skin and the exterior of what we're calling the anus.

Q Okay. I'm not asking any questions about looking inside the anal cavity. So when he -- when he -- when he's spread -- when he spreads his cheeks apart, you did a visual inspection, right?

A Correct.

A Probably four or five feet.

Q But you -- you did have to look directly at him, right?

A ***That's why I asked him to do it, yes.***

4

Day 1 Tr. at 111-113 (emphasis added).

> **b. Defendant VanBramer testified he lacked reasonable suspicion anything was in the cavity to be searched.**

Defendant VanBramer also testified, directly, that he "I never said that [Plaintiff] was hiding drugs inside of his body." Day 2 Tr. at 105-106. He testified that he "believed [he] was hiding drugs on the exterior of his skin in the area where the butt cheeks you can't physically see, was a part of his body that just needed to be manipulated." *Id.* He answered a direct question by admitting he only suspected Plaintiff "had drugs *on* his person." *Id.* And he again reiterated he "did not have a reasonable suspicion that Mr. Sloley had drugs in his body." *Id.*

## ARGUMENT

### I.    The Court Should Grant Plaintiff Judgment as a Matter of Law that a Visual Body Cavity Search Occurred.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court articulated the standard for judgment as a matter of law. Reviewing "all of the evidence in the record," the Court:

> must draw all reasonable inferences in favor of the nonmoving party . . . Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe… That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.

Id. at 150-51 (citations and quotations omitted). *Accord Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001). In other words, the Court looks to what there was evidence in the record to believe: if there is evidence to support the verdict, it stands; if there is no evidence supporting a particular finding of fact, it cannot. That is, the required showing is that "the jury has reached a seriously erroneous result," or that the verdict was "against the weight of the evidence." *Manley v AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003).

5

As far as a visual body cavity search is concerned, there is *no evidence at all* that it did not happen — only a fundamental misunderstanding of what a visual body cavity search *is*. That is, as set out above, Defendant VanBramer testified quite clearly that he had Plaintiff strip, bend over, spread his buttocks so his anus was visible, and then visually inspected "the exterior of what we're calling the anus." Day 2 Tr. at 113:1-12.

That fact is not in dispute — and Mr. Sloley never testified to anything else. Indeed, in *Sloley I*, here's how the Circuit described the facts:[3]

> "Once Sloley was completely naked, Eric instructed him to lift his genitals, bend over, spread his buttocks, and allow Eric to examine the now-exposed areas of Sloley's body."

*Sloley I*, 945 F3d at 35. That is, it described *exactly* what VanBramer testified to: He had Mr. Sloley spread his cheeks so he could inspect the "exterior of the anus which you can see when you're spreading somebody's butt cheeks apart." Day 1 Tr. at 111-113. That is, he could see the "the now-exposed areas of Sloley's body." 945 F3d at 35.

Even if this weren't settled in this case, other cases make clear that spreading the "cheeks" to inspect the anus is a visual body cavity search. Indeed, the very case responsible for the taxonomy of searches that governs this case contains an apt caution: "We will refer to this latter type of inspection as a 'visual body-cavity search' rather than a 'strip frisk search' since this latter terminology tends to evoke images of touching, probing or physically intruding into the body. It is important for analytical purposes to note that none of the searches of the correction officers herein involved any touches, probes or other bodily intrusions." *Sec. & Law Enforcement Empls., Dist. Council 82, etc. v Carey*, 737 F.2d 187, 192 (2d Cir. 1984). That is,

---

[3] On this, given that the Circuit reversed summary judgment based on Mr. Slolely's testimony that was identical to Trooper VanBramer's at trial, it seemingly necessarily viewed what VanBramer described doing as a visual body cavity search — otherwise it would have affirmed in *Sloley I* on the alternative basis that Mr. Slolely's testimony did not constitute a visual body cavity search.

