**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MAXMILLIAN SLOLEY,

Plaintiff,

v. 1:14:CV-339 (PJE)

ERIC VANBRAMER,

Defendant.

---

**HON. PAUL J. EVANGELISTA**
**UNITED STATES MAGISTRATE JUDGE**

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |
| Cohen & Green P.L.L.C.<br>1639 Centre Street<br>Suite 216<br>Ridgewood, New Jersey 11385<br>Trial attorneys for plaintiff | REMY GREEN, ESQ. |
| New York State Attorney General- Albany<br>Litigation Bureau<br>The Capitol<br>Albany, New York 12224<br>Attorneys for defendant | MARK G. MITCHELL, ESQ. |

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER

### I. Introduction

Presently before the Court is plaintiff Maxmillian Sloley's Motion, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 50, 60, and 59,[1] for Judgment as

---

[1] Plaintiff seeks, "judgment as matter of law under, among other things, Rule 50 and 60; and for a new trial under, among other things, Rule 59 and the Court's inherent authority[.]" Dkt. No. 226 at 1.

a Matter of Law or, alternatively, for a new trial. Defendant Eric VanBramer opposed. *See* Dkt. No. 231. Plaintiff replied. *See* Dkt. No. 232. For the reasons that follow, plaintiff's motion, insofar as he requests judgment as a matter of law on the questions of whether defendant performed a visual body cavity search and whether defendant lacked reasonable suspicion for such a search, is granted.

## II. **Legal Standards**

### A. **Rule 50: Judgment as Matter of Law**

> In deciding a Rule 50(b) motion, "judgment as a matter of law should not be granted unless (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]."

*Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, No. 14-CV-391 (PKC), 2016 WL 11941682, at *3 (S.D.N.Y. Mar. 1, 2016) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)). "The posttrial motion is limited to those grounds that were specifically raised in the prior motion for JMOL; the movant is not permitted to add new grounds after trial." *Cayuga Nation, ex rel., the Cayuga Nation Council v. Parker, et al.*, No. 5:22-CV-00128 (BKS/TWD), 2026 WL 2731321, at *2 (quoting *Galdieri-Ambrosini*, 136 F.3d at 286 (quotation marks omitted)).

> "In assessing the sufficiency of evidence to support a jury verdict, [a district court] must view the record in the light most favorable to the [nonmoving] party, assuming all reasonable inferences were drawn and all credibility disputes resolved in its favor." *Advance Pharm., Inc. v.39 United States*, 391 F.3d 377, 390 (2d Cir. 2004). "[A] jury may use a combination of factors—direct testimony, cross examination, and circumstantial evidence—to infer that a particular defendant took a particular action." *Gonzalez v. Waterbury Police Dep't*, 199 F. Supp. 3d 616, 621 (D. Conn. 2016), *as amended* (Aug. 9, 2016). "[C]ircumstantial evidence is of equal value to direct evidence[.]" *McFadden v. Cnty. of Monroe*, 672 F. App'x 81, 85 (2d Cir. 2016).

*Cayuga Nation*, 2026 WL 2731321, at *2. In general, a court should not grant a Rule 50(b) motion "unless the evidence, viewed in the light most favorable to the nonmoving party, is insufficient to permit a reasonable juror to find in his favor." *Actava TV Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*, No. 18-CV-06626 (ALC), 2026 WL 1972753, at *2 (S.D.N.Y. July 8, 2026) (quoting *Arlia v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007)). "'[T]he court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence.'" *Id.* (quoting *Galdieri-Ambrosini*, 136 F.3d at 289).