6

the kinds of "bodily intrusions" Defendant told the jury Plaintiff needed to show have been absent from the relevant law for going on half a century. Regardless, the law is clear that a visual body cavity search occurs when a person is forced to spread their buttocks to allow inspection of the anus, **without** bodily intrusions that open the anus itself. *Id.; see also Bishop v NY State Dept. of Corr. & Community Supervision*, 2025 U.S. Dist. LEXIS 252565, at \*17 (NDNY Dec. 8, 2025); *Monroe v Gould*, 372 F Supp 3d 197, 204 (SDNY 2019) ("a so-called visual body cavity search, requires the subject to hold his buttocks open to allow officers to visually inspect his anus."); *United States v Gonzalez*, 111 F Supp 3d 416, 431 (SDNY 2015) (similar).[4] That is, what defines a visual body cavity search is that the arrestee themself must "expose the most private areas of her body to others," by some kind of movement or act. *Sloley I*, 945 F3d at 38.[5]

Since there was no actual dispute over whether a visual body cavity search happened, Plaintiff is entitled to judgment as a matter of law. That is, there was no evidence at all that could support the jury's verdict that no visual body cavity search occurred, because **Defendant himself testified one took place**.

---

[4] As *Gonzalez* explains, the key difference between a strip search a visual body cavity search is that a strip search merely requires the subject to strip and allow officers to "inspect him while he stands, naked, in their presence," while the core difference in a visual body cavity search is that it "requires the subject to hold his buttocks open" — that is, it is the manual manipulation that makes the difference. *Id*

[5] With apologies to the Court, this appears necessary to say. Defendant's position appears to be, to use the crude term, that an arrestee must somehow also "gape" open the hole of the anus. Suffice to say, that is not something most people are capable of — and certainly not without tools or manipulation. *See, e.g.,* "anal gape," *Urban Dictionary* (Jan. 13, 2005), *available at* https://www.urbandictionary.com/define.php?term=anal+gape (first entry, reading: "An anal gape is the continual hole left in the asshole after a dick has been taken out of it. Normally, it take a great amount of anal sex to create this gape, as usually the asshole will immediately return to normal…").

If the Circuit had meant to suggest only a small subset of people — those capable of "gaping" open their anus without a tool or phallus — **could** be subjected to a visual body cavity search (since the entire idea of a visual body cavity search is that it does not involve any direct manipulation of the cavity), surely it would have said so. It did not, and the basic limits of most peoples' bodies make Defendant's seeming position a necessarily absurd reading of the law.

7

II.     **In the Alternative, the Court Should Grant a New Trial on Whether a Visual Body Search Took Place.**

"A grant of a new trial on the ground that the verdict was against the weight of the evidence is appropriate if 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634-635 (2d Cir. 2002). Unlike a motion for judgment as a matter of law, on a motion for a new trial, the court must weigh the evidence de novo, and need not draw inferences in favor of the nonmoving party. In *United States v. Landau*, the district court had granted the plaintiff's Rule 50 motion for judgment as a matter of law. The Court of Appeals disagreed, but granted a new trial after comparing the differing standards under Rules 50 and 59:

> Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict. . . . Also unlike a motion for judgment as a matter of law, a trial judge considering a motion for a new trial is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner.

Landau, 155 F.3d at 104 (internal citations and quotations omitted). *See DLC Mgmt. Corp. v. Cohen*, 163 F.3d 124, 133-134 (2d Cir. 1998). The Second Circuit specifically held that it is "inherent in the proposition that the district judge may weigh the evidence that the judge will consider the credibility of witnesses." *Landau*, 155 F.3d at 104 (*citing Song v. Ives Laboratories*, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)). Of course, it remains true that:

> [a] jury's credibility assessments are entitled to deference. . . . However, these principles of deference to the jury do not override the trial judge's duty to see that there is no miscarriage of justice. . . . If convinced that there has been [a miscarriage of justice] then it is [the trial judge's] duty to set the verdict aside. . . .

*Id*. at 104-105 (cleaned up; bracketed language in original).

The most compelling reason to order a new trial is when there is objective evidence in the record suggesting that the jury's verdict is against the weight of the evidence. Here this is particularly apt, because — to reach the verdict it did — it must be that the jurors relied

8

improperly on so much of counsel's argument and the contextually offered evidence that suggested a visual body cavity search required touching, probing, and the like.  Similarly, several courts in this Circuit have set aside jury verdicts and ordered new trials based entirely on the trial judge's assessment of witness credibility, without any objective evidence favoring one side or the other. In *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041 (2d Cir. 1992), for example, an employment discrimination case, "the jury was presented with conflicting testimony concerning Ives' states reasons for Song's termination." *Id*. at 1045. Yet the Second Circuit affirmed the trial court's grant of a new trial based on the trial court's views of the "weight" of the evidence.  *Id*. at 1047.  *Accord Finn-Verburg v. New York State Dept. of Labor*, 165 F. Supp. 2d 223, 228 (N.D.N.Y. 2001) ("In light of the overwhelming evidence supporting plaintiff's claim that Alley's treatment of her was gender based," the jury's conclusion otherwise "was seriously erroneous").