B. **Rule 59(a): Motion for a New Trial**

"The burden for granting a new trial under Rule 59 is lighter than that for granting judgment as a matter of law under Rule 50." *Ke v. Jr Sushi 2 Inc*, No. 19 CIV. 7332 (PAE), 2026 WL 1893684, at *5 (S.D.N.Y. July 1, 2026) (citing *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998)). "Unlike a motion for judgment as a matter of law under Rule 50(b), in considering a motion for a new trial under Rule 59 'a trial judge is free to weigh the evidence [them]self, and need not view it in the light most favorable to the verdict winner.'" *Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 65 (E.D.N.Y. 2002), *aff'd*, 93 F. App'x 260 (2d Cir. 2004) (summary order) (quoting *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998)). "Pursuant to 59(a), the Court may grant a new trial on all or some issues only if it concludes 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice[.]'" *Orellana v. Cnty. of Suffolk*, No. 17-CV-4267 (WFK) (ARL), 2026 WL 2031336, at *10 (E.D.N.Y. June 24, 2026) (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003)). Whether to grant a new trial is a decision "committed to the sound discretion of the trial

judge." *Crews v. County of Nassau*, 149 F. Supp. 3d 287, 292 (E.D.N.Y. 2015) (internal quotation marks and citation omitted).

## III. **Arguments**[2]

### A. **Visual Body Cavity Search**

Plaintiff contends that the Court should grant judgment as a matter of law on liability. *See* Dkt. No. 226-1 at 22. Plaintiff argues that judgment as a matter of law or, alternatively, a new trial is warranted because defendant's testimony of the search he performed on plaintiff matches what the Second Circuit has defined as a visual body cavity search. *See id.* at 9. As relevant here, defendant testified that, as part of a search process, generally, he has a suspect remove their clothing then "turn around and put their hands on the wall." Dkt. No. 224 at 110. As to his search of plaintiff, he next instructed plaintiff to bend over. *See id.* at 111. When plaintiff complied, defendant did not see anything. *See id.* Defendant then affirmed that he next directed plaintiff to spread plaintiff's butt cheeks apart. *See id.* Defendant testified he then looked at the "space between" plaintiff's buttocks "so [he] could see the exterior of his skin and the exterior of what we're calling the anus." *Id.* at 113. Defendant also referred to the "area" he observed when plaintiff separated his butt cheeks as "the exterior of the bubble." *Id.* at 112. Once plaintiff spread his buttocks apart, defendant performed a "visual inspection" of the "exterior of. . . the anus" at a distance of four to five feet from plaintiff. *Id.* at 113. When plaintiff spread his buttocks apart, defendant did not see any

---

[2] In this Memorandum-Decision & Order, the Court's citation to the parties' briefing is to the pagination at the header of each page, generated by the Court's electronic filing system, not to the documents' individual pagination.

drugs. *See id.* Defendant answered affirmatively when asked, "when someone pulls their butt cheeks apart," their "anus [is] exposed, the outside of it." *Id.* at 111.

In *Sloley v. VanBramer* ("*Sloley I*"), the Second Circuit clarified that a visual body cavity search occurs when "the police observe the suspect's body cavities without touching them (as by having the suspect to bend over, or squat and cough, while naked)[.]" *Sloley I*, 945 F.3d 30, 36 (2d Cir. 2019) (quoting *Gonzales v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013)); *see also Murphy v. Hughson*, 82 F.4th 177, 181 n.3 (2d Cir. 2023) ("'visual body cavity search' is the inspection of a person's body cavities without contact, such as by having the person manipulate his anatomy, bend over, or squat and cough. It is more intrusive than a 'strip search,' which requires a person to remove his clothes for a more cursory inspection, but less intrusive than a 'manual body cavity search,' which entails physical inspection of body cavities[.]") (citing *Gonzales*, 728 F.3d at 158). Plaintiff argues that the Second Circuit's standard for a visual body cavity search is "exactly what VanBramer testified to." *Id.* Plaintiff alternatively argues that the Court should grant a new trial on the issue of whether a visual body cavity search occurred. *See* Dkt. No. 226-1 at 12-13.