In a decision echoing the result here, *Lombardo v. Columbia Dentoform Corp*., 103 F.R.D. 630 (S.D.N.Y. 1984), notes "[t]he evidence submitted by defendant to support its claim of good cause for plaintiff's discharge was substantial and in large measure uncontradicted. No apparent reason for its rejection exists."  *Id*. at 635.  Here, similarly, the evidence that a visual body search — defined correctly as one that "requires the subject to hold his buttocks open to allow officers to visually inspect his anus" *Monroe,* 372 F Supp 3d at 204 (S.D.N.Y. 2019) — in large measure uncontradicted, and there is no apparent reason for the jury's rejection of those facts.

### III.   Defendant's Violations of the Court's *In Limine* Rulings and Misstatements of the Law Support both Judgment as a Matter of Law and a New Trial.

As noted above, a major question on this motion is ***why*** the jury seemed to depart so dramatically from the undisputed testimony, and on the surface, "[n]o apparent reason for its rejection exists." *Id*. at 635.  But the way Defendant approached the case may offer a clue for

9

what is not apparent.  Defendant violated the Court's *in limine* rulings — enough that the Court needed to give not only a warning, but a "***last*** warning" (Day 2 Tr. at 82:16-18 (emphasis added)) — and heavily relied on misleading the jury about the law in both testimony and closing. While Plaintiff proposed ***some*** measures to deal with the misuse of criminal history, neither he nor the Court had a reason to think that — as emerged during trial — the core of Defendant's argument was a fundamental misunderstanding (or misrepresentation) of what a visual body cavity search ***is***.  The combination of this trial strategy leaves the case in a place where it appears the "conduct of counsel in argument" and Defendant's witnesses in testimony "cause[d] prejudice to the opposing party and unfairly influence[d the] jury's verdict." *Lee v City of Troy*, 339 F.R.D. 346, 363 (NDNY 2021).

The key to analyzing such issues is to look to "the context of the trial as a whole, examining, among other things, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, and the manner in which the parties and the court treated the comments." *Graham v. City of N.Y.*, 128 F. Supp. 3d 681, 698 (E.D.N.Y. 2015).  Taken together, the (1) misrepresentations of the law (combined with the Court's decision to exclude testimony about what a ***manual*** body cavity search is, and answer to the jury question); (2) violations of the *in limine* rulings on criminal background; (3) violations of the *in limine* rulings about awards and bolstering; and (4) violations of the *in limine* rulings about other lawsuits add up to a context where the impact on the "real issues before the jury" of relevant conduct cannot be doubted.

10

### a. Defendant's counsel misrepresented the law directly in closing and implicitly through testimony, and that misrepresentation was locked in by the Court's decision to preclude further testimony on the types of searches and the answer it gave to the jury question.

Throughout the trial, Defendant's counsel repeatedly and significantly argued and elicited the necessarily irrelevant facts that "Eric VanBramer never touched the plaintiff, never put anything into the plaintiff's body. He didn't stick a probe into the plaintiff. He didn't touch him at all." Day 2 Tr. at 188:5-8. Indeed, counsel repeatedly used "rule of threes" type techniques to ensure the jury had front of mind that there was — using leading questions — no "touch[ing]," no "reach[ing] inside," and no "put[ting] anything in[side]." *Id.* at 77-78. But legally, it is inherent to the type of search alleged that "none of the searches … herein involved any touches, probes or other bodily intrusions." *Sec. & Law Enforcement Empls., Dist. Council 82*, 737 F2d at 192 (as noted above, the possibility for confusion on that front is *why* courts call it a "visual body cavity search").