Defendant argues that there exists evidence in the record at trial to support the jury's verdict that no visual body cavity search occurred. *See* Dkt. No. 231 at 5. He refers to his testimony that, while standing four to five feet away from plaintiff, he observed "the exterior of the skin" and did not "look inside" plaintiff's body. *Id.* at 6. Defendant argues, he "did not visually inspect whether Plaintiff was concealing drugs inside Plaintiff's anus"; "It was of the skin only. I did not look inside of his body." *Id.* Thus, defendant argues, "the evidence showed that Defendant conducted a strip search

of Plaintiff, and the visual component of that search was no more intrusive than viewing Plaintiff's outer skin to determine whether he was squeezing contraband between his butt cheeks." *Id.*

B. **Reasonable Suspicion**

Plaintiff argues that judgment as a matter of law is also warranted because defendant testified that he did not have reasonable suspicion to believe that "anything was in the cavity to be searched." Dkt. No. 226-1 at 9. Plaintiff observes that defendant testified, (1) "I never said that [Plaintiff] was hiding drugs inside of his body" and instead "believed [he] was hiding drugs on the exterior of his skin where the butt cheeks you can't physically see, was a part of his body that just needed to be manipulated[,]" and (2) he "did not have a reasonable suspicion that Mr. Sloley had drugs in his body." *Id.* (quoting Dkt. No. 224 at 105-06). Thus, plaintiff argues, defendant's testimony supported a conclusion that defendant had only suspicion to believe plaintiff had drugs "on his person." *Id.* at 22 (quoting Dkt. No. 224 at 105-06).

Defendant argues that defendant had reasonable suspicion "for the search he performed" insofar as he "testified at trial that he suspected that Plaintiff was concealing contraband in the area of exterior skin between Plaintiff's butt cheeks." Dkt. No. 231 at 7. Defendant argues that such suspicion was based on the victim's statement, that plaintiff was fleeing from the scene, that the police canine alerted to his vehicle, defendant found cocaine in the driver's seat, and that he "searched Plaintiff in an area where, based on the circumstances and Defendant's experience, it was reasonable to suspect that Plaintiff was concealing contraband." *Id.* Defendant also contends that

plaintiff improperly puts forth, in his brief, “new evidence consisting of a dictionary and an online article” which he argues the Court should reject as improper and hearsay. *Id.*

Finally, defendant contends that the “trial came down to the jury’s assessment of credibility” and, thus, the verdict was not against the weight of the evidence. Dkt. No. 231 at 10.

### C. **Other Arguments**

Plaintiff argues that judgment of a matter or law or a new trial is warranted due to defendant’s conduct during trial. *See* Dkt. No. 226-1 at 13. He contends that “a clue” for the jury’s “depart[ure] from the undisputed” testimony could be “the way Defendant approached the case” insofar as he (1) violated in limine rulings regarding plaintiff’s criminal history, defendant’s accreditations, plaintiff’s past civil lawsuits, and emotional appeals; (2) misrepresented the law by focusing on the absence of a manual body cavity search. *See id.* at 13-14.

Defendant argues that much of plaintiff’s remaining arguments are unpreserved as plaintiff did not object to questions at trial or in closing. *See* Dkt. No. 231 at 10-11. Defendant contends further that it was “relevant” to rebut plaintiff’s testimony about the search to explain that there was no manual search, and the Court properly instructed the jury in their charge and response to their questioning. *See id.* at 12. Defendant asserts that plaintiff’s claims regarding the motion in limine violations are meritless because (1) plaintiff’s counsel opened the door with their questioning about the basis for defendant’s reasonable suspicion, (2) the Court permitted defendant to testify about certain “background, qualifications, and experience” relevant to defendant’s experience with respect to K9 and search work; (3) the Court properly permitted defendant to

question plaintiff about three of plaintiff's other civil cases as relevant to the questions of causation and damages; and (4) defendant properly challenged plaintiff's credibility in the closing, pursuant to the Court's earlier order, and the Court properly instructed the jury as to how to assess attorney's statements. *See id.* at 11-16.

## IV. **Discussion**

### A. **Visual Body Cavity Search**

The gravamen of the disagreement in this case surrounds whether a visual search of a suspect to assess whether drugs are suspected to be concealed in between the suspect's butt cheeks, but not necessarily fully inside the anal cavity, constitutes a visual body cavity search. With the facts presented here, the Court finds that it does.