As reflected in the transcripts, this misrepresentation of the law was a core plank of Defendant's trial strategy. At *every* opportunity, as if it had any significance at all, Defense counsel used the fact that a *manual* body cavity search did not occur to try to suggest a *visual* one did not:

- "Trooper VanBramer will tell you that the strip search occurred in a private room and that throughout the duration of the search, he never touched Plaintiff" (Day 1 Tr. at 35:1-4);

- "Did anyone touch you while you were being searched in that room?" / "Did anyone reach into your body cavity?" / "Did anyone put an object, such as a probe, into your body cavity?" (Day 1 Tr. at 62:23-63:5);

- "Did you touch him?" / "Did you reach into his body cavity?" / "Did you put anything in his body cavity?" (Day 2 Tr. at 77:21-78:1);

- "And during the search, Eric VanBramer never touched the plaintiff, never put anything into the plaintiff's body. He didn't stick a probe into the plaintiff. He didn't touch him at all." (Day 2 Tr. at 188:5-8)

11

That constant refrain, from opening to closing, necessarily left the jury with the impression that it meant **something** that Defendant did not conduct a manual body cavity search — perhaps similar to how accurate legal instructions about irrelevant legal principles, like negligence here, can also mislead a jury — or like how the Circuit faulted the trial court in the more recent appeal for "defin[ing] a strip search — which requires a less exacting degree of reasonable suspicion — without clarifying that there was no strip search claim being tried."  *Sloley v Vanbramer*, 2025 U.S. App. LEXIS 24965, at *4, n 5 (2d Cir Sep. 26, 2025) ("*Sloley II*").

To be sure, the Court instructed the jury on the law and that arguments of counsel were not evidence or law, but that single instruction appears not to have done enough to blunt the effect of counsel's misrepresentation of the law — and standing alone these misrepresentations might not be sufficient for any relief.  But the relevant standard looks to "the context of the trial as a whole," and the frame Defendant built for the other conduct described below is critical to understand.  *Graham*, 128 F. Supp. 3d at 698.  And courts "may prohibit arguments that misrepresent the evidence *or the law*, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury."  *United States v Wilcox*, 487 F.3d 1163, 1173 (8th Cir. 2007) (emphasis added).

And all of that was compounded by two decisions that, at the time, may not have appeared as significant as they do now.  First (though perhaps less significantly) the Court effectively cut off Plaintiff's attempts to preempt and rebut Defendant's misrepresentation about the law here by drawing the lines between various searches out of Defendant's own mouth.[6]  At the threshold of walking through search types, between eliciting the difference between a pat down and a search of pockets, the Court overruled an objection, but said:  "not too many more

---

[6] Plaintiff promised the jury would hear this in his opening, as well.  Day 1 Tr. at 26-27.

questions on other search type[s].  So why don't we move forward. I'll overrule the objection on this question and allow you to answer, sir.  But let's move forward on that."  Day 1 Tr. at 79-80. And when the witness started answering questions about the general nature of various searches by inserting the portions of Plaintiff's criminal history that the Court excluded,[7] the Court then said, "No more questions about what he thinks probable cause is or reasonable suspicion is," and essentially cut off questions delineating the types of searches.  *Id.* at 86-88.

Second, and more critically, over Plaintiff's objection, the Court gave an answer to the jury question that ***only*** said a strip search was not at issue, rather than defining what ***was*** at issue, and reiterating that a visual body cavity search ***does not involve touching or probing***.  Again, while on its own, that may have been fine, the implication of asking the question seems to be that the jury were taking very seriously Defendant's emphasis on the fact that he "never touched the plaintiff, never put anything into the plaintiff's body. He didn't stick a probe into the plaintiff. He didn't touch him at all" (Day 2 Tr. at 188:5-8), and were trying to figure out the line between the various searches.  It appears likely, if not certain, that in using the more common colloquial term, the jury was asking to draw the line between visual body cavity searches and manual body cavity searches, not for a definition of a "strip search."  And if that is what the jury were asking, the Court's response — to say, essentially, if there was only a strip search, Plaintiff loses — locked in, rather than ameliorated, the effect of Defendant's misrepresentations of the law.

### b.  Defendant violated the Court's *in limine* ruling on criminal history.

As the Court likely recalls, given the conduct of the last trial, Plaintiff sought, in his *in limine* motions this time around, to have more careful guardrails around Defendant's tendency to

---

[7] While during this initial dust up, the Court said it thought the question was sufficiently vague that it "was answered in a way that that was appropriate" (Day 1 Tr. at 85-86), Defendant's subsequent conduct leading to the Court's "last warning" on this precise issue would appropriately color whether the Court still takes this view. Day 2 Tr. at 82:16-18.

13

simply state excluded facts in response to unrelated questions. *See* ECF No. 180-1 at 6-9. The Court denied the request as "premature." ECF No. 203 at 9.