The Second Circuit has defined a visual body cavity search to include requiring a suspect to remove all clothing, bend over, manipulate his own body such as by spreading his butt cheeks, and then visually observing the suspect's body cavities. *See Sloley I*, 945 F.3d at 36-37. Defendant argues that viewing the external portion of the anus or the space "between the butt cheeks" is not "observing the . . . body cavit[y]" because he "did not look inside of [plaintiff's] body." Dkt. No. 231 at 6. Defendant argues that he did not perform a visual body cavity search because he did not view the anal cavity; rather, he viewed the skin around the anal cavity, the "space between" plaintiff's buttocks, the "bubble," or the exterior of plaintiff's anus. Dkt. No. 231 at 6.

Defendant's proposed distinction finds no support in the Second Circuit's definition of a visual body cavity search. In this very case's history, the Circuit made clear that directing the suspect to take off his clothing, bend over, and spread open his butt cheeks so that an officer could look at the anal cavity, is a visual body cavity

search. *See Sloley I*, 945 F.3d at 36-37. The Second Circuit did not carve out a search more intrusive than a strip search but less intrusive than a visual body cavity search nor account for situations in which the officer looked only between the butt cheeks but did not view the internal portion of the anus. *See Murphy*, 82 F.4th at 181 n.3 ("'visual body cavity search' is the inspection of a person's body cavities without contact, such as by having the person manipulate his anatomy, bend over, or squat and cough.'"); *Allah v. Lawson*, No. 9:23-CV-00785 (LEK/ML), 2026 WL 2906789, at *7 (N.D.N.Y. Sept. 28, 2026) (quoting *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) ("A 'strip search,' though an umbrella term[,] generally refers to an inspection of a naked individual, w*ithout any scrutiny of the subject's body cavities*. A 'visual body cavity search' extends to v*isual inspection of the anal and genital areas*. A 'manual body cavity search' includes some degree of touching or probing of body cavities.") (emphasis added)).

Nor did the Second Circuit define the visual body cavity search as a subjective standard dependent on the closeness, intensity, or specificity of the officer's gaze upon the body part exposed by the bending and manipulation of the body. Despite defendant's protestations that his search of plaintiff was "no more intrusive than viewing Plaintiff's outer skin[,]" Dkt. No. 231 at 6, when an officer directs the suspect to fully strip, bend over, and manipulate his body in some way so that the officer can observe that body cavity – i.e., "expos[ing] the most private areas of [his] body to others . . . while assum[ing] degrading and humiliating positions" – there is a visual body cavity search. *Sloley I*, 945 F.3d at 38 (quoting *Swain v. Spinney*, 117 F.3d 1, 6 (11th Cir. 1997)). Thus, it is clear that "[a] 'visual body cavity search' extends to visual inspection of the anal and genital areas." *Allah*, 2026 WL 2906789, at *7 (quoting *Harris*, 818 F.3d

at 57). It is beyond cavil that defendant testified to having plaintiff strip, bend over, and pull open his butt cheeks, exposing his "most private areas" of his body to defendant's view. *See id.*

The Court accepts the logic of plaintiff's argument that it would not appear possible for anyone to be able to expose the internal portion of their anal cavity by bending over and spreading their butt cheeks.[3] Moreover, the Court does not believe the Second Circuit intended to suggest that bending over, coughing, or spreading one's butt cheeks while naked, *Sloley I*, 945 F.3d at 36, permit an officer's view to penetrate beyond the opening of the anal cavity. The Court thus finds defendant's reading of the "body cavity" or "inside the body" to be too narrow in the context of visual body cavity searches.

After close, measured consideration of the issue, the Court finds that no reasonable or fair-minded jury could conclude that a visual body cavity search did not occur based on defendant's trial testimony. *See Car-Freshner Corp.*, 2016 WL 11941682, at *3. Accordingly, plaintiff's motion for a directed verdict is granted on this issue.