But what Plaintiff anticipated did, indeed, come to pass. Defendant and his witnesses repeatedly inserted excluded criminal history — so much so that the Court had to give a "last warning." Day 2 Tr. at 82:16-18. *See, for other examples,* Day 1 Tr. at 82-88; 116-120; Day 2 Tr. at 36:22-37:3; 82:11-22.

Again, this is just one piece of the context to look at the whole picture. But in asking why the jury apparently disregarded the undisputed testimony that a visual body cavity search took place, exactly as the Court defined it, it provides some of the answer.

### c. Defendant violated the Court's *in limine* rulings on bolstering and awards.

The Court was clear it was adopting Judge Hummel's prior *in limine* rulings to the extent that neither party explicitly sought to reconsider them. *See, e.g.,* ECF No. 203 at 2 (noting Plaintiff's motion was made "recognizing this Court's intention to adopt Judge Hummel's rulings made in the final pretrial conference"). The governing ruling, then, was that, as far as awards and honors, "I won't allow it in the first instance," making clear, "you cannot put it in the first instance, Mr. Mitchell." 2022-08-23 Tr. at 36-38.

So, notwithstanding counsel's insistence during the trial that "[t]here was no such ruling in this case," there was. Day 2 Tr. at 52:20-21. Given that, the repeated attempts to bolster testimony with awards were violations of the Court's rulings, even on a specific issue already addressed, including for example:

- "I was selected out of all the dogs on the eastern part of…"[8] (Day 2 Tr. at 51-52);

---

[8] In response to merely "What are your responsibilities?" The fact that, when court resumed, Defendant **began** his answer to a question about his responsibilities with discussion of an honor suggests the answer was rehearsed and planned, to violate (whether knowingly or carelessly) the Court's *in limine* ruling.

14

- After the Court ruled on the issue, "I was chosen out of all the K9s on the eastern part of the state to assist the Special Operations Response Team with -- essentially a SWAT team in their K9 capacity and they chose the K9 handler based on…" (Day 2 Tr. at 54-55);

- "Have you also worked with K9 as cadaver dogs?" — and then counsel said, in front of the jury, rather than sidebar (after a request for a sidebar), "*This has to do with his success* of working with dogs" (Day 2 Tr. at 58);

- "So I was trooper of the year based on my…" (Day 2 Tr. at 62:25);

And in this context, in one instance, after violating *in limine* rulings, counsel quipped to the jury, "there's been so many objections," suggesting it was *Plaintiff* delaying trial, not Defendant violating the Court's clear rulings. The Court needed to give an admonition:

> ATTORNEY GREEN: I ask for an admonition to the witness.
>
> THE COURT: Yes. I will just say, Trooper VanBramer, just try to answer the questions that are asked without adding additional information that wasn't part of the question. Thank you

Day 2 Tr. at 63:5-11.

These violations of the Court's *in limine* ruling were either careless or deliberate — which some courts have said warrants not just a new trial but sanctions. *See, e.g., Am. Honda Motor Co., Inc. v Christianson*, 377 Ga App 712, 720, 922 S.E.2d 839, 847 (2025). As noted above (n. 8), the answers appear likely to be rehearsed and planned, particularly given that the same testimony was excluded in the last trial. *See, e.g.,* ECF No. 145 at 275-76; ECF No. 144 at 176:11-17. There is little ambiguity, for example, that going down the road of the cadaver dog related award Defendant received was going to violate the Court's *in limine* rulings — counsel literally said (in front of the jury) the purpose was to bolster Defendant's testimony with evidence of prior instances of "his success of working with dogs." Day 2 Tr. at 58. And had the Court not cut him off, counsel intended to drive right leading questions drawing out a tragic story

about "two missing children," and how "part of what you have to deal with in your career is you have to find corpses and then deliver bad news to families," with no regard for the Court's *in limine* rulings.  ECF No. 145 at 275-76.

Again, the effect of this on its own pales in comparison to its effect when placed in relief with Defendant's broader trial strategy discussed in this Point.