B. **Reasonable Suspicion**

Defendant testified that he did not have reasonable suspicion to believe that drugs were inside of plaintiff's body cavity. *See* Dkt. No. 225-4 at 105-06. As discussed *supra*, defendant presents what he proposes to be a meaningful distinction: that he

---

[3] Defendant makes much of plaintiff's argument, raised in his instant motion, that it is anatomically impossible to view the anal cavity, insofar as that term is taken to refer to the internal portion of the body, absent further physical manipulation, arguing that plaintiff improperly presents evidence not before the Court at trial, which amounts to hearsay. Yet, the Court is not considering plaintiff's submissions for their truth. Indeed, the Court is considering only the basic, common-sense rationale of plaintiff's argument – that there are physical limitations on how much of one's anal cavity could be revealed solely through the act of bending over and spreading apart one's buttocks with one's hands.

believed drugs to be in “the space between” plaintiff’s butt cheeks, but not inside of his anal cavity. Dkt. No. 224 at 113. Thus, he argues, in believing drugs to be in between plaintiff’s butt cheeks, he had reasonable suspicion to believe drugs to be *on* plaintiff’s person.

The Second Circuit has made clear that a “visual body cavity search conducted as an incident to a lawful arrest for any offense must be supported by a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity.” *Sloley I*, 945 F.3d at 38. “To decide whether an officer had a reasonable suspicion that would warrant a visual body cavity search, courts ‘must look at the totality of the circumstances.’” *Hester v. Salle*, No. 6:23-CV-01171 (AMN/TWD), 2025 WL 1580824, at *6 (N.D.N.Y. June 4, 2025) (quoting *Sloley I*, 945 F.3d at 43 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *Sanchez v. Bonacchi*, 799 F. App’x 60, 62 (2d Cir. 2020) (summary order)).

Defendant testified, in his experience, there are times when a suspect secrets contraband in between his butt cheeks, explaining that the body’s moisture, the “plastic packing material,” and the pressure of the “butt cheeks . . . squeezed together” can keep the contraband concealed, even when bending over. Dkt. No. 225-4 at 76-77. He testified that he believed the contraband to be between plaintiff’s buttocks; he did not suspect that the drugs were “in” plaintiff’s person, rather on his person. *See id.* at 105-06. As noted, plaintiff argues that, given that defendant did not have reasonable suspicion to believe that drugs were inside a body cavity, defendant did not have the requisite reasonable suspicion to perform a visual body cavity search. The Court agrees.

The portions of testimony that defendant cites – knowledge of plaintiff's prior criminal history, that plaintiff was "fleeing from the scene in his vehicle at the time he was stopped by the police," the cocaine defendant testified to having found on the driver's seat of plaintiff's vehicle, the police canine's positive alert to plaintiff's vehicle, and defendant's general experience with other drug arrests – may collectively rise to reasonable suspicion, but only reasonable suspicion to perform a strip search. *See* Dkt. No. 231 at 7. Given that a visual body cavity search requires a particularized belief that drugs are inside of a body cavity, and defendant testified that he did not believe that the drugs were *in* plaintiff's person, he did not have reasonable suspicion to perform a visual body cavity search. The Court understands that defendant is implicitly arguing that evidence that is hidden between a suspect's buttocks but not inserted into the anal opening, is on a person, but not in a body cavity. Yet, defendant offers his own interpretation of what constitutes evidence concealed ""inside a body cavity." The Second Circuit has held that there must be reasonable suspicion to believe that contraband is inside a body cavity, but nothing in that description explains whether contraband evidence that is suspected to be fully concealed between a suspect's butt cheeks is "inside a body cavity." *Sloley I*, 945 F.3d at 38.