### d. Defendant's closing immediately violated the Court's ruling on use of prior suits and emotional appeals.

The Court was clear that for prior suits, Defendant "cannot use them to argue that plaintiff has a propensity for bringing lawsuits or claiming false emotional damages" (ECF No. 203 at 11), and that it would "not permit testimony or closing arguments about the impact of a verdict on defendant's future police career or reputation."  ECF No. 203 at 9-10.  On both of these points, the Court warned that "defendant will be required to proceed cautiously with arguments making that suggestion to the jury."  *Id.*

But Defendant was not cautious.  The motion Plaintiff made was based on the closing Defendant gave in the last trial.  And rather than using caution, Defendant launched, ***verbatim***, into the same closing, compare, e.g.:

> "So on behalf of my client Eric VanBramer and my cocounsel Rachel Ouimet, we want to thank you for your service as jurors in this case. We appreciate that you were here, you listened to all the evidence and the testimony, and I hope it was also an interesting experience for you. So what is the claim in this case really about? Basically, the plaintiff is claiming that someone looked at his behind for approximately one second." (ECF No. 145 at 129); *with*

> "So, on behalf of my client, Eric VanBramer, and my co-counsel, Rachel Ouimet, I want to thank you for your service as jurors. We appreciate that you listened to the evidence and the testimony, and I hope it was also interesting for you. What is the claim in this case, really? Basically the plaintiff is claiming that someone looked at his behind for approximately one second." (Day 2 Tr. at 181).

And like the last trial, Defendant plowed right into the same, impermissible arguments he did last time.  So while the Court sustained some objections, the damage was done:  Plaintiff

16

needed to object in front of the jury (even after Defendant's quip about the number of objections)
during closing, and the bell was already rung.  And accordingly, Plaintiff was objecting as soon
as — he hoped — it was clear enough from the context that Defendant planned to say something
impermissible, based on the transcript of the last trial.[9]

By way of illustration, below are the verbatim or near verbatim parts of the original
closing Defendant gave leading to arguments the Court forbid.  Any difference is marked in
brackets, the portion *after* Plaintiff's objections is in bold:

- "So it's up to you to decide whether, on the basis of the evidence you have heard
  at this trial, Eric VanBramer should be [found] to be a person who violated the
  Constitution of the United States. Just think about what a serious allegation that is
  to make against any American, but particularly against this man who spent
  approximately [19] years [in public service in a job] ***that is at times dangerous,
  difficult, and even heartbreaking, as you heard.***" ECF No. 145 at 380.

- So I'd like you to ask yourself, is the plaintiff Maxmillian Sloley someone who
  ***would tell falsehoods and smear others to benefit himself? Is he a manipulative
  person who tries to work the system? Would he make up false self-serving
  allegations in an attempt to persuade you, the jury, to put money into his
  pocket? I suggest that's exactly what he's doing in this case.***"  ECF No. 145 at
  380.

That is, Defendant closed with verbatim the closing the Court asked him to be cautious about.
And demanded, in doing so, that Plaintiff make the objection to enforce the *in limine* rulings.

More, the minor changes Defendant made to the closing do not fix the problem.  While
Defendant swapped out "branded" for "found," he still engaged in the exact golden rule violation
the Court forbid:  "comments on summation that an unfavorable verdict would brand defendant"
in a negative way. *Wallace v Booth Mem. Hosp.*, 163 A.D.2d 917 (4th Dept 1990).  And counsel
asked the jury, exactly as forbidden, to "think about what a serious allegation that is to make
against any American."  Day 2 Tr. at 181-82.  Plaintiff, of course, could not have asked the jury

---

[9] Accordingly, some of the objections were made, perhaps, before it was clear to the Court where Defendant was
going.

to put themselves in Plaintiff's shoes and consider whether *they* would want to be searched like this.  So, Defendant was making an attack that could not be answered.  He knew, from the *in limine* rulings, he was not allowed to mount that attack.  And he knew, from the basic rules of engagement, that Plaintiff would not be able to counter it.  That approach violated the rules of trial and the Court's *in limine* commands.

Adding the four issues above up, even if there *were* some evidence suggesting a visual body cavity search did not happen — and there is *no* such evidence — the balance of the trial unmistakably confirms that the jury was unduly influenced by improper conduct and violations of *in limine* rulings.  The Court should, accordingly, enter judgment for Plaintiff on the fact of the search — or at the very least grant a new trial.  Indeed, on this score, the Court did not even affirmatively deny Plaintiff's in-trial motions for judgment as a matter of law (even on reasonable suspicion, discussed below).

**IV.    The Court Should Also Grant Judgment as a Matter of Law on Liability.**

As the Court explained to the jury, and reflected in the verdict form, for liability, Plaintiff needed to make two factual showings:  That (1) there was a visual body cavity search and (2) it was conducted without reasonable suspicion to believe there were drugs *in* Plaintiff's body.  That is, as the *Sloley II* Court explained in granting a new trial, the crux of reasonable suspicion is that Plaintiff would prevail if Defendant VanBramer only had a reasonable suspicion to "believe that Sloley had drugs '*on his person*,' rather than in it." *Sloley II*, 2025 U.S. App. LEXIS 24965, at *4 (emphasis in original).

Defendant VanBramer, in this trial (but not the last), answered this question in Plaintiff's favor.  That is, he directly testified he only suspected Plaintiff "had drugs *on* his person."  Day 2

18

Tr. at 105-106 (emphasis added). And he again reiterated he "did not have a reasonable suspicion that Mr. Sloley had drugs *in* his body." *Id.* (emphasis added).

That is precisely the standard the *Sloley II* Court articulated. As the Court explained, "In *Sloley I*, we held that a visual body cavity search incident to arrest may *only* be conducted when supported by a reasonable suspicion to believe the arrestee secreted evidence *inside* a body cavity." *Sloley II*, at \*3-4 (quotation marks omitted). So, Defendant VanBramer's testimony that he merely suspected Plaintiff "had drugs *on* his person" and that he did not believe there were "drugs *in* his body" (Day 2 Tr. at 105-106 (emphasis added)) ends the reasonable suspicion question for exactly the reason the Circuit reversed last time: Defendant VanBramer admitted he could only meet the standard erroneously presented to the jury in the last trial.

Whether under a Rule 50(b) standard, or under Rule 60(b) with the Court looking back to summary judgment, this testimony leaves no question of fact: As a matter of law, Defendant VanBramer — as he truthfully testified — lacked any suspicion there "drugs *in* Plaintiff's body." Day 2 Tr. at 105-106 (emphasis added). Since that is what is required to protect an "individual's strong privacy interest" is that very suspicion (*Sloley I,* 945 F3d at 38), Plaintiff is entitled to judgment.[10] And given the issues discussed in Point III above, it is hardly unfair to Defendant for the Court to make that judgment.

---

[10] While not directly relevant yet and a policy argument in any event, to address the argument in advance, Plaintiff notes it might be argued that there is *some* gap between the nature of the search and the suspicion. That is, given the physical limitations of most peoples' anal biology (*see* n. 5, above) and the requirement that there be suspicion "the arrestee secreted evidence *inside* a body cavity" (*Sloley II*, at \*3-4), why require suspicion that there is something *inside* the body when the search cannot see inside.

The answer is at least two-fold. First, if there were drugs *inside* Plaintiff, the visual inspection would likely reveal some sign of that: residue, signs of lubricant, and necessarily, whatever string, flare, or other device would be necessary to remove the drugs so they did not travel up into the rectum and require medical extraction. *See, e.g.,* "Everything to know about butt plugs," Medical News Today, *available at* https://www.medicalnewstoday.com/articles/butt-plugs#safetytc ("Butt plugs are generally tapered or teardrop shaped. They should also have a flared base, usually with a stopper, to help prevent people from losing them inside the rectum"). That is, while a visual search would not be *of* the inside of a person's body, it *would* reveal if drugs were likely inside the person's body. And second, a mere suspicion that there was something not *inside*, but say, in

19

**CONCLUSION**

For the reasons above, Plaintiff respectfully asks the Court to grant his motion either for judgment as a matter of law, or for a new trial.

Date:    May 6, 2026
         Ridgewood, NY

                                        Respectfully submitted,

                                        COHEN&GREEN, P.L.L.C.

                                        _____/s/_____

                                        J. Remy Green
                                        Regina J. Yu
                                        1639 Centre St Suite 216
                                        Ridgewood, New York 11385
                                        t: 929-888-9480
                                        e: remy@femmelaw.com

                                        *Pro Bono Trial Attorneys for
                                        Plaintiff*

---

a person's underwear, could be addressed with a less invasive search: Holding open and shaking the area without direct visual inspection, or something similar.

Again, however, this arguable gap is a policy, not a legal, issue: The Second Circuit's command on this issue is clear. A visual body cavity search is looking *at* the anus (*Sloley I*, 945 F3d at 35); the suspicion required is that there is something *inside* the anus to justify that intrusion (*Sloley II*, at *3-4).

20