Regardless, even if the Court were to accept defendant's proposals – that (1) he believed drugs to be on plaintiff's person, but not inside of a body cavity; and (2) contraband concealed fully between a suspect's butt cheeks is "on" a body but not inside a body cavity – he was only permitted to perform a strip search as he believed contraband only to be on the body. As discussed in great detail, *supra*, defendant decidedly performed a visual body cavity search because he directed plaintiff to fully

disrobe, bend over, and manipulate his body so that defendant could observe the "most private area" of his body. *Sloley I*, 945 F.3d at 3. Accordingly, plaintiff's motion seeking judgment as a matter of law on the issue of whether defendant lacked reasonable suspicion to perform a visual body cavity search is granted.[4]

C. **Qualified Immunity**[5]

P

In the latest filings, the parties did not directly address the question of qualified immunity or how the Court should proceed on that question should it grant plaintiff's requested relief.[6] "Though '[qualified i]mmunity ordinarily should be decided by the court,' . . . that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required . . . ." *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). "Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007); *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("If there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues on special interrogatories. The ultimate legal determination

J

E

[4] The Court need not reach plaintiff's remaining arguments regarding defendant's conduct with respect to the in limine rulings and during closing argument beyond to say that these remaining arguments, even considered together, the conduct would not warrant judgment as a matter of law or a new trial.
[5] "Qualified immunity, an affirmative defense as to which the defendants have the burden of proof, shields officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known[.]'" *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted)). "A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 242-43 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).
[6] Defendant raised this affirmative defense in his answer and submitted proposed special interrogatories. *See* Dkt. No. 27 at 3 ¶23, 190.

whether . . . a reasonable police officer should have known he acted unlawfully" should made by the Court, "on the facts found" by the jury.).[7]

Within twenty-one days from the filing date of this Memorandum-Decision & Order, defendant is to advise the Court whether there are disputed facts material to the qualified immunity issue such that a trier of fact need determine the matter or if the facts are undisputed such that the Court may make an assessment of whether the officer's conduct was objectively reasonable. *See Zellner*, 494 F.3d at 368; *see also Warren*, 906 F.2d at 76 ("The ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.").[8] Plaintiff is to file a response within twenty-one days of the filing date of defendant's submission.[9]

## V. **Conclusion**

Wherefore, for the reasons set forth herein, plaintiff's motion, it is hereby

---

[7] In *Sloley I*, the Second Circuit held,

> neither we nor the Supreme Court have ever squarely held that a similar reasonable suspicion requirement applies to visual body cavity searches of persons arrested for felony offenses. Balancing the degree to which visual body cavity searches "intrude[ ] upon an individual's privacy" against "the degree to which [they are] needed for the promotion of legitimate governmental interests," *Birchfield*, 136 S. Ct. at 2176 (internal quotation marks omitted), we now hold that such searches do require reasonable suspicion. In other words, a visual body cavity search conducted as an incident to a lawful arrest for any offense must be supported by "a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity." *Hall*, 10 N.Y.3d at 311, 856 N.Y.S.2d 540, 886 N.E.2d 162.

*Sloley I*, 945 F.3d at 38.

[8] Should qualified immunity be determined in plaintiff's favor, the next step would appear to be a trial on damages. The Court's clarification is not, and should not be read as, a prediction or comment on the ultimate future outcome of this issue.

[9] Recognizing that plaintiff's counsel was assigned for purposes of trial and agreed to continue representation for the purposes of the underlying motion, for which the Court wishes to express its thanks, the Court would appreciate, but not require, Cohen & Green P.L.L.C.'s continued representation on this response. Should counsel decide against pursuing representation for this additional effort, plaintiff may submit a response pro se.

**ORDERED**, that plaintiff's motion, dkt. no. 226, insofar as it seeks judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b) on the questions of (1) whether a visual body cavity search occurred, and (2) whether defendant lacked reasonable suspicion to believe drugs were in plaintiff's body cavity in order to perform a visual body cavity search is **GRANTED**; and it is further

**ORDERED**, that, within twenty-one days of the filing date of this Memorandum-Decision & Order, defendant is to submit a response relevant to the question of qualified immunity, as discussed herein, and within twenty-one days from the filing date of defendant's submission, plaintiff is to submit a response limited to the issue of qualified immunity; and it is

**ORDERED**, that the Clerk serve this Memorandum-Decision & Order on parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: November 23, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